Case No. 19-11327

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

DIANE SCOTT HADDOCK,

*Plaintiff – Appellant,*

v.

TARRANT COUNTY, TEXAS; PATRICIA BACA-BENNETT; KENNETH EARL NEWELL; JESUS NEVAREZ, JR.; HONORABLE JUDITH WELLS; JEROME S. HENNIGAN; JAMES B. MUNFORD; ALEX KIM,

*Defendants – Appellees.*

---

On Appeal from the United States District Court for the
Northern District of Texas, Fort Worth Division
Civil Action No. 4:18-CV-817-O, The Hon. Reed O'Connor, Presiding

---

## APPELLEE'S BRIEF OF TARRANT COUNTY, TEXAS

---

SHAREN WILSON
Tarrant County Criminal
District Attorney

M. KEITH OGLE
Texas State Bar No. 24037207
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor – Civil
Fort Worth, Texas 76196
817-884-1233 – Telephone
817-884-1675 – Facsimile
E-Mail: mkogle@tarrantcountytx.gov

COUNSEL FOR DEFENDANT-APPELLEE TARRANT COUNTY, TEXAS

## CERTIFICATE OF INTERESTED PERSONS

No. 19-11327

DIANE SCOTT HADDOCK, *Plaintiff – Appellant,* v. TARRANT COUNTY, TEXAS; PATRICIA BACA-BENNETT; KENNETH EARL NEWELL; JESUS NEVAREZ, JR.; HONORABLE JUDITH WELLS; JEROME S. HENNIGAN; JAMES B. MUNFORD; ALEX KIM, *Defendants – Appellees.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Tarrant County, Texas, as a governmental party, need not furnish a certificate of interested persons.

*/s/ Melvin Keith Ogle*

Melvin Keith Ogle

*Counsel of Record for Defendant-Appellee Tarrant County, Texas*

## STATEMENT REGARDING ORAL ARGUMENT

Tarrant County contends that oral argument will not assist the Fifth Circuit in resolving Diane Haddock's issues on appeal because (1) the governing legal principles are well settled and (2) this case arises from the granting of a motion to dismiss under Federal Rule of Civil Procedure 12. Because the district court's Order granting Tarrant County's 12(b)(6) motion is thorough and well reasoned, this matter can be summarily affirmed upon submission on the briefs.

However, if oral argument is granted, Tarrant County requests an opportunity to argue in response.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.....................................2

STATEMENT REGARDING ORAL ARGUMENT ............................3

TABLE OF CONTENTS.............................................................4

TABLE OF AUTHORITIES ........................................................7

STATEMENT OF JURISDICTION ..............................................15

    A.   District Court Jurisdiction.....................................15

    B.   Court of Appeals Jurisdiction ...............................15

ISSUES PRESENTED...............................................................16

STATEMENT OF THE CASE.....................................................17

    A.   Texas's elected state district court judges have the exclusive power to appoint or terminate their associate judges. .........................................................17

    B.   Diane Haddock sued Tarrant County over the district court judges' actions and decisions regarding her appointment....................................19

    C.   Haddock never pleaded a plausible claim of municipal liability against Tarrant County....................20

    D.   The district court correctly granted the County's motion to dismiss for failure to state a claim.................21

SUMMARY OF THE ARGUMENT .....................................................22

ARGUMENTS AND AUTHORITIES ...................................................23

I.   This Court should affirm the dismissal of Haddock's section 1983 claims against Tarrant County, Texas. .............23

II.  The rule 12(b)(6) standard of review. ...........................................23

III. Diane Haddock failed to state a claim under Monell. ...........24

    A.   42 U.S.C. § 1983's county liability requirements.............24

    B.   *Monell* Element 1: Haddock failed to plead a county-level policymaker (Resp. to Haddock's Issue 2). ..............................................................25

        1.   *The* Monell *Policymaker Test*........................................27

        2.   *The state family law district court judges are not County policymakers in appointing/terminating their associate judges.* ..................................................................28

    C.   *Monell* Element 2: Haddock failed to plead a plausible County policy or custom (Cont'd Resp. to Haddock's Issue 2). ....................................35

        1.   *Haddock did not plead an official policy statement.* ................................................................36

        2.   *Haddock did not plead a single unconstitutional act attributable to a county policymaker*..........................................................36

            a.   The County had no authority to supervise, or to delegate supervision of, associate judges. ...............................................38

            b.   The County had no duty to protect Haddock from the state district court judges' conduct and decisions regarding her appointment...........................39

c.    The Texas Supreme Court—not the County—regulates alleged judicial misconduct......................................................... 42

3.    *Haddock insufficiently pleaded a pattern of unconstitutional conduct*....................................... 43

4.    *Haddock did not state a conspiracy claim.* ......... 45

D.    *Monell* Element 3: Because she was subject to a patronage dismissal, Haddock failed to plead that a County policy was the moving force of a constitutional violation (Resp. to Haddock's Issue 1)......................................................................... 46

1.    *Political dismissals are permitted*........................ 48

2.    *Texas family law associate judges are policymakers and confidential employees.* ........... 53

3.    *The Mumford opinion illustrates why Texas associate judges are subject to political dismissal*................................................................. 56

4.    *Judicial staff—including associate judges—are policymakers and confidential employees* .... 57

5.    *The district court properly determined Haddock was a policymaker and confidential employee and balanced the government's interests against Haddock's.* ................................. 59

PRAYER FOR RELIEF....................................................... 70

CERTIFICATE OF SERVICE .............................................. 71

CERTIFICATE OF COMPLIANCE..................................... 72

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Pollock,*
   946 S.W.2d 513 (Tex. App.—Austin 1997, pet. denied)............. 29, 32

*Adams v. Governor of Delaware*
   922 F.3d 166 (3d Cir. 2019), *cert. granted*, 140 S. Ct.
   602 (U.S. Dec. 6, 2019) (No. 19-309) ............................................ 57, 58

*Adler v. Pataki,*
   185 F.3d 35 (2d Cir. 1999) .......................................................65

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................... 23, 46

*Aucoin v. Haney,*
   306 F.3d 268 (5th Cir. 2002) .......................................... passim

*Balogh v. Charron,*
   855 F.2d 356 (6th Cir. 1988) ...................................................58

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,*
   520 U.S. 397 (1997) .......................................................... 25, 41

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..............................................................23

*Bennett v. City of Slidell,*
   728 F.2d 762 (5th Cir. 1984) ...................................................44

*Borough of Duryea Pa. v. Guarnieri,*
   564 U.S. 379 (2011) ..............................................................62

*Borzilleri v. Mosby,*
   874 F.3d 187 (4th Cir. 2017) .......................................... passim

*Branti v. Finkel,*
   445 U.S. 507 (1980) .......................................................... 49, 50

*Calhoun v. Ramsey,*
    408 F.3d 375 (7th Cir. 2005) ..................................................36

*Chisom v. Roemer,*
    501 U.S. 380 (1991) ................................................................57

*City of Canton v. Harris,*
    489 U.S. 378 (1989) ......................................................... 41, 42

*Clark v. Tarrant Cnty., Tex.,*
    798 F.2d 736 (5th Cir. 1986) ..................................................29

*Connick v. Myers,*
    461 U.S. 138 (1983) ................................................... 50, 51, 59

*Coughlin v. Lee,*
    946 F.2d 1152 (5th Cir. 1991 ..................................................51

*Davidson v. City of Stafford, Tex.,*
    848 F.3d 384 (5th Cir. 2017) ..................................................44

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
    489 U.S. 189 (1989) ................................................................39

*Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys,*
    675 F.3d 849 (5th Cir. 2012) ..................................................24

*Doe v. Claiborne Cnty., Tenn.,*
    103 F.3d 495 (6th Cir. 1996) ..................................................41

*Doe v. Taylor Index. Sch. Dist.,*
    15 F.3d 443 (5th Cir. 1994) ....................................................42

*Dyer v. Radcliffe,*
    169 F. Supp. 2d 770 (S.D. Ohio 2001)....................................58

*Ector Cnty. v. Stringer,*
    843 S.W.2d 477 (Tex. 1992)....................................................31

*Elrod v. Burns,*
    427 U.S. 347 (1976) ......................................................... 48, 49

*Foster v. Walsh,*
        864 F.2d 416 (6th Cir. 1988) ..................................................33

*Garcia v. Reeves Cnty.,*
        32 F.3d 200 (5th Cir. 1994) ...................................... 38, 48, 60

*Gentry v. Lowndes County, Miss.,*
        337 F.3d 481 (5th Cir. 2003) ................................................52

*Gillespie v. Gillespie,*
        644 S.W.2d 449 (Tex. 1982 ..................................................54

*Gonzalez v. Benavides,*
        712 F.2d 142 (5th Cir. 1983) ........................................ 64, 68

*Gregorich v. Lund,*
        54 F.3d 410 (7th Cir. 1995) ......................................... 58, 59

*Griffith v. Johnston,*
        899 F.2d 1427 (5th Cir. 1990) ..............................................40

*Griggs v. Chickasaw Cnty., Miss.,*
        930 F.3d 696 (5th Cir. 2019) ................................................48

*Hagan v. Quinn,*
        867 F.3d 816 (7th Cir. 2017) ............................. 49, 58, 66, 69

*Hall v. Ford,*
        856 F.2d 255 (D.C. Cir. 1988) ..............................................69

*Hall v. Small Bus. Admin.,*
        695 F.2d 175 (5th Cir. 1983) ................................................58

*Hanna v. Home Ins. Co.,*
        281 F.2d 298 (5th Cir. 1960) ................................................46

*Henry v. Cox,*
        520 S.W.3d 28 (Tex. 2017) ........................................ 18, 31, 39

*In re Barr,*
        13 S.W.3d 525 (Tex. Spec. Ct. Rev. 1998) ...........................43

*In re Hecht,*
    213 S.W.3d 547 (Tex. Spec. Ct. Rev. 2006)..........................................43

*In re Slaughter,*
    480 S.W.3d 842 (Tex. Spec. Ct. Rev. 2015)..........................................43

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield*
    *of Ga.,*
    892 F.3d 719 (5th Cir. 2018) ..................................................................23

*Jacobs v. Jacobs,*
    687 S.W.2d 731 (Tex. 1985)....................................................................54

*Jakomas v. McFalls,*
    229 F. Supp. 2d 412 (W.D. Pa. 2002) ........................................... 34, 58

*Kicklighter v. McIntosh Cnty. Bd. of Comm'rs,*
    162 F. Supp. 3d 1363 (S.D. Ga. 2016)...................................................34

*Kinsey v. Salado Indep. Sch. Dist.,*
    950 F.2d 988 (5th Cir. 1992 ...................................................................51

*Kurowski v. Krajewski,*
    848 F.2d 767 (7th Cir. 1988) ..................................................................57

*Larson v. Cantrell,*
    974 F. Supp. 1211 (N.D. Ind. 1997).......................................................35

*Maldonado v. Rodriguez,*
    932 F.3d 388 (5th Cir. 2019) ...................................................... 48, 52, 66

*Martinez v. Bally's Louisiana, Inc.,*
    244 F.3d 474 (5th Cir. 2001) ..................................................................45

*McCabe v. Sharrett,*
    12 F.3d 1558 (11th Cir. 1994).................................................................65

*McDaniel v. Woodard,*
    886 F.2d 311 (11th Cir. 1989 .................................................................58

*McGowan v. Md.,*
    366 U.S. 420 (1961) ................................................................................61

*McKinley v. Abbott,*
    643 F.3d 403 (5th Cir. 2011) ...................................................29

*McMillian v. Monroe Cnty.,*
    520 U.S. 781 (1997) ............................................. 26, 27, 28, 34

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978 ....................................................... passim

*Morrow v. Balaski,*
    719 F.3d 160 (3d Cir. 2013) (en banc)...................................40

*Mumford v. Basinski,*
    105 F.3d 264 (6th Cir. 1997) .......................................... passim

*Naumovski v. Norris,*
    934 F.3d 200 (2d Cir. 2019)...................................................27

*Newman v. Voinovich,*
    986 F.2d 159 (6th Cir. 1993) .................................................57

*Pickering v. Bd. of Education,*
    391 U.S. 563 (1968) ................................................. 50, 51, 58

*Piotrowski v. City of Houston,*
    237 F.3d 567 (5th Cir. 2001) ......................................... 24, 39

*Polk Cnty. v. Dodson,*
    454 U.S. 312 (1981) ...............................................................42

*Pritchard & Abbott v. McKenna,*
    350 S.W.2d 333 (Tex. 1961)............................................ 31, 38

*R2 Invs. LDC v. Phillips,*
    401 F.3d 638 (5th Cir. 2005) .................................................24

*Renken v. Harris Cnty.,*
    808 S.W.2d 222 (Tex. App.—Houston [14th Dist.] 1991,
    no writ)................................................................................32

*Republican Party of Minn. v. White,*
    536 U.S. 765 (2002) ...............................................................57

*Richardson v. Byrd,*
   709 F.2d 1016 (5th Cir. 1983) .................................................27

*Rodriguez v. Neeley,*
   169 F.3d 220 (5th Cir. 1999 .................................................46

*Rose v. Stephens,*
   291 F.3d 917 (6th Cir. 2002) .................................................67

*See St. Joseph Abbey v. Castille,*
   700 F.3d 154 (5th Cir. 2012) .................................................25

*Sheppard v. Beerman,*
   317 F.3d 351, 355 (2d Cir. 2003) ...........................................58

*Singleton v. Cecil,*
   133 F.3d 631 (8th Cir. 1998), *aff'd*, 176 F.3d 419 (8th
   Cir. 1999) (en banc) .............................................................68

*Soderbeck v. Nurnett Cnty., Wisc.,*
   752 F.2d 285 (7th Cir. 1985) .......................................... 63, 64

*Spiller v. City of Tex. City, Police Dep't,*
   130 F.3d 162 (5th Cir. 1997) .................................................37

*Stegmaier v. Trammell,*
   597 F.2d 1027 (5th Cir. 1979) ........................................ 49, 50

*Townsend v. Vasquez,*
   569 S.W.3d 796 (Tex. App.—Houston [1st Dist.] 2018,
   pet. denied) (op. on reh'g) .....................................................55

*U.S. Dep't of Justice v. Fed. Labor Relations Auth.,*
   955 F.2d 998 (5th Cir. 1992) .................................................51

*Watts v. Bibb Cnty., Ga.,*
   No. 5:08-CV-413 (CAR), 2010 WL 3937397 (M.D. Ga.
   Sept. 30, 2010) ......................................................................34

*Webster v. City of Houston,*
   735 F.2d 838 (5th Cir.1984) (en banc) .................................44

*Weisbuch v. Cnty. of Los Angeles*,
   119 F.3d 778 (9th Cir. 1997) ...................................................69

*Whitley v. Hanna*,
   726 F.3d 631 (5th Cir. 2013) ...................................................24

*Wiggins v. Lowndes County, Miss.*,
   363 F.3d 387 (5th Cir. 2004) ...................................................52

*Zarnow v. City of Wichita Falls, Tex.*,
   614 F.3d 161 (5th Cir. 2010) ...................................... 36, 37, 43

**Statutes**

28 U.S.C. § 1291 ......................................................................15

28 U.S.C. § 1331 ......................................................................15

28 U.S.C. § 1343(a)(3) .............................................................15

42 U.S.C. § 1983 ......................................................................15

Tex. Code Jud. Conduct, Canon 3(B)(11), *reprinted in* Tex.
   Gov't Code Ann., tit. 2, subtit. G, app. B ...........................55

Tex. Fam. Code Ann. § 203.003 ..............................................40

Tex. Fam. Code. Ann. §§ 201.001 *et seq.* ............................... passim

Tex. Gov't Code Ann. § 74.141 ...............................................29

Tex. Gov't Code Ann. §§ 51.301-332, 51.501-.608 .....................37

Tex. Loc. Gov't Code Ann. § 151.004 ............................ 18, 31, 39

Tex. R. Jud. Admin., *reprinted in* Tex. Gov't Code Ann., tit.
   2, subtit. F app. .................................................................43

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................23

**Treatises**

Anthony Champagne,
*The Cycle of Judicial Elections: Texas as a Case Study*,
29 Fordham Urb. L.J. 907 (2002) ................................................... 54, 60

John F. Elder,
33 Tex. Prac., *Handbook of Texas Family Law* § 31.3
(West 2018) .........................................................................................55

John J. Sampson, Harry L. Tindall, et al., *Sampson &*
*Tindall's Texas Family Code Annotated, Chapter 201*
*Introductory Comment*, p. 1006 (Aug. 2018 ed.)................................30

**Constitutional Provisions**

Ohio Const. art IV, § 13.................................................................33

Ohio Const. art IV, § 5..................................................................33

Tex. Const. art. II, § 1 ............................................................. 18, 29

Tex. Const. art. V, § 1 ...................................................................29

Tex. Const. art. V, § 1-a...............................................................43

Tex. Const. art. V, § 8 ........................................................ 18, 31, 38, 39

Tex. Const. art. V, § 9 ..................................................................37

Tex. Const. art. V, § 31(a) ...........................................................44

**Attorney General Opinions**

Tex. Atty. Gen. Op. GA-0126, 2003 WL 22896501 (2003)................... 31, 38

Tex. Atty. Gen. Op. GA-0656, 2008 WL 3999573 (2008)...........................30

## STATEMENT OF JURISDICTION

### A.    District Court Jurisdiction

Because Diane Scott Haddock asserted a claim under 42 U.S.C. § 1983, the district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

### B.    Court of Appeals Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment rendered and entered in the United States District Court for the Northern District of Texas, Fort Worth Division.

This appeal is timely under Federal Rule of Appellate Procedure 4 because the judgment was entered on November 11, 2019, ROA.983, and Plaintiff's Notice of Appeal was filed on December 10, 2019, ROA.984.

## ISSUES PRESENTED

The district court did not err in granting Tarrant County's 12(b)(6) motion to dismiss.

**Response to Appellant's Issue 2:** *Monell*[1] required Haddock to plead both (1) a county-level policymaker and (2) a policy or custom. Because she pleaded neither, she failed to state a claim of municipal liability against Tarrant County.

**Response to Appellant's Issue 1:** As an associate judge appointed to serve at the majority will of the elected state district court judges she served, Haddock was subject to a patronage dismissal. Haddock did not and could not state a claim of retaliatory discharge for any alleged violation of the First Amendment.

Haddock's first and second issues, therefore, should be overruled, and the Order and Final Judgment should be affirmed.[2]

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[2] The County does not address Haddock's third issue, which only pertains to her individual-capacity claims against Judge Bennett. Haddock's Br. 61-65.

## STATEMENT OF THE CASE

Former Texas family law associate judge Diane Haddock swore an oath to preserve and defend the Texas Constitution. ROA.667-668. Therefore, while it is necessary, it is also fitting, that this Court consider the controlling state constitutional and statutory backdrop in examining the district court's dismissal of Haddock's claims against Tarrant County—claims involving the County's alleged failure to protect her from the state family law district court judges' conduct and decisions over her political appointment as an associate judge. ROA.639.

### A.  Texas's elected state district court judges have the exclusive power to appoint or terminate their associate judges.

Influenced by Jacksonian Democracy, the Texas Constitution requires the election of state district court judges. Tex. Const. art. V, § 7. To assist those judges, district courts hearing family law cases may request from a county commissioners court the authority to appoint associate judges. Tex. Fam. Code. Ann. § 201.001(a).

Such associate judges may be authorized either to serve a single district court or multiple district courts. *Id*. § 201.001(c). If authorized to serve a single court, the associate judge "serves at the will" of the state district court judge. *Id*. § 201.004(a). If authorized to serve more than two

courts, the associate judge must be unanimously appointed but "may *only* be terminated by a majority vote of all the judges of the courts which the associate judge serves." *Id*. §§ 201.001(d), .004(c) (emphasis added).

Texas counties authorize and fund the requested associate judge positions through their commissioners courts, which is a legislative function. *See id*. § 201.001 (authorizing associate judges), .003 (compensating associate judges); *Henry v. Cox*, 520 S.W.3d 28, 36 (Tex. 2017) ("A core component of that legislative function is the county budget-making process."). However, by legislative design, associate judges are hired/fired only by state district court judges, and county commissioners courts have no such power. *See* Tex. Fam Code Ann. §§ 201.001, .004.

Indeed, because the Texas Constitution separates state government among the executive, legislative, and judicial branches, the Texas Legislature expressly forbids county commissioners courts from influencing the appointment practices of district court judges. Tex. Const. art. II, § 1; Tex. Loc. Gov't Code Ann. § 151.004. Were a county to influence a state district court judge's appointment practices (*e.g.*, via budgetary coercion), state district courts retain "general supervisory control over the County Commissioners Court." Tex. Const. art. V, § 8.

**B.    Diane Haddock sued Tarrant County over the district court judges' actions and decisions regarding her appointment.**

Haddock was formerly a politically-appointed associate judge, and for 19 years, she served the "District Courts hearing family law matters in Tarrant County, Texas." ROA.429, ROA.643. In this action, Haddock claimed she was subjected to a politically hostile work environment and was wrongfully terminated in violation of the First Amendment because of her and her husband's political associations and speech. ROA.639-688.

Haddock generally alleged that throughout 2018 (a campaign year for six of the seven family district court judges in Tarrant County), she was subjected to "badgering, threats, back-biting, undermining and maligning" for her (1) refusal to patronize candidate Jim Munford, who Judge Patricia Bennett endorsed and supported, (2) her refusal to get her husband Gerald "under control" because he supported Munford's opponent, and (3) her refusal to stop Gerald's political speech concerning the Second Amendment. ROA.645-661. Haddock alleged that she complained to Tarrant County's H.R. director and county judge but that they did not protect her from Judge Bennett. ROA.657, ROA.659.

Haddock initially alleged that Judge Bennett "created a hostile work environment for Diane" designed to make her quit, even though she

did not. ROA.8, ROA.660, ROA.666. However, in 2019, after the newly-elected family law judges assumed office, a vote was taken on Haddock's appointment. ROA.661-662. A majority of the family law district court judges in Tarrant County voted to terminate her appointment. ROA.689.

Haddock eventually sued all seven judges. ROA.8 (naming Judge Bennett), ROA.661 (naming the other six judges). She also sued the County—the "employer she loved" (ROA.8, ROA.661)—alleging that, as "Plaintiff's primary employer," the County "refused to protect Plaintiff from the state district court judges' First Amendment retaliation" (ROA.640). Urging a flawed theory of de facto respondeat superior municipal liability, Haddock asserted that the County "[wa]s … equally culpable" with the district court judges. ROA.640.

## C. Haddock never pleaded a plausible claim of municipal liability against Tarrant County.

In her Original Complaint, Haddock made no effort to state her section 1983 claim within the required *Monell* framework for municipal liability. ROA.8; *see also* ROA.164-184 (Tarrant County's initial 12(b)(6) motion). Haddock amended her complaint twice. First, she tried to plead under *Monell*. ROA.203. Then, with leave of court, she, *inter alia*, named the other six district court judges and added allegations regarding her

appointment's termination, which occurred after she had filed suit. ROA.629, ROA.639. However, Haddock never fully abandoned her effort to hold the County liable under a respondeat superior theory. ROA.640. Nor did she ever plausibly plead under *Monell*. ROA.640.

## D. The district court correctly granted the County's motion to dismiss for failure to state a claim.

The County's motion to dismiss presented two overarching questions: (1) was Haddock, a politically-appointed family law associate judge, subject to a patronage dismissal, such that her § 1983 First Amendment retaliation claim against the County was not plausible; and (2) did Haddock state a claim against the County under *Monell* for the state judicial officers' conduct toward her and the state officials' termination of her appointment? ROA.820, ROA.938. The district court correctly ruled that, under either ground, Haddock had not stated a claim against the County. ROA.974-981. Haddock appealed the district court's Order and Final Judgment granting the County's motion to dismiss. ROA.983-984.[3] That Order and Final Judgment should be affirmed.

---

[3] The district court also denied Haddock's request for leave to amend for a third time, a ruling that Haddock does not challenge on appeal. ROA.981-982; *see* Haddock's Br. generally.

## SUMMARY OF THE ARGUMENT

Texas district court judges hearing family law matters are elected state officials and have the sole power to hire or fire their associate judges. Such associate judges are the political appointees of the district judges the associate judges serve; they assist duly-elected district judges; and they function as, and on behalf of, state judicial officials.

Haddock's municipal liability claims against the County, failed because she could not identify a County-level policymaker or a County policy or custom, both of which *Monell* requires. The County did not control and was statutorily prohibited from influencing the district judges' associate judge appointments. Additionally, the district judges had final say over Haddock's appointment, including the ability to exercise supervisory control over the County Commissioners Court.

Alternatively, Haddock failed to state a violation of the First Amendment. Because associate judges fall within the category of public employees whose work is politically sensitive and who exercise significant discretion in the performance of their duties, Haddock was subject to a patronage dismissal. Accordingly, the district court correctly dismissed Diane's claims against the County.

## ARGUMENTS AND AUTHORITIES

### I.   This Court should affirm the dismissal of Haddock's section 1983 claims against Tarrant County, Texas.

In two issues, Haddock contends that the district court erred in dismissing her claims against Tarrant County. *See* Haddock's Br. 18-60. First, she asserts that she stated a claim for First Amendment retaliation. *Id.* at pp. 18-54. Second, she asserts that she stated a claim under *Monell* against the County. *Id.* at pp. 54-60. For the below reasons, this Court should overrule Haddock's two issues and affirm the district court's dismissal of Haddock's claims against the County. ROA.983.

### II.   The rule 12(b)(6) standard of review.

This Court reviews a dismissal for failure to state a claim *de novo*. Fed. R. Civ. P. 12(b)(6); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga.*, 892 F.3d 719, 726 (5th Cir. 2018). To avoid a motion to dismiss under rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "demands more than" alleging that "the-defendant-unlawfully-harmed-me . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This Court accepts all well-pleaded facts as true and views all facts in the light most favorable to a plaintiff. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012). However, this Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

## III. Diane Haddock failed to state a claim under *Monell*.

### A. 42 U.S.C. § 1983's county liability requirements

To state a claim under § 1983, a plaintiff must demonstrate: (1) a violation of the United States Constitution or federal law; and (2) that the violation was committed by someone acting under color of state law. *See Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). County liability under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694.

The three county liability requirements are necessary to distinguish between individual violations by local employees and those that can be fairly attributed to the governmental entity itself. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578-79 (5th Cir. 2001).

Importantly, a county cannot be held liable under § 1983 based on respondeat superior. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415–16 (1997).

Tarrant County moved for dismissal because Haddock had not sufficiently pleaded *Monell's* three elements or a conspiracy claim. ROA.820. The district court agreed and correctly dismissed Haddock's claims against the County. ROA.974-981.

### B. *Monell* Element 1: Haddock failed to plead a county-level policymaker (Resp. to Haddock's Issue 2).

In accord with the rule of constitutional avoidance, the County turns first to Haddock's Issue 2. *See St. Joseph Abbey v. Castille*, 700 F.3d 154, 165 & n.49 (5th Cir. 2012). The County seeks an affirmance of the Final Judgment dismissing Haddock's claims against the County (ROA.983) based on Haddock's failure to plead under *Monell* either (1) a county-level policymaker or (2) a policy or custom. *See* ROA.974-981.

Throughout this action, and now on appeal, Haddock has improperly tried to tie the County's liability to the alleged conduct and decisions of the state district court judges she served. In the district court, Haddock alleged that "Plaintiff's [alleged] primary employer," the County, "refused to protect Plaintiff from [Defendant Bennett's] First

Amendment retaliation …." ROA.640. From this allegation, Haddock alleged that the County was "equally culpable" with Judge Bennett in creating a hostile work environment and in allowing a majority of the state district court judges to terminate her political appointment. ROA.660-661.

Repeating this error on appeal, she fails to cite the controlling case (*McMillian v. Monroe County*[4]) and urges this Court merely to consider whether the County was her employer. Haddock's Br. 54-60. She argues, "Tarrant County established a cooperative, co-employer working relationship with the District Judges, in which Tarrant County and the District Judges share power, influence and control over Diane's working conditions and work environment." Haddock's Br. 57. Moreover, she asserts, without reference to law, that "Tarrant County delegates administration and oversight of the associate judges to the District Judges," even though section 201 of the Texas Family Code placed the power to appoint/terminate associate judges solely in the hands of the seven district judges she served. *Id.*

---

[4] *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785–86 (1997). In the district court, Haddock relegated *McMillian* to a footnote, said it had "nothing whatsoever to do with" her case, and parenthetically dismissed *McMillian* as a case about a "convicted murderer." ROA.900.

In sum, Haddock's theory of section 1983 liability against the County is fundamentally flawed. It rests upon the wrongheaded notion that the County could be held liable merely because the County (which paid her salary and provided certain other benefits) was her alleged employer. *See Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019) ("[W]hile an employer may be liable under Title VII for any discriminatory conduct that can properly be attributed to the employer through agency principles, § 1983 does not permit such vicarious liability."); *Richardson v. Byrd*, 709 F.2d 1016, 1022 (5th Cir. 1983).

### 1. *The* Monell *Policymaker Test*

Instead of focusing on who was Haddock's employer, *Monell* asks who was the final policymaker over the decision to appoint/terminate Haddock's associate judge position. Whether a person is a state or local policymaker under *Monell* depends on whether the person represents a state or a local government entity when engaged in the events at issue. *McMillian*, 520 U.S. at 785–86. The analysis does not turn on an all-or-nothing determination of an official's acts, and the characterization may not hold true for every type of official act they engage in. *Id.* at 785.

27

The inquiry depends on an analysis of state law and does not rest on a plaintiff's labeling. *Id.* at 786. Instead, courts look to a governmental official's actual function, in a particular area, which depends on the definition of the official's function under state law. *Id.* Relevant factors include how the state's laws and courts categorize the official; whether the official is elected and by whom; the official's duties; to whom the official is fiscally responsible, if anyone; who sets/pays the official's salary; which governmental entity provides the official's equipment, if any; and the official's jurisdiction. *Id.* at 787–91.

### 2. *The state family law district court judges are not County policymakers in appointing/terminating their associate judges.*

The district court properly determined that none of the elected state district court judges is a county-level policymaker in appointing or terminating their associate judges. ROA.974-981. Therefore, the County could not be held liable for the district judges' appointment conduct or decisions toward their political appointees. ROA.974-981.

Under the Texas Constitution, the judicial branch is separate from the legislative and executive branches, and none of them "shall exercise any power properly attached to either of the others." Tex. Const. art. II,

§ 1. District court judges are vested with judicial power and are "undeniably elected state officials." *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 744 (5th Cir. 1986); Tex. Const. art. V, § 1. Indeed, because the state district judges were sued "because of [their] office as judge," they were entitled to Eleventh Amendment Immunity, *see, e.g., McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011), and the State's Attorney General has been defending all of them in accordance with state law. *See* Tex. Gov't Code Ann. § 74.141.

Haddock failed to recognize that the separation of powers doctrine precludes County control over, or liability arising from, the state judicial officials' appointment/termination of their associate judges. As is stated above, district courts having family law jurisdiction may request from a county commissioners court the authority to appoint associate judges to serve multiple family courts. *See* Tex. Fam. Code Ann. § 201.001. While an associate judge is compensated from the county funds available for payment of officers' salaries, the commissioners court's role is limited to its jurisdiction over the county's budget and extends no further. *See id.* § 201.003(c); *see, e.g., Abbott v. Pollock*, 946 S.W.2d 513, 517 (Tex. App.— Austin 1997, pet. denied) (concerning commissioners courts budgetary

power over sheriff's positions); *see* Tex. Atty. Gen. Op. GA-0656, 2008 WL 3999573 (2008) (stating that commissioners court did not have authority to impose rehire restrictions regarding a constable's employee).

While Haddock predominantly worked for the 233rd District Court, she was appointed to serve all seven "District Courts hearing family law matters in Tarrant County, Texas." ROA.847. ***Only*** a majority of the state judicial officials (*i.e.*, the family law district court judges) she served had the power to appoint or terminate her. *See* Tex. Fam. Code Ann. § 201.001, § 201.004; *see also* John J. Sampson, Harry L. Tindall, et al., *Sampson & Tindall's Texas Family Code Annotated, Chapter 201 Introductory Comment*, p. 1006 (Aug. 2018 ed.) ("The elected judges were given both appointment authority and the duty to supervise."). The County, however, had no power to influence, control, or "protect" Diane Haddock from the decisions and conduct of those states district court judges in whether to terminate her appointment.

Notably, both in the district court and now on appeal (*see* ROA.639-689; Haddock's Br. generally), Haddock ignores the law prohibiting commissioners courts from influencing the district judges' appointment/termination of their political appointees. *See* Tex. Loc. Gov't

Code Ann. § 151.004. Haddock also ignores the state constitutional provision vesting final power in the district courts to supervise a commissioners court's improper influence. *See* Tex. Const. art. V, § 8; *see, e.g., Henry*, 520 S.W.3d at 38; *Ector Cnty. v. Stringer,* 843 S.W.2d 477, 479 (Tex. 1992).

Although not addressing the precise issue of *Monell* liability, a 2003 Texas Attorney General Opinion sheds helpful light on the constitutional and statutory framework governing Texas's family law associate judges and the relationship of those positions both to the appointing state district judges, as well as to the commissioners court of the county in which those positions are authorized. Tex. Atty. Gen. Op. GA-0126, 2003 WL 22896501 (2003). The opinion recognizes the legislative function of the commissioners court in creating the budget for the county's offices and departments and in setting the rate of compensation for county employees *Id.*, at \*5. The opinion recognizes that an elected officer (such as a state district judge) "occupies a sphere of authority, which is delegated to [that officer] by the Constitution and law . . . which another officer [*i.e.*, a county official] may not interfere [with] or usurp." *See id.* (citing *Pritchard & Abbott v. McKenna*, 350 S.W.2d 333, 335 (Tex. 1961)).

"That authority generally includes autonomy in hiring and firing employees." *Id.*, at *6 (citing *Pollock*, 946 S.W.2d at 517; *Renken v. Harris Cnty.*, 808 S.W.2d 222, 224 (Tex. App.—Houston [14th Dist.] 1991, no writ)).[5] The clear import for *Monell* is that the County operates in a separate sphere of authority from the State Judiciary regarding associate judge hiring/firing and cannot be found liable for the decisions that elected state judicial officials make with respect to such court personnel.

Furthermore, while no Fifth Circuit decision has yet held that a Texas state district judge is a state policymaker under *Monell* with respect to the appointment/termination of an associate judge, cases from other jurisdictions are instructive. In *Mumford v. Basinski*, Mumford was the appointed chief Referee of the Lorain County Common Pleas Court Domestic Relations Division (the "Domestic Relations Court"). 105 F.3d 264, 266 (6th Cir. 1997). Mumford, a Democrat, served under an elected judge, also a Democrat. *Id.* When Republican Zieba was elected, he fired

---

[5] Notably, the AG Opinion opined that, under Title VII, "a court would conclude that Title VII does not apply to an applicant for an associate judge position under Family Code, chapter 201, subchapter A." This is so because associate judges would either be treated as personal staff or policy making level appointees and not employees under Title VII. Tex. Atty. Gen. Op. GA-0126, 2003 WL 22896501, at *8 n.40.

Mumford. *Id.* Mumford filed First Amendment § 1983 claims against Zieba; his successor, Basinski; and the county. *Id.* at 267.

At issue was whether, for purposes of section 1983 liability, the Domestic Relations Court was a State of Ohio entity, or instead an appendage of the Lorain County government. The Sixth Circuit first examined a prior opinion mandating that an Ohio municipal court was a state government component. *Id.* at 268 (citing *Foster v. Walsh*, 864 F.2d 416 (6th Cir. 1988)). The court also noted that the Ohio Constitution gives supervisory authority over all courts of that state, and the authority to promulgate rules for all Ohio courts, to the Ohio Supreme Court. *Id.* (citing Ohio Const. art IV, § 5).

Additionally, the court noted that the authority to hire the Domestic Relations Court referee is delegated by state statute to the courts and not to counties. *Id.* at 269. Such employees are compensated from special court funds rather than from county treasury general revenues. *Id.* Unexpected vacancies in any state judicial position are temporarily filled by gubernatorial appointment until a future election. *Id.* (citing Ohio Const. art IV, § 13). Also, the Ohio legislature compelled counties to provide facilities supporting the common pleas courts'

operation. *Id*. By statute, such courts are to submit annual funding requests to the local board of county commissioners. *Id*. Examining these facts, the Sixth Circuit held that an Ohio common pleas court was an arm of the state for purposes of section 1983 liability. *Id*. Therefore, the referee's claims against Basinski in his official capacity failed. *Id*.

In *Mumford*, the county had already been dismissed, but dismissal would have been proper based on the holding that the two judges were state policymakers under *Monell* regarding their political decision not to reappoint Mumford. Beyond *Mumford*, other federal courts have similarly determined that state judges appointing subordinate court personnel are state policymakers under *Monell*. *See, e.g., Kicklighter v. McIntosh Cnty. Bd. of Comm'rs*, 162 F. Supp. 3d 1363, 1376 (S.D. Ga. 2016) ("[The] County had no control over who Defendant … hired and fired. Thus, [the County] cannot be liable under Plaintiff's § 1983 claim."); *Watts v. Bibb Cnty., Ga.*, No. 5:08-CV-413 (CAR), 2010 WL 3937397, at *10-11 (M.D. Ga. Sept. 30, 2010) (determining appointed magistrate's § 1983 gender discrimination claim against county for conduct by an elected judge in not reappointing him was not viable under *McMillian*); *Jakomas v. McFalls*, 229 F. Supp. 2d 412, 427-28 (W.D. Pa. 2002) ("[The

judge] could not have been acting as a policymaker for the County when he discharged the plaintiffs."); *Larson v. Cantrell*, 974 F. Supp. 1211, 1219 (N.D. Ind. 1997) (concluding former court employee fired by judge could not hold the county liable under section 1983).

Based on the separation of powers doctrine expressed in the Texas Constitution, state law vesting appointment/termination power solely with the district court judges, Texas Attorney General guidance, and analogous case law, family law district court judges are State of Texas—and not County—policymakers concerning hiring/firing their associate judges. Because the County could not be held liable for the district court judges' conduct or decisions regarding Haddock's appointed position, the district court properly dismissed Haddock's claims against the County.

### C.  *Monell* Element 2: Haddock failed to plead a plausible County policy or custom (Cont'd Resp. to Haddock's Issue 2).

The district court also properly granted the County's 12(b)(6) motion because Haddock failed to plead sufficient facts of *Monell's* second element involving an alleged policy, practice, or custom.

This Court has identified two forms that an "official policy" may take. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168 (5th Cir.

2010). First, "a plaintiff may point to a policy statement formally announced by an official policymaker." *Id*. Second, a plaintiff may show either (1) that a final policymaker took a single unconstitutional action, or (2) a pattern of unconstitutional conduct on the part of municipal actors or employees, who are not policymakers. *Id*. Haddock failed to state a claim under any of these forms.

### 1.    *Haddock did not plead an official policy statement.*

Haddock did not plead an express official policy statement promulgated by Tarrant County's governing body (the Commissioners Court) that *itself* violated her constitutional rights. ROA.639-689; *see Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (to prevail under an express policy theory, a plaintiff must identify specific language in an official policy that explicitly violates a person's constitutional rights). Rather, she alleged (1) violations of express County policy prohibiting discrimination and requiring investigation of same and (2) violations of unwritten customs. ROA.683-685. However, she missed her mark.

### 2.    *Haddock did not plead a single unconstitutional act attributable to a county policymaker.*

A single unconstitutional act may be sufficient for a § 1983 claim only if it was the result of a decision by a final County-level policymaker.

*See Zarnow*, 614 F.3d at 169. Again, Haddock did not plead any specific facts attributing her retaliatory discharge claims at the hands of state district court judges to a final County-level policymaker's unconstitutional act. ROA.639-689.

Diane devoted considerable effort to pleading numerous conclusory, mutually-exclusive written and unwritten policies, including making wildly conspiratorial allegations that Tarrant County's county judge, district clerk,[6] and H.R. director were *Monell* policymakers. ROA.662, ROA.683-685; *see Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."). But as a matter of law, the County had no power or duty to protect Haddock from alleged political retaliation by state judicial officials—who themselves were the final *Monell* policymakers.

---

[6] Haddock's allegations about the district clerk being a *Monell* policymaker based on his alleged calendar-creating conduct are totally implausible given that a district clerk's duties and powers do not concern the appointment of family law associate judges. *See* Tex. Const. art. V, § 9; Tex. Gov't Code Ann. §§ 51.301-332, 51.501-.608.

### a.   The County had no authority to supervise, or to delegate supervision of, associate judges.

Simply put, Haddock did not advance a viable legal theory that the County had coterminous supervisory authority with the judicial branch of the State of Texas over elected state judicial officials' decision making and conduct in hiring/firing associate judges. The appointment practices of the district court judges over their associate judges is a State and not a County function and did not involve a County policy or custom.

Again, the state district court judges alone had the power to appoint, supervise, and terminate Haddock. *See* Tex. Fam. Code Ann. § 201.004. In addition, those district courts retained final supervisory authority over the County Commissioners Court in the event of improper County influence. *See* Tex. Const. art. V, § 8. As this Court has held before, the County could not "interfere [with] or usurp" state judicial officials' sphere of authority. *See Garcia v. Reeves Cnty.,* 32 F.3d 200, 203 (5th Cir. 1994) (citing Tex. Loc. Gov't Code Ann. § 151.004 when finding that "[i]n Texas, employees of an elected official serve at the pleasure of the elected official"); *see also* Tex. Atty. Gen. Op. GA-0126, 2003 WL 22896501, at *6 (citing *Pritchard & Abbott*, 350 S.W.3d at 335).

Ignoring section 151.004 entirely, Haddock asserts that the County could have exerted "financial power" over the district courts. Haddock's Br. 60. On this point, the district court correctly explained that such attempted influence (*e.g.*, via budgetary coercion) "would violate the local government code" and implicate the district courts' supervisory control over the County Commissioners Court. ROA.980-981 (citing Tex. Const. art. V, § 8; Tex. Loc. Gov't Code Ann. § 151.004; *Henry*, 520 S.W.3d at 36).

> **b.** **The County had no duty to protect Haddock from the state district court judges' conduct and decisions regarding her appointment.**

Regarding Haddock's allegations that the County failed to protect her from non-County actors, aside from the fact that the County is statutorily-prohibited from influencing the state officials' appointment/termination decisions, the County had no duty to protect Haddock from those state officials' conduct. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196–97 (1989); *Piotrowski*, 237 F.3d at 583. Any duty to protect must be moored to a "special relationship," which this Court has limited to three scenarios: (1) incarceration; (2) involuntary institutionalization; and (3) the placement of children in foster care. *Griffith v. Johnston*, 899 F.2d 1427, 1439 (5th

Cir. 1990). None of those relationships is implicated in this action, so the County owed no duty to protect Haddock from any alleged unconstitutional conduct of the state district court judges she served. *See id.*; *see also Morrow v. Balaski*, 719 F.3d 160, 163-64 (3d Cir. 2013) (en banc) (affirming dismissal of § 1983 claim against school district for alleged failure to protect student from alleged bullying).

Moreover, Haddock's argument that the County "delegate[d] administration and oversight" over the associate judges is legally incorrect. Haddock's Br. 57. She uses an example where the County restructured its Domestic Relations Office to enable that office's employees to report directly to the Commissioners Court, instead of to the district judges, who composed part of the County's Juvenile Board. Haddock Br. 57-58. However, by statute, the County can choose to administer its Domestic Relations Office through either the County Commissioners Court or its Juvenile Board. *See* Tex. Fam. Code Ann. § 203.003. In contrast, the Texas Legislature gave no similar authority to the County over Haddock's appointment as a family law associate judge,

which was controlled and administered solely by the state judges she served. *See* Tex. Fam. Code Ann. §§ 201.003-.004.[7]

Likewise, the County cannot be held liable under a respondeat superior theory—even if this Court believed that the district court judges had violated Haddock's rights (which they did not). "In virtually every instance where a person has had his or her constitutional rights violated by a [county] employee, a § 1983 plaintiff will be able to point to something the [county] 'could have done' to prevent the unfortunate incident." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). A court must avoid falling back to "de facto respondeat superior liability" which the Supreme Court "explicitly prohibit[s.]" *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996).

As a result, there must be a "direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404. And the policy identified by a plaintiff must be "the moving force of the constitutional violation in order

---

[7] Haddock also cited the County's Employee Handbook (ROA.674-681), but the County could not, through the adoption of personnel policies, contravene state law or preclude lawful patronage dismissals. *See Abbott*, 946 S.W.2d at 517; *Reeves Cnty*, 32 F.3d at 203; *see* ROA.799 ("These policies are only guidelines.... [and] do not constitute a contract of employment, nor any other binding agreement.").

to establish the liability of [the] government body." *Polk Cnty. v. Dodson*, 454 U.S. 312, 454 (1981). "To adopt lesser standards of fault and causation would open [counties] to unprecedented liability." *City of Canton*, 489 U.S. at 391.

Here, Haddock improperly asserted an impermissible de facto respondeat superior liability claim against the County that, if allowed, would potentially subject the County to unprecedented liability. *See id.*; *Doe v. Taylor Index. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994). The district court properly rejected such a position in granting the County's motion to dismiss. ROA.974-981.

### c. The Texas Supreme Court—not the County—regulates alleged judicial misconduct.

Haddock complained in the district court and insinuates on appeal that certain district court judges violated various canons of judicial conduct. ROA.929; Haddock's Br. 51. Again, this is not something that the County would be responsible for investigating or enforcing.

Rather, as the district court properly recognized, ROA.979-980, the Supreme Court of Texas is responsible for the efficient administration of the judicial branch and is responsible for promulgating and enforcing rules of judicial conduct and administration governing district court

judges. Tex. Const. art. V, § 1-a (regarding discipline and removal of state judges; State Commission on Judicial Conduct), § 31(a); Tex. Code Jud. Conduct, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. B; Tex. R. Jud. Admin., *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app.[8] Although Haddock asserted in the district court that numerous judicial conduct rules had been violated (ROA.929), she neither alleged that she pursued her available avenues of redress, nor did she allege that the County prevented her from pursuing such relief. ROA.639-688.

### 3.    *Haddock insufficiently pleaded a pattern of unconstitutional conduct.*

Likewise, the district court properly dismissed Haddock's claims because she failed to plead sufficient facts of a widespread pattern of unconstitutional conduct. *See Zarnow*, 614 F.3d at 169. In fact, not only did she not plead a widespread pattern (ROA.639-689), but Haddock judicially admitted to the district court that there was no widespread pattern (ROA.918).

---

[8] *See, e.g., In re Slaughter*, 480 S.W.3d 842 (Tex. Spec. Ct. Rev. 2015) (involving complaint of improper social media comments); *In re Hecht*, 213 S.W.3d 547 (Tex. Spec. Ct. Rev. 2006) (involving complaint of wrongful endorsement of federal judicial nominee); *In re Barr*, 13 S.W.3d 525 (Tex. Spec. Ct. Rev. 1998) (involving complaint of inappropriate sexual harassment of, and conduct toward, attorneys and litigants).

Rather than pleading a pattern of unconstitutional conduct, Haddock focused almost entirely on her own isolated situation. ROA.639-688; *see Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy."). For conduct to be sufficiently widespread, it must have "occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir.1984) (en banc).

Haddock needed to plead "similarity, specificity, and sufficiently numerous prior incidents." *See, e.g., Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017) (rejecting claim of pattern of practice based on insufficient prior incidents). Haddock, instead alleged, without context, ***one*** 20-year-old case involving non-policymaking sheriff's department employees. ROA.681-682. In short, Haddock's claim of a widespread practice constituting a custom involving one, factually dissimilar, 20-year-old case was not plausible.

More critically, Haddock judicially admitted to the district court that there was no widespread pattern or practice:

> [T]he evidence in later stages of the case will show that no Tarrant County associate judge … has been fired on political loyalty grounds in the history of Tarrant County's associate judge program. … Not a single time, before Diane, have the District Judges or Tarrant County acted with such reckless disregard for the constitutional rights of an associate judge-employee.

ROA.918; *see Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them."). This judicial admission precluded Haddock from establishing a widespread pattern or practice finding against the County. *See Martinez,* 244 F.3d at 476. ("[A] judicial admission … has the effect of withdrawing a fact from contention.").

### 4.    *Haddock did not state a conspiracy claim.*

Attempting an end-run around *Monell*, Haddock buried the threadbare elements of conspiracy in a footnote in her Original Complaint. ROA.666. Tarrant County thrice moved to dismiss Haddock conclusory conspiracy claim (ROA.158, ROA.479, ROA.842), and Plaintiff responded by cutting and pasting the footnote from her complaint into a footnote in each motion-to-dismiss response (ROA.374, ROA.594, ROA.893).

Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Haddock's conspiracy claim was properly dismissed. *See Iqbal*, 556 U.S. at 678; *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999) ("A conclusory allegation of conspiracy is insufficient. Specifically, plaintiffs must identify an illegal objective of the agreement."). Fundamentally, the County could not be held liable under a conspiracy theory in refraining from doing something that state law barred the County from doing (*i.e.*, influencing the state district court judges' appointment decisions). Finally, because Haddock's conspiracy claim was not actionable without a violation of section 1983 (*see Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960)), which Haddock did not assert (for the reasons stated below), Haddock's conspiracy claim was properly dismissed. ROA.974-81.

### D. Monell Element 3: Because she was subject to a patronage dismissal, Haddock failed to plead that a County policy was the moving force of a constitutional violation (Resp. to Haddock's Issue 1).

While this Court should affirm the dismissal of Haddock's claims against the County for the above-stated reasons, this Court should alternatively affirm because Haddock failed to plead a constitutional violation. To have plausibly pleaded a § 1983 claim, under *Monell's* third

element, Haddock had to have alleged a violation of her constitutional rights. *See Monell*, 436 U.S. at 694. Haddock's first issue asserts that the district court erred in dismissing her First Amendment retaliation claims involving (1) freedom of intimate association/marriage, (2) freedom of petition, (3) freedom of speech, and (4) freedom from coerced political patronage in public employment. Haddock's Br. 11, 18-54. But the key flaw in Haddock's argument is her incorrect assumption that her political appointment could not be terminated for political reasons. It could be.

Breaking her first issue into four subparts, Haddock expends considerable effort claiming that the district court did not consider all of her First Amendment claims and should have applied a variety of tests and standards to allow her claims to go forward. Haddock's Br. 18-54. However, the County broadly argued in the district court that all of Haddock's First Amendment claims against the County should be dismissed. ROA.819 ("Diane has not pleaded … a viable First Amendment violation….").

The district court correctly agreed that Haddock fell "within the exceptional class of public servants from whom political allegiance may be demanded[,]" requiring dismissal of all of Haddock's retaliatory

discharge claims. *See* ROA.968-974; *Reeves Cnty.*, 32 F.3d at 205. Because Haddock's political ideology, associations, and activities properly influenced the district judges' assessment of her suitability to serve as an associate judge, the district court correctly found she had not stated a retaliatory discharge claim. ROA.974.

### 1. *Political dismissals are permitted.*

It is clear from the text, structure, and citations in the district court's Order that the district court followed this Court's body of First Amendment discharge cases, including two 2019 opinions. ROA.968-974; *see Maldonado v. Rodriguez*, 932 F.3d 388 (5th Cir. 2019); *Griggs v. Chickasaw Cnty., Miss.*, 930 F.3d 696 (5th Cir. 2019). Generally, a First Amendment political retaliation claim requires proof that a plaintiff (a) suffered an adverse employment action (b) because of (c) her "speech or activity related to a matter of public concern." *Maldonado*, 932 F.3d at 391 (quoting *Aucoin v. Haney*, 306 F.3d 268, 274 (5th Cir. 2002)).

In *Elrod v. Burns*, 427 U.S. 347, 357 (1976), the Supreme Court held that because "political belief and association constitute the core of those activities protected by the First Amendment," *id.* at 356, the practice of patronage dismissals "clearly infringes First Amendment interests." *Id.*

at 360. However, the Supreme Court carved out an exception, stating that patronage dismissals of those in policymaking positions are permissible in certain cases to ensure that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration...." *Elrod*, 427 U.S. at 367. Likewise, if "an employee's private political beliefs would interfere with the discharge of [her] public duties, [her] First Amendment rights may be required to yield to the State's vital interests in maintaining governmental effectiveness and efficiency." *Branti v. Finkel*, 445 U.S. 507, 517 (1980).

The policymaker label carries no talismanic significance; rather, it is "shorthand for a broad category of public employees whose work is politically sensitive and who exercise significant discretion in the performance of their duties." *Hagan v. Quinn*, 867 F.3d 816, 824 (7th Cir. 2017). Policymakers may be "public employees whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors." *Aucoin*, 306 F.3d at 273 (quoting *Stegmaier v. Trammell*, 597 F.2d 1027, 1035 (5th Cir. 1979)). "A

policymaker may also be an individual who 'controls or exercises a role in a decision making process as to the goals and general operating procedures of (an) office.'" *Id*.

Additionally, confidential employees may be subject to patronage dismissals; one is a confidential public employee if "she has access to confidential documents or other materials that embody policymaking deliberations and determinations." *Stegmaier*, 597 F.2d at 1039 (citation omitted). "[T]he ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for effective performance of the public office involved." *Branti*, 445 U.S. at 518.

Furthermore, in *Connick v. Myers*, 461 U.S. 138 (1983), the Supreme Court expressly adopted a balancing analysis first recognized in *Pickering v. Board of Education*, 391 U.S. 563 (1968), to determine the appropriateness of requiring political allegiance in the context of political speech. Under *Connick* and *Pickering*, where a public employee is discharged because of the disruptive effect of her own, normally-protected speech, a court must "seek 'a balance between the interests of

the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Connick*, 461 U.S. at 142 (alteration in original) (quoting *Pickering*, 391 U.S. at 568).

An employee bears the burden of establishing that her speech or activity related to a matter of public concern. For example, campaigning for/against a political candidate relates to a matter of public concern. *See Coughlin v. Lee*, 946 F.2d 1152, 1158 (5th Cir. 1991). Once an employee demonstrates a matter of public concern, the employer must then establish that its interest in promoting the efficiency of the services provided by its employees outweighs the employee's interest in engaging in the protected activity. *U.S. Dep't of Justice v. Fed. Labor Relations Auth.*, 955 F.2d 998, 1005 (5th Cir. 1992). This Court has noted that in "cases involving public employees who occupy policymaker or confidential positions ... the government's interests more easily outweigh the employee's (as a private citizen)." *Aucoin*, 306 F.3d at 274; *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 994 (5th Cir. 1992).

For example, in line with other circuits, this Court has held that assistant district attorneys "occupy positions requiring political loyalty and are not protected from political dismissals under the First Amendment." *Maldonado*, 932 F.3d at 388 (citing *Aucoin*, 306, F.3d at 275; *Borzilleri v. Mosby*, 874 F.3d 187, 193 (4th Cir. 2017)). In examining non-assistant DA positions, this Court noted that this Court's case law strongly suggests that assistant DAs "must be terminable for their political activity." *Id.* at 394.

Additionally, in *Maldonado*, this Court juxtaposed two positions in the same county to show whether each could require political loyalty and allow, or not, the position to be terminated on political grounds. 932 F.3d at 392-93 (comparing *Gentry v. Lowndes County, Miss.*, 337 F.3d 481, 487-88 (5th Cir. 2003) (county road manager, second highest non-elected county management position, may be fired for political opposition), *with Wiggins v. Lowndes County, Miss.*, 363 F.3d 387, 391-92 (5th Cir. 2004) (county road foreman simply implements policy and may not be politically discharged)); *see also* ROA.971 (citing this dichotomy).

### 2. *Texts family law associate judges are policymakers and confidential employees.*

Whether a Texas family law associate judge is a policymaker or confidential employee under *Elrod–Branti* presents a novel question of law within the Fifth Circuit, but the answer is easy to discern. Associate judges should be viewed as policymakers and confidential employees.

To begin the analysis, this Court should examine the statutory duties and authority of family law associate judges. An associate judge adjudicates matters pursuant to a district court's referral, Tex. Fam. Code Ann. §§ 201.005-.007, and makes findings and recommendations that "become[] the order or judgment of the referring court only on the referring court's signing the proposed order or judgment" *id.* § 201.013(b); *see also id.* §§ 201.011 (report), 201.012, 201.015 (right to de novo hearing before referring court).

An associate judge is virtually unlimited in the matters that can be referred by the district court. Although the court can limit the power or duties of an associate judge (*id.* § 201.006(b)), it is usually customary to authorize the associate judge to hear any matters permitted by statute, which includes every type of temporary or pretrial hearings, as well as final hearings concerning motions to modify, contempt, any matter

involving a default judgment, divorces having a waiver of citation, and any other matter referred by the judge that is in the jurisdiction of the court or any matter on which the parties agree (*id*. § 201.005). The general powers are described in § 201.007 and include the attachment of a witness and detention on a finding of contempt. An associate judge is authorized, if there be no objection, to preside over a jury trial and final hearings, including a final termination hearing. *Id*. § 201.009.

Texas's elected judges and their associate judges exercise considerable discretion on family law matters, such as custody, visitation, and possession, and they make and effectuate policy through their rulings and judicial acts.[9] *See Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). Because of the vast discretion afforded to family law district court judges—and their associate judges—those judges' rulings necessarily effectuate judicial policy on matters with all of those judges' discretion.

As one Texas court of appeals recently recognized, "[Associate judges] do not have their own courts; they assist duly elected judges. And

---

[9] *See* Anthony Champagne, *The Cycle of Judicial Elections: Texas as a Case Study*, 29 Fordham Urb. L.J. 907, 917 & n.56 (2002) ("One recent analysis of 140 articles discussing the link between party affiliation and performance on the bench confirmed that 'party is a dependable measure of ideology on modern American courts.'")).

associate judges' 'employment' is terminable 'at the will' or 'by a majority vote of' the judge or judges that the associate judge serves." *Townsend v. Vasquez*, 569 S.W.3d 796, 805-06 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (op. on reh'g) (citing Tex. Fam. Code Ann. § 201.004(a)-(d)). Associate judges, therefore, must be loyal to the judges they assist and serve. To this end, one Texas family law commentator has noted,

> the most successful associate judges are those who have a complete familiarity with the system in which they work and with the judicial philosophy of the court for whom they work. This usually results in an associate judge's findings and orders that closely follow the orders that the court would have entered, making a successful appeal unlikely and a waste of time.

John F. Elder, 33 Tex. Prac., *Handbook of Texas Family Law* § 31.3 (West 2018).

With respect to associate judges being confidential employees, Texas law states that "[a] judge shall not disclose or use, for any purpose, unrelated to judicial duties, nonpublic information acquired in a judicial capacity." Tex. Code Jud. Conduct, Canon 3(B)(11), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. B. Associate judges are bound by this Canon. *Id.*, Canon 6(a)(2). For all cases or matters referred to an

associate judge, she is a confidential employee with respect to the nonpublic information acquired in her judicial capacity.

### 3. The Mumford opinion illustrates why Texas associate judges are subject to political dismissal.

In *Mumford*, the Sixth Circuit held that an Ohio domestic relations court referee is "an inherently political post which was not safeguarded from political patronage termination by the First Amendment," holding,

> [u]nquestionably, the inherent duties of an Ohio domestic relations court referee entail a relationship of confidence between the referee and the judge(s) which he [or she] serves. The referee is privy to confidential litigation materials and internal court communications in the discharge of his [or her] duties, and further maintains a personal confidential relationship with the judge(s) which he [or she] serves. Moreover, the referee effectively makes policy for, or suggests policy to, the court on each occasion that he [or she] resolves a dispute in the court's name or recommends a disposition to a judge. Consequently, his [or her] supervising judge must be convinced that the judgment capabilities of the referee, and the confidential relationships that arise as a result of the intimate judicial and quasi-judicial discussions, are unquestionable. **The referee's *political ideology*, *associations*, and activities may rationally influence a judge's assessment of an individual's suitability for a position as his [or her] referee.**

105 F.3d at 272 (internal citations omitted) (emphasis added). This same reasoning applies to Texas family law district court associate judges.

### 4. Judicial staff—including associate judges—are policymakers and confidential employees.

Judges and hearing officers typically occupy policymaking roles for First Amendment purposes. *See Republican Party of Minn. v. White*, 536 U.S. 765, 784 (2002) (Scalia, J.) ("Not only do state-court judges possess the power to 'make' common law, but they have the immense power to shape the States' constitutions as well. … Which is why the election of state judges became popular."); *Chisom v. Roemer*, 501 U.S. 380, 399 n.27 (1991) ("[The Supreme Court has] recognized that judges do engage in policymaking at some level."); *Newman v. Voinovich*, 986 F.2d 159, 163 (6th Cir. 1993) ("With respect to gubernatorial appointments to the state judiciary, we hold that judges are policymakers within the meaning of *Elrod* and *Branti*."); *Kurowski v. Krajewski*, 848 F.2d 767, 770 (7th Cir. 1988) ("A judge both makes and implements governmental policy."). Haddock's reliance on *Adams v. Governor of Delaware*—holding otherwise—is misplaced. 922 F.3d 166 (3d Cir. 2019), *cert. granted*, 140 S. Ct. 602 (U.S. Dec. 6, 2019) (No. 19-309).

First, the case *Adams* distinguishable because it involves a constitutional attack on a provision in the Delaware Constitution requiring party affiliation to be appointed a state judge. *Id.* at 176-177.

That is not at issue here. Second, *Adams's* holding that judges are not policymakers ignores Supreme Court precedent and is wrong. *Id.* at 181. Other than the aberrant *Adams* decision, federal courts have consistently found that judicial staff—including associate judges—present the "paradigm example" of an employment setting with the unique requirements of cooperation and confidentiality discussed in *Pickering*.[10]

The Seventh Circuit explained the unique demands of confidentiality and cooperation in judicial chambers as follows:

> Among the countervailing governmental interests that have been recognized [for the *Pickering* balancing test] is the practical reality of governance that those with policy-making

---

[10] *See, e.g., Gregorich v. Lund*, 54 F.3d 410, 417 (7th Cir. 1995) ("a judge's chambers are perhaps '[t]he paradigm example' of an environment in which a close working relationship is essential to perform successfully the public function."); *Sheppard v. Beerman*, 317 F.3d 351, 355–56 (2d Cir. 2003)) ("Thus, at a very minimum, a respectful, if not congenial, relationship between clerk and judge is a prerequisite to a productive work environment within a judge's chambers."); *McDaniel v. Woodard*, 886 F.2d 311, 315 (11th Cir. 1989) (judge was not required to tolerate conduct by confidential secretary "which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships"); *Balogh v. Charron*, 855 F.2d 356, 356-7 (6th Cir. 1988) ("Judges must be able to rely on the confidentiality of the relationship with [judicial] aides, just as they must rely on the confidentiality of their relationship with their private secretaries and law clerks."); *Hall v. Small Bus. Admin.*, 695 F.2d 175, 176 (5th Cir. 1983) ("Judges' robes must be as spotless as their actual conduct. These expectations extend to those who make up the contemporary judicial family, the judge's law clerks and secretaries."); *Dyer v. Radcliffe*, 169 F. Supp. 2d 770, 774–75 (S.D. Ohio 2001) (stating that juvenile court referee was "directly responsible to [an] elected official[] … and [held] a fiduciary or administrative relationship to such elected county official"); *Jakomas*, 229 F. Supp. 2d at 420 ("We agree with the defendant that the relationship between a judge and his staff is highly confidential."); *see also Hagan*, 867 F.3d at 828 (treating appointed worker's compensation commission arbitrators as First Amendment policymakers).

> responsibilities "must have faithful agents." [citation omitted]
> . . . The application of this principle to the judiciary requires
> that we adjust our perspective to take into account its
> particular function within our governmental structure.
> Courts are not like most other institutions of government.
> Their primary role is not to formulate or to manage programs,
> but to decide cases. In this process, the relationship of the
> decisionmaker to those who assist in the task of deciding cases
> is unique. . . . Other courts and jurists have recognized that
> those who work closely with judicial officers must be loyal,
> cooperative, and responsible, [footnote omitted] Needless to
> say, confidentiality is essential.

*Gregorich*, 54 F.3d at 417. For instance, where a staff employee was privy to internal memoranda, draft opinions, and the judge's thought processes, the judge needed only to perceive that the employee's attempt to unionize other staff research attorneys threatened the working relationship in his court to terminate the employee, and "was not required to wait for 'events to unfold to the extent that the disruption of the office and the destruction of the working relationships [was] manifest' before he acted." *Id.* (quoting *Connick*, 461 U.S. at 152).

> ### 5.    *The district court properly determined Haddock was a policymaker and confidential employee and balanced the government's interests against Haddock's.*

**Patronage (Affiliation).** In her Issue 1(D), Haddock contends that she stated a political patronage claim, largely relying on the dubious

*Adams* decision discussed above. As set forth in sections III(D)(1)-(4) above, Haddock was correctly viewed as an *Elrod–Branti* policymaker/confidential employee.

Moreover, the fact that Haddock was appointed to serve all of the district courts hearing family law matters, instead of one, did not remove her from being in a position in which political allegiance was required. *See Reeves Cnty.*, 32 F.3d at 205. As Haddock alleged, six of the seven family law district court judges in Tarrant County simultaneously come up for election, as in 2018. ROA.674. Consider if in 4, 8, or 20 years, candidates of a differing party (or with a divergent ideology within the same party) were to sweep those six benches, and then 4, 8, or 20 years later, another set of candidates did the same. And so forth. Would the majority of winning judges be required to keep their predecessors' appointed associate judges?

Because partisan elections impacted the composition of the courts that Haddock served,[11] and because her own position was politically connected to those elected judges, political allegiance was required of her.

---

[11] *See, e.g.,* Champagne, *supra* note 9, at 918 (discussing Republican defeat of 19 Democratic judges in Harris County, Texas).

Therefore, Haddock was subject to a patronage dismissal, and she had no claim for retaliatory discharge. *See Aucoin*, 306 F.3d at 274-75.

**Freedom of Speech.** Haddock also contends that she stated a Free Speech claim (Haddock's Br. 11); however, in her Issue 1(C) (*id.*, 35-46), Haddock concedes that none of the alleged speech that the district court judges disapproved of was her own (*id.*, 35, 42). Rather, she says it was her husband's or third-person internet commenters. *Id.*, 35, 42. Having conceded that none of her pure Free Speech claims involved her own speech, Haddock cannot complain that she properly pleaded a Free Speech claim. Moreover, to the extent that she is asking this Court to treat either her husband's speech or that of internet bloggers as her own, she lacks standing to do so. Haddock's Br. 35-46; *see McGowan v. Md.*, 366 U.S. 420, 429 (1961) ("[T]he general rule is that 'a litigant may only assert [her] own constitutional rights or immunities.'").

**Freedom of Petition.** Haddock contends in Issue 1(B) that the district court erred in dismissing her Freedom of Petition claim (premised on her allegation that she was fired for filing suit). Haddock's Br. 29-35. In essence, Haddock contends that her Freedom of Petition claim was not

before the district court and was not specifically addressed in the Order dismissing her First Amendment claims. *Id.*

For one thing, the County broadly moved to dismiss all of Haddock's First Amendment claims, which would have included the Freedom of Petition claim. ROA.819. Additionally, in moving to dismiss her Freedom of Speech claim, the County's motion necessarily encompassed any claim under the Petition Clause. *Id.*

Finally, the analysis for retaliatory discharge claims for alleged violations of the right to free speech is the same as for claims of alleged violations of the right to petition. *Borough of Duryea Pa. v. Guarnieri*, 564 U.S. 379, 398 (2011). Therefore, the district court's correct ruling disposing of Haddock's First Amendment claims encompassed and correctly disposed of Haddock's Petition Clause claim. *See id.*

**Freedom of Intimate Association.** Despite her various iterations of First Amendment claims, Haddock's chief complaint was that the district court judges violated her right of intimate association with her husband because of his First Amendment activity. Haddock's Br. 18-29. Specifically, in Issue 1(A), but throughout her brief, Haddock

rejects the notion that the district court could or should have dismissed that claim.

Haddock served the elected district judges as a policymaker and their confidential employee. *See* § III(D)(1)-(4), *supra*. Given the political nature of Texas family law associate judges, the functions of such associate judges, the close working relationship needed to effectively function as, and on behalf of, the elected judges, and given replete examples from other jurisdictions concerning judicial personnel, the district court properly viewed Haddock's appointed position as falling within that class of public servants from whom political discharges do not violate the First Amendment. ROA.968-74. Under this rubric, the district court correctly dismissed all of Haddock's First Amendment claims, including her intimate association claim. *See, e.g., Soderbeck v. Nurnett Cnty., Wisc.*, 752 F.2d 285, 287–88 (7th Cir. 1985) (Posner, J.) (rejecting intimate association claim upon finding that the plaintiff was an *Elrod–Branti* policymaker/confidential employee).

Judge Posner bluntly stated, "[y]ou cannot run a government with officials who are forced to keep political enemies as their confidential secretaries, and [Plaintiff] was the political enemy of her husband's

political enemy." *Id*. at 288. "If Rosalyn Carter had been President Carter's secretary, President Reagan would not have had to keep her on as his secretary." *Id*. Similarly, given Haddock's pleading that several district court judges and/or winning judicial candidates of the courts she served were the political adversaries of her husband, including one person whom Haddock's husband had openly campaigned against (ROA.645-661), those judges had the right not to keep Haddock.[12]

Moreover, while it was arguably unnecessary to engage in *Pickering* balancing, the district court properly found that Haddock's claims failed at the balance between the government's interest and Haddock's interest, such that her speech, petition, and intimate association claims were not viable. ROA.969.

The fundamental question is whether elected district court judges should be forced to keep associate judges whose spouses campaigned against the same appointing/referring judges. While not reached in *Adler v. Pataki*, the court considered applying a *Pickering*-style balancing test

---

[12] *See also Gonzalez v. Benavides*, 712 F.2d 142, 148 (5th Cir. 1983) ("There is a governmental interest in securing those unique relationships between certain high level executives and the elected officials at whose grace they serve. For this narrow band of relationships, refusing to grant First Amendment found tenure would seem to take away little freedom not already lost in accepting the appointment itself ….").

to an intimate association retaliation claim. 185 F.3d 35, 44–45 (2d Cir. 1999); *see also McCabe v. Sharrett*, 12 F.3d 1558, 1569-74 (11th Cir. 1994) (concluding that intimate association claim failed under either the *Pickering* balance or *Elrod–Branti* tests).

A policymaker's **associations** rationally influence a judge's assessment of an individual's suitability for a position. *See Mumford*, 105 F.3d at 272. Therefore, Haddock's right to an intimate association with her husband was properly balanced against the family district court judges' interest in avoiding disruption attributable to Haddock's husband's political activity in campaigning for/against the family district court judicial candidates who, once elected, would have supervised Haddock had her appointment not been terminated by those elected state judicial officials.

In this circumstance, the *Pickering* balance must tip in favor of the elected district judges, who oversaw Haddock's appointment. *See Borzilleri*, 874 F.3d at 194. "[W]here an employer 'does not violate his [or her] employee's association rights by terminating him [or her] for political disloyalty, the employer also does not violate his [or her] employee's free speech rights by terminating for speech displaying that

political disloyalty.'" *Id*.; *see also Hagan*, 867 F.3d at 828 ("[E]lected officials [may] replace high-level and confidential employees not only when those employees merely belong to the 'wrong' political party or faction but also when they engage in speech or other First Amendment activity that could undermine the policy or political goals of the officials accused of the retaliation."). *Brozilleri*, which this Court has relied on, demonstrates why Haddock's intimate association claim was properly dismissed. *See Maldonado*, 932 F.3d at 392.

Borzilleri (an assistant state's attorney) was fired not only for patronizing a losing candidate for Baltimore City State's Attorney, but also because she spoke out in favor of the losing candidate. *Id*. at 189-90. The Fourth Circuit upheld the patronage dismissal under *Elrod* and *Branti* given Borzilleri's policymaker position as an assistant state's attorney. *Id*. at 192-193.

But the Fourth Circuit also affirmed the district court's granting of a 12(b)(6) motion on Borzilleri's speech claim under *Pickering*. *Id*. at 194-95. "Once we have found that the *Elrod–Branti* policymaker exception applies, the *Pickering* balance tips in favor of the government because of its overriding interest in ensuring an elected official's ability to

implement his policies through his subordinates." *Id*. at 194 (citing *Rose v. Stephens*, 291 F.3d 917, 922 (6th Cir. 2002) (noting that *Pickering* balancing favors the government where the employee is a policymaker under *Elrod–Branti*)).

Giving its rationale for this holding, the court explained that it "[saw] no reason to depart from that conclusion …, especially where an employee has vigorously campaigned against the election of the very person who became her boss." *Id*. at 194. For to "strike the *Pickering* balance differently, any assistant prosecutor facing a patronage dismissal permitted by *Elrod–Branti* could attempt to shield [her]self behind *Pickering* by publicly criticizing [her] newly elected superior." *Id*. at 194-95. The result would be a self-defeating First Amendment jurisprudence. *Id*. at 195.

Following this rationale in this Circuit, consider the following hypothetical. Suppose an assistant DA affiliated herself with the campaign of a DA candidate who lost. Would the winning DA be able to legally discharge the ADA on political grounds? Yes. *See Aucoin*, 306 F,3d at 276.

Now further assume that the ADA sat quietly but allowed her spouse to vociferously campaign for a losing DA candidate. Would the winning DA be able to discharge the assistant on political grounds? Again, the answer must be yes. *See, e.g., Gonzalez*, 712 F.2d at 148 ("reasoning that permits the President to terminate a [high-level official] because he is a member of the opposition party but prohibits him from firing [the official] for public expression of policy contrary to his own suffers for lack of defining principle"); *see also Singleton v. Cecil*, 133 F.3d 631, 635 (8th Cir. 1998) (rejecting claim that discharge of at-will police employee violated his First Amendment right of intimate association where wife plotted to have police chief arrested), *aff'd on this point*, 176 F.3d 419, 423–24 (8th Cir. 1999) (en banc).

The results should be no different for associate judge positions. Similar to these hypotheticals, Haddock's First Amendment claims— including her intimate association claims—were all properly dismissed. ROA.968-974. While *Pickering* balancing is frequently done at the summary judgment stage (*see, e.g., Aucoin*, 306 F.3d at 274-77), the district court properly engaged in balancing at the 12(b)(6) stage given

(1) Haddock's high-ranking confidential and policymaking position as an appointed associate judge[13] and (2) the facts she pleaded.[14]

Haddock may be upset that her appointment ended before she had hoped, ROA.661, but she did not have a lifetime appointment. Her appointment was always subject to a majority vote of the elected family law district court judges. *See* Tex. Fam. Code Ann. § 201.004(b).

> Elections mean something. Majorities bestow mandates. Elected [judges] translate those mandates into policies. And [associate judges] implement those policies. It is therefore entirely proper for an electoral victor to assess whether [he or] she has confidence in those charged with fulfilling [his or] her "duty to the electorate and the public at large to ensure that [his or her] espoused policies are implemented." [citation omitted] … It may often be the case that those who served in the *ancien régime* are resistant to a change in the established way of doing things. To entrench former policymakers may, in such circumstances, deprive democratic politics of its necessary adaptability.

---

[13] *See, e.g.*, *Borzilleri*, 874 F.3d at 194-95; *Hagan*, 867 F.3d at 826 ("Plaintiffs' First Amendment retaliation claims are barred by the policymaking corollary to the *Pickering* analysis."); *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("No panel could decide that Federal Rule of Civil Procedure 12(b)(6) never applies to any *Pickering* balancing case …."); *Hall v. Ford*, 856 F.2d 255 (D.C. Cir. 1988) (apply *Pickering* at 12(b)(6) stage).

[14] As alleged in her Second Amended Complaint: Haddock wanted to be a district court judge but opted out. ROA.645-46. Jim Munford ran. ROA.646. Bad blood developed between the Haddocks and the Munfords. ROA.646-647. Judge Bennett wanted Haddock to support candidate Munford; Haddock refused. ROA.646. Munford won one of the seven benches that supervised Haddock. ROA.642. Also, the judge Haddock primarily worked with retired, and the incoming judge (Judge Newell) gave Haddock the impression he wanted to replace her. ROA.658-59. After Haddock's termination, Haddock was replaced by someone close to Judge Newell. ROA.661-662.

*See Borzilleri*, 874 F.3d at 192.

Whether the County had wanted Haddock to remain appointed or not, the duly-elected district court judges voted to end her appointment, and Haddock had no First Amendment protection from that vote. Thus, the district court properly dismissed all of her retaliatory discharge claims, including her intimate association claim. ROA.968-974.

## PRAYER FOR RELIEF

Accordingly, Tarrant County, Texas respectfully requests that this Court (1) overrule Diane Haddock's first two issues on appeal and (2) affirm the district court's dismissal of Haddock's claims against the County (and this action) and the district court's Final Judgment.

Respectfully submitted,

/s/ Melvin Keith Ogle

**MELVIN KEITH OGLE**
State Bar No. 24037207
Assistant Criminal District Attorney

SHAREN WILSON
CRIMINAL DISTRICT ATTORNEY
TARRANT COUNTY, TEXAS

Tarrant County Criminal District
Attorney's Office
Tim Curry Criminal Justice Center
401 W. Belknap, 9th Floor – Civil
Division
Fort Worth, Texas 76196
817-884-1233 – Telephone
817-884-1675 – Facsimile
E-Mail: mkogle@tarrantcountytx.gov

**COUNSEL FOR DEFENDANT -
APPELLEE, TARRANT COUNTY, TEXAS**

## CERTIFICATE OF SERVICE

I certify that, on June 22, 2020, a true and correct copy of the above and foregoing document was served to all parties who have entered an appeared (via their counsel) and Mr. Lyle W. Cayce, Clerk of the United Stated Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System.

/s/ Melvin Keith Ogle

**MELVIN KEITH OGLE**

# CERTIFICATE OF COMPLIANCE

### With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

The undersigned counsel certifies this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 11,215 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), as computed by the word-processing system used to prepare this brief.

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 10 in 14-point Century Schoolbook typeface (other than footnotes, which are in 12-point Century Schoolbook typeface per 5TH CIR. R. 32.1).

*/s/ Melvin Keith Ogle*
MELVIN KEITH OGLE

Dated: June 22, 2020