No. 19-11327

# In the United States Court of Appeals for the Fifth Circuit

DIANE SCOTT HADDOCK,

*Plaintiff-Appellant,*

*v.*

TARRANT COUNTY, TEXAS; PATRICIA BACA-BENNETT; KENNETH EARL NEWELL; JESUS NEVAREZ, JR.; HONORABLE JUDITH WELLS; JEROME S. HENNIGAN; JAMES B. MUNFORD; ALEX KIM,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Northern District of Texas, Fort Worth Division

## BRIEF FOR DEFENDANTS-APPELLEES

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant
  Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

KYLE D. HAWKINS
Solicitor General

NATALIE D. THOMPSON
Assistant Solicitor General
Natalie.Thompson@oag.texas.gov

BENJAMIN S. WALTON
Assistant Attorney General

Counsel for Defendants-Appellees

# Certificate of Interested Persons

No. 19-11327

### Diane Scott Haddock,

*Plaintiff-Appellant,*

*v.*

### Tarrant County, Texas, Patricia Baca-Bennett, Kenneth Earl Newell, Jesus Nevarez, Jr., Honorable Judith Wells, Jerome S. Hennigan, James B. Munford; Alex Kim,

*Defendants-Appellees.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiff-Appellant:**
Diane Scott Haddock

**Counsel for Plaintiff-Appellant:**
Walter L. Taylor
Hart Law Firm, PLLC

**Defendants-Appellees:**
Tarrant County, Texas
Hon. Patricia Baca-Bennett
Hon. Jerome S. Hennigan
Hon. Alex Kim
Hon. James B. Munford
Hon. Jesus Nevarez, Jr.
Hon. Kenneth Earl Newell
Hon. Judith Wells

**Counsel for Defendant-Appellee Tarrant County:**

Sharen Wilson

M. Keith Ogle

Office of the Tarrant County Criminal District Attorney

**Counsel for Individual Defendants-Appellees:**

Ken Paxton

Jeffrey C. Mateer

Ryan L. Bangert

Kyle D. Hawkins

Natalie D. Thompson (lead counsel)

Benjamin S. Walton

Office of the Attorney General

/s/ Natalie D. Thompson

NATALIE D. THOMPSON
*Counsel of Record for*
*Defendants-Appellees*

## Statement Regarding Oral Argument

It is well established that the First Amendment does not prevent a government employer from terminating a policymaker or confidential employee based on speech or actions that may otherwise be protected by the First Amendment. But this case involves certain subsidiary legal issues this Court has not had occasion to address. It also arises from a factual context that is novel in this Court. Therefore, Appellees agree that oral argument would assist the Court.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ..................................................................i

Statement Regarding Oral Argument ......................................................iii

Table of Authorities ....................................................................................v

Introduction................................................................................................ 1

Statement of Jurisdiction ........................................................................... 2

Issues Presented ......................................................................................... 2

Statement of the Case ................................................................................. 3

    I.   Haddock Served as an Associate Judge to the Tarrant County
        Family Courts Until January 2019................................................... 3

    II.  Haddock Alleges She Suffered a Hostile Work Environment in
        Retaliation for Her Husband's Political Activities. ..................... 5

    III. The District Judges Removed Haddock from Office, and She
        Amended Her Lawsuit to Bring First Amendment Retaliation
        Claims Against All Seven of Them. ................................................ 9

Summary of the Argument.......................................................................10

Standard of Review ..................................................................................12

Argument...................................................................................................13

    I.   The District Court Properly Dismissed Haddock's "Political
        Patronage Claim" Because an Associate Judge Can Be Removed
        from Office for Political Reasons................................................14

        A.  An associate judge is subject to the *Elrod/Branti* exception.............14

        B.  Even if Haddock was removed from office based on political
            alignment, that would have been a proper basis for removal. ............25

    II.  Haddock's Petition Claim Fails as a Matter of Law. ...............26

        A.  Haddock's petition claim also falls to the *Elrod/Branti*
            exception.......................................................................... 27

        B.  Haddock's lawsuit did not involve a matter of public concern...........30

    III. Haddock's Intimate-Association Claim Also Fails Because the
        *Elrod/Branti* Exception Applies to Her Position as Associate
        Judge. ........................................................................................ 35

IV. Haddock Does Not Allege a Viable "Free Speech" Claim........................ 41

V. Judge Baca-Bennett is Entitled to Qualified Immunity for Haddock's Retaliatory Hostile-Work-Environment Claim. .....................44

    A. Haddock has not alleged a constitutional violation. ........................... 45

    B. Even if Haddock had alleged a violation, no clearly established law put it "beyond debate." ............................................. 45

Conclusion...........................................................................................................49

Certificate of Service.........................................................................................50

Certificate of Compliance .................................................................................50

## Table of Authorities

Page(s)

**Cases:**

*Adams v. Governor of Delaware,*
    922 F.3d 166 (3d Cir. 2019) ........................................................... 21, 22

*Adkins v. Bd. of Educ. of Magoffin County,*
    982 F.2d 952 (6th Cir. 1993) ...............................................................40

*Adler v. Pataki,*
    185 F.3d 35 (2d Cir. 1999) .................................................................. 39

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ............................................................................48

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................... 12

*Aucoin v. Haney,*
    306 F.3d 268 (5th Cir. 2002).......................................11, 15, 24, 28, 29

*Balton v. City of Milwaukee,*
    133 F.3d 1036 (7th Cir. 1998)............................................................ 41

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................... 12, 26

*Benfield v. Magee,*
    945 F.3d 333 (5th Cir. 2019) .............................................................. 13

*Benningfield v. City of Hous.*,
    157 F.3d 369 (5th Cir. 1998) ....................................................... 47, 48

*Biggs v. Best, Best & Krieger*,
    189 F.3d 989 (9th Cir. 1999) ....................................................... 14, 38

*Borough of Duryea v. Guarnieri*,
    564 U.S. 379 (2011) ...................................................................*passim*

*Borzilleri v. Mosby*,
    874 F.3d 187 (4th Cir. 2017) ....................................................... 28, 43

*Bradshaw v. Pittsburg Indep. Sch. Dist.*,
    207 F.3d 814 (5th Cir. 2000) (per curiam) ...................................31, 32

*Branti v. Finkel*,
    445 U.S. 507 (1980) ...................................................................*passim*

*Branton v. City of Dallas*,
    272 F.3d 730 (5th Cir. 2001) ............................................................ 13

*Brawner v. City of Richardson*,
    855 F.2d 187 (5th Cir. 1988) ............................................................ 34

*Breaux v. City of Garland*,
    205 F.3d 150 (5th Cir. 2000) ............................................................ 41

*Brown v. Trench*,
    787 F.2d 167 (3d Cir. 1986) ............................................................. 21

*Bryan v. Chertoff*,
    217 F. App'x 289 (5th Cir. 2007) .................................................... 47

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006) .......................................................................... 47

*Butler v. New York State Dep't of Law*,
    211 F.3d 739 (2d Cir. 2000).................................................. 15, 16, 19

*Cannon v. Vill. of Bald Head Island*,
    891 F.3d 489 (4th Cir. 2018) ........................................................... 46

*Carney v. Adams*,
    140 S. Ct. 602 (2019) ...................................................................... 21

*Carroll v. City of Phoenix*,
    No. CV-07-00148, 2007 WL 1140400 (D. Ariz. Apr. 17, 2007) ........ 16

*Chisom v. Roemer*,
    501 U.S. 380 (1991) .........................................................................20

*Clarkston v. White*,
    943 F.3d 988 (5th Cir. 2019) ........................................................... 46

*Conn v. Gabbert*,
  526 U.S. 286 (1999) ........................................................... 42
*Connick v. Myers*,
  461 U.S. 138 (1983) ...................................................*passim*
*Coon v. Ledbetter*,
  780 F.2d 1158 (5th Cir. 1986) ........................................... 42
*Coughlin v. Lee*,
  946 F.2d 1152 (5th Cir. 1991)............................................ 39
*Curtis v. Christian County*,
  963 F.3d 777, 2020 WL 3477025 (8th Cir. 2020)........................15, 19
*D'Angelo v. Sch. Bd. of Polk County*,
  497 F.3d 1203 (11th Cir. 2007) .......................................... 41
*Danos v. Jones*,
  652 F.3d 577 (5th Cir. 2011) ............................................ 42
*Davis v. Martin*,
  807 F. Supp. 385 (W.D.N.C. 1992) ....................................... 16
*DePree v. Saunders*,
  588 F.3d 282 (5th Cir. 2009) .............................. 46, 47, 48
*Dist. of Columbia v. Wesby*,
  138 S. Ct. 577 (2018) ................................................ 46, 48
*Elrod v. Burns*,
  427 U.S. 347 (1976) (plurality) ....................................*passim*
*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ................................................... 1, 42
*Gentry v. Lowndes County*,
  337 F.3d 481 (5th Cir. 2003)............................................. 14
*Gibson v. Kilpatrick*,
  734 F.3d 395 (5th Cir. 2013), *cert. granted, judgment vacated*, 573
  U.S. 942 (2014)...................................................... 47–48
*Gibson v. Kilpatrick*,
  838 F.3d (5th Cir. 2016) ...........................................*passim*
*Gillum v. City of Kerrville*,
  3 F.3d 117 (5th Cir. 1993) .............................................. 31
*Gonzalez v. Benavides*,
  712 F.2d 142 (5th Cir. 1983) ............................................ 23

*Graziosi v. City of Greenville*,
    775 F.3d 731 (5th Cir. 2015) ....................................................... 26, 30

*Gregorich v. Lund*,
    54 F.3d 410 (7th Cir. 1995) ............................................................. 26

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991) ......................................................................... 20

*Hagan v. Quinn*,
    867 F.3d 816 (7th Cir. 2017) ..................................................*passim*

*Hartwell v. Houghton Lake Cmty. Sch.*,
    755 F. App'x 474 (6th Cir. 2018) .................................................... 36

*Hawkins v. Steingut*,
    829 F.2d 317 (2d Cir. 1987) ............................................................ 23

*Heald v. Dist. of Columbia*,
    259 U.S. 114 (1922) ......................................................................... 42

*Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*,
    850 F.3d 731 (5th Cir. 2017), *as rev.* (Mar. 13, 2017) ....................... 47

*Holley v. Adams*,
    544 S.W.2d 367 (Tex. 1976) ............................................................ 20

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
    920 F.3d 890 (5th Cir. 2019) ........................................................... 12

*James B. Beam Distilling Co. v. Georgia*,
    501 U.S. 529 (1991) ......................................................................... 20

*Jenkins v. Medford*,
    119 F.3d 1156 (4th Cir. 1997) (en banc) ......................................... 19

*Justice v. Pike Cty. Bd. of Educ.*,
    348 F.3d 554 (6th Cir. 2003) ........................................................... 18

*Kennedy v. Tangipahoa Par. Library Bd. of Control*,
    224 F.3d 359 (5th Cir. 2000) .................................................26, 33, 34

*Kinsey v. Salado Indep. Sch. Dist.*,
    950 F.2d 988 (5th Cir. 1992) (en banc) ...................................... 23, 24

*Kurowski v. Krajewski*,
    848 F.2d 767 (7th Cir. 1988) .......................................................16, 21

*Lovelace v. Software Spectrum Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ............................................................. 5

*Maldonado v. Rodriguez*,
    932 F.3d 388 (5th Cir. 2019) .................................................16, 28, 43, 44

*McBee v. Jim Hogg County*,
    730 F.2d 1009 (5th Cir. 1984) (en banc) ........................................... 29

*McCabe v. Sharrett*,
    12 F.3d 1558 (11th Cir. 1994) ............................................. 28, , 36, 37

*McCaffrey v. Chapman*,
    921 F.3d 159 (4th Cir. 2019) ................................................ 21, 22, 28

*McCoy v. Alamu*,
    950 F.3d 226 (5th Cir. 2020) .............................................................. 45

*Meeks v. Grimes*,
    779 F.2d 417 (7th Cir. 1985) ..........................................................18, 24, 25

*Montgomery v. Carr*,
    101 F.3d 1117 (6th Cir. 1996) ........................................................... 36

*Morrow v. Meachum*,
    917 F.3d 870 (5th Cir. 2019) ............................................................. 45

*Mote v. Walthall*,
    902 F.3d 500 (5th Cir. 2018) ............................................................. 35

*Mullenix v. Luna*,
    136 S. Ct. 305 (2015) (per curiam)................................................. 45, 46

*Mumford v. Basinski*,
    105 F.3d 264 (6th Cir. 1997) ......................................... 17, 18, 22, 48

*Mummau v. Ranck*,
    687 F.2d 9 (3d Cir. 1982) ................................................................. 16

*Mylett v. City of Corpus Christi*,
    97 F. App'x 473 (5th Cir. 2004) (per curiam) ................................48

*Newcomb v. Brennan*,
    558 F.2d 825 (7th Cir. 1977) ...................................................*passim*

*Newman v. Voinovich*,
    986 F.2d 159 (6th Cir. 1993) ........................................................16, 21

*O'Hare Truck Serv., Inc. v. City of Northlake*,
    518 U.S. 712 (1996) ................................................................. 25, 26

*Palmer v. Waxahachie Indep. Sch. Dist.*,
    579 F.3d 502 (5th Cir. 2009) ...........................................................44

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ......................................................................... 45

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968) ..................................................................*passim*

*Rathjen v. Litchfield*,
   878 F.2d 836 (5th Cir. 1989) ............................................................... 30

*Republican Party of Minn. v. White*,
   536 U.S. 765 (2002) ........................................................................... 20

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
   355 F.3d 370 (5th Cir. 2004) .............................................................. 8

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ........................................................................... 35

*Ross v. Clayton County*,
   173 F.3d 1305 (11th Cir. 1999) .......................................................... 38

*Rutan v. Republican Party of Illinois*,
   497 U.S. 62 (1990) ...................................................................... 1, 40

*Sharp v. City of Houston*,
   164 F.3d 923 (5th Cir. 1999) .............................................................. 47

*Simasko v. County of St. Clair*,
   417 F.3d 559 (6th Cir. 2005) ........................................... 25, 37, 38, 43

*Singer v. Ferro*,
   711 F.3d 334 (2d Cir. 2013) ......................................................... 33, 34

*Soderbeck v. Burnett County*,
   752 F.2d 285 (7th Cir. 1985) ....................................................13, 15, 37

*Soderstrum v. Town of Grand Isle*,
   925 F.2d 135 (5th Cir. 1991) ....................................................... 15, 36

*Stegmaier v. Trammell*,
   597 F.2d 1027 (5th Cir. 1979) ............................................... 15, 16, 25

*Swindol v. Aurora Flight Scis. Corp.*,
   805 F.3d 516 (5th Cir. 2015) .............................................................. 4

*Terry v. Cook*,
   866 F.2d 373 (11th Cir. 1989) ...................................................... 16, 43

*Tucker v. Georgia Dep't of Pub. Safety*,
   No. CV-208-33, 2009 WL 2135807 (S.D. Ga. July 15, 2009) .................... 39, 40

*Underwood v. Harkins*,
   698 F.3d 1335 (11th Cir. 2012) ...............................................15, 19, 25, 43

*United States v. Beaumont*,
   972 F.2d 553 (5th Cir. 1992) ........................................................ 23, 24

*Walker v. Henderson*,
   239 F.3d 366 (5th Cir. 2000) .............................................................. 35

x

*Wallace v. Tex. Tech Univ.*,
  80 F.3d 1042 (5th Cir. 1996) ............................................ 35
*Walsh v. Heilman*,
  472 F.3d 504 (7th Cir. 2006) ....................................... 16, 17
*Warth v. Seldin*,
  422 U.S. 490 (1975) ....................................................... 42
*Waters v. Churchill*,
  511 U.S. 661 (1994) ....................................................... 26
*Wiggins v. Lowndes County*,
  363 F.3d 387 (5th Cir. 2004) ...................... 11, 14, 15, 28, 42
*Wyatt v. Fletcher*,
  718 F.3d 496 (5th Cir. 2013) .......................................... 44

**Constitutional Provisions, Statutes, and Rules:**

U.S. Const. amend. I.............................................................*passim*
U.S. Const. amend. II ................................................................. 8
U.S. Const. amend. XIV ........................................................... 36
28 U.S.C.:
  § 1291 ............................................................................... 2
  § 1331................................................................................ 2
42 U.S.C.:
  § 1983 .........................................................................*passim*
  § 2000e-3(a) ............................................................... 47, 48
Tex. Fam. Code:
  § 153.002 ........................................................................ 20
  § 201.001 .......................................................................... 3
  § 201.001(d) ..................................................................... 5
  § 201.004(a)–(c) ............................................................... 5
  § 201.004(b)–(c) ............................................................... 5
  § 201.005 ..................................................................... 1, 29
  § 201.005(a) ...................................................................... 3
  § 201.005(b) ..................................................................... 4
  § 201.007 .................................................................. 4, 19, 29
  § 201.007(a)(14) ............................................................... 4
  § 201.007(a)(16) ............................................................... 4

§ 201.015................................................................................4
§ 201.015(i)............................................................................4
§ 201.1041(c) ........................................................................4
Fed. R. App. P.:
  28(a)(8)(A) ............................................................... 23, 24
Fed. R. Civ. P.:
  12 .......................................................................................44
  52(a)(3) .............................................................................44
Fed. R. Evid.:
  201(b)(2)..........................................................................4–5
  201(f) ..................................................................................5
Ohio R. Civ. P.:
  53(C)(2) ............................................................................17
  53(C)(3) ............................................................................17
  53(E)(4)(a) ........................................................................17
  75 ......................................................................................17
Tarrant Cty. Fam. Court Loc. R. 4.03(2) ...............................4

**Other Authorities:**

*Black's Law Dictionary* (11th ed. 2019) .................................24
Charles Allen Wright & Arthur A. Miller, *5A Fed. Prac. & Proc.* § 1327
  (4th ed.) ............................................................................8

# Introduction

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom," including her First Amendment rights. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). To be sure, an employee may usually speak on matters of public concern, *see id.*, and "low-level public employees" who do not occupy confidential positions cannot be fired based on political affiliation, *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 65 (1990). But Appellant Diane Haddock, who held a position akin to a federal magistrate judge, was not a "low-level public employee[]." *Id.*

As an associate judge of the Tarrant County family court, Haddock took the bench daily on behalf of the court's elected district judges. Appellees Baca-Bennett, Newell, Nevarez, Wells, Hennigan, Munford, and Kim ("the District Judges") refer cases to their associate judges, who are statutorily empowered to rule on pretrial motions, issue subpoenas and protective orders, resolve questions of fact, and even try cases and enter final judgment. *See* Tex. Fam. Code § 201.005. Because an associate judge's political loyalty "is an appropriate requirement for the effective performance of the public office involved," her "First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Branti v. Finkel*, 445 U.S. 507, 517–18 (1980); *see also Elrod v. Burns*, 427 U.S. 347, 367 (1976) (plurality).

All Haddock's claims collapse under the weight of this doctrine. When delegating their judicial power to an associate judge, the District Judges must be able to rely completely on her judgment and loyalty. Consequently, Haddock *could* have

been removed from office based on her refusal to support one of the District Judges' campaign, for her husband's campaigning in favor of the rival candidate, and for filing suit against another of the District Judges; any of those actions would directly undermine the District Judges' ability to rely unquestionably on her loyalty and judgment. Consequently, even if Haddock's allegations were true—though the District Judges deny them—Haddock's claims would fail as a matter of law.

Even if the court were to recognize a cause of action for "retaliatory hostile work environment" under 42 U.S.C. section 1983—it never has before—Haddock's individual-capacity claim cannot overcome qualified immunity. The District Court correctly dismissed Haddock's Second Amended Complaint with prejudice. The Court should affirm.

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. section 1331. Appellant's notice of appeal was timely filed on December 10, 2019. *See* ROA.983, ROA.984. This Court has jurisdiction under 28 U.S.C. section 1291.

## ISSUES PRESENTED

Certain high-level government employees can be fired for activities that would otherwise be protected by the First Amendment. This rule covers those employees who exercise policy discretion and judgment on behalf of the elected officials they serve. Under Texas law, a the job of a family court associate judge requires considerable policy discretion, and the associate judge is empowered to act on behalf

of the elected district judge(s) who refer her cases; she can issue orders, compel discovery, try cases, and enter final judgment.

The issues presented are:

- Whether Haddock could be removed from office based on political considerations.

- Whether Haddock could be removed from office because of her lawsuit against Tarrant County and Judge Baca-Bennett.

- Whether Haddock could be removed from office because her husband campaigned against Judge Munford.

- Whether Haddock has stated a freedom-of-speech claim based on her husband's speech, in which she did not participate.

- Whether Judge Baca-Bennett is entitled to qualified immunity from Haddock's claim that she created a hostile work environment in retaliation for Haddock's alleged exercise of First Amendment rights.

## Statement of the Case

## I. Haddock Served as an Associate Judge to the Tarrant County Family Courts Until January 2019.

Tarrant County's seven elected family-court district judges appoint associate judges to assist them in their judicial duties. *See* ROA.429; Tex. Fam. Code § 201.001. Associate judges hear cases referred to them by a district judge; the job is similar to that of a federal magistrate judge. A district judge may refer certain suits under the Texas Family Code, including suits for protective orders and suits affecting the parent-child relationship. *See* Tex. Fam. Code § 201.005(a). Haddock served as a Tarrant County associate judge from 1999 to 2019. ROA.645.

The powers and duties of an associate judge are set out in the Texas Family Code. After a case is referred, the associate judge is generally empowered to conduct hearings, compel production of relevant evidence, rule on admissibility, issue summonses, examine witnesses, make findings of fact, formulate conclusions of law, and order the attachment of a witness for failure to appear pursuant to subpoena— all without oversight by the referring district court. Tex. Fam. Code § 201.007.

An associate judge's authority is not limited to pretrial litigation. The associate judge may also preside over trial on the merits absent objection by a party. Tex. Fam. Code § 201.005(b); Tarrant Cty. Fam. Court Local R. 4.03(2). With the parties' agreement the associate judge may enter final orders. Tex. Fam. Code § 201.007(a)(14), (16). Absent that agreement, a party can request de novo review by the district court. *See id.* § 201.015. But "a proposed order or judgment of the associate judge is in full force and effect and is enforceable as an order or judgment of the referring court pending [any] de novo hearing." *Id.* § 201.1041(c). And the district court's review does not include a second jury trial. *See id.* § 201.015(i).

Each of Tarrant County's associate judges is referred cases primarily by one of the seven district judges. Haddock primarily heard cases from District Judge Bill Harris of the 233d District Court.[1] Haddock says, however, that "each associate

---

[1]    The Tarrant County Family Courts' publicly available website affiliates each associate judge with a particular district court. That was true in 2018, *see https://tinyurl.com/y84ny8kg* (captured Nov. 13, 2018, last accessed July 22, 2020), and remains true today, see *https://www.tarrantcounty.com/en/family-courts.html* (last accessed July 22, 2020). This public information is subject to judicial notice, *see Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015) (citing Fed. R.

[judge] serves all seven family district judges." Blue Br. 2 (citing ROA.671–74). For example, Haddock alleges that until 2017, the associate judges heard and decided motions for protective orders on a monthly rotation, without regard to which district court was assigned the case. ROA.669. But that practice changed when a newly elected district judge preferred that each court hear its own protective orders. ROA.669. Haddock also acknowledges that a district judge may decline to refer cases to a particular associate judge. ROA.669.

The Family Code governs the appointment and removal of associate judges. "If an associate judge serves more than one court, the associate judge's appointment must be made with the unanimous approval of all the judges under whom the associate judge serves." Tex. Fam. Code § 201.001(d). Unanimity is not required to remove the associate judge from office, however. *Id.* § 201.004(b)–(c). An associate judge serving more than two courts can be removed by a majority vote of the district judges, one who serves just two courts can be removed by a single judge, and "[a]n associate judge who serves a single court serves at the will of the judge of that court." Tex. Fam. Code § 201.004(a)–(c).

## II. Haddock Alleges She Suffered a Hostile Work Environment in Retaliation for Her Husband's Political Activities.

During her tenure as an associate judge, Haddock worked primarily with Judge Bill Harris of the 233d District Court. ROA.656, ROA.757. Haddock alleges that for

---

Evid. 201(b)(2)), and the Court may consider it in reviewing a motion to dismiss, *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996) (citing Fed. R. Evid. 201(f)).

"several months" she was "subjected . . . to severe and pervasive harassment and a hostile work environment" by Judge Baca-Bennett and others. ROA.644. Specifically, Haddock alleges the retaliation was inflicted "informally[,] through a hostile work environment," by Judge Baca-Bennet, who "hop[ed] to make [Haddock's] professional and work life so miserable that [she] w[ould] quit." ROA.666. Haddock also says then-Judge Harris, her supervising District Judge, contributed to the alleged hostile work environment, *see, e.g.*, ROA.650, ROA.651, ROA.653, ROA.656, but he is not named as a defendant.

Though not a party, Haddock's husband, Gerald, is central to her allegations. The complaint shows Mr. Haddock is active in Tarrant County politics. He is the founder of a "public news organization," Tarrant Families Matter, which he created to "disseminate information regarding numerous important public policy positions." ROA.646. The organization hosts a blog, which, among other things, posts commentary on judicial candidates and campaigns. ROA.646. The blog included discussion of the 2018 Republican primary races for Tarrant County's family courts. *See* ROA.646.

During the 2018 primary season, one of the Republican candidates for the 322nd District Court was one of Haddock's fellow associate judges: now–District Judge Munford. ROA.644. Judge Munford's opponent in the Republican primary was Jennifer Moore. ROA.649. Mr. Haddock and contributors to the Tarrant Families Matter blog gave "active political support" to Moore. ROA.649–50. They also actively opposed Judge Munford. ROA.649; *see, e.g.*, ROA.646 (alleging a blog post called Judge Munford a "RINO"). Judge Baca-Bennett and then-Judge Harris,

however, allegedly supported Judge Munford in the primary; and Haddock alleges Judge Baca-Bennett endorsed Judge Munford and posted support for his candidacy on Facebook. ROA.649–51. Judge Munford prevailed in the primary and, later, in the general election.

Haddock alleges that during the primary campaign, Judge Baca-Bennett began to "harass[]" her "around the courthouse and on Facebook." ROA.655. For instance, at the courthouse Judge Baca-Bennett told Haddock "she [wa]s upset about" a blog post criticizing Judge Munford, ROA.646, and wanted Tarrant Families Matter to "stop badgering [Judge] Munford," ROA.647.

Haddock acknowledges that she "is not active on any type of social media." ROA.647. But she alleges Judge Baca-Bennett used Facebook to create a hostile work environment by, among other things, posting her endorsement of Judge Munford and expressing "her distaste for [Mr. Haddock]'s politics." ROA.651.

Haddock also alleges then-Judge Harris publicized—via a post on his Facebook page— a rumor that Haddock had resigned. *See* ROA.652–56. The rumor, Haddock explains, was based on a series of misunderstandings among Judge Harris, Mr. Haddock, the then-President of the State Bar of Texas, and Haddock herself. *See* ROA.651–55. Judge Baca-Bennett posted about the rumor on her own Facebook page, Haddock says, and left the posts "public" "long after" Judge Harris clarified

that Haddock had not in fact resigned. ROA.656.[2] Haddock alleges these "Facebook posts . . . were disheartening and physically debilitating." ROA.660.

Haddock filed suit against Tarrant County and Judge Baca-Bennett on October 3, 2018, under 42 U.S.C. section 1983. ROA.994–1018. Haddock alleges Judge Baca-Bennett created a hostile work environment in retaliation for:

- [Haddock]'s having refused to advocate positions or patronize the same judicial candidate [Judge] Baca-Bennett supported ([Judge] Munford);

- [Haddock]'s having refused to "get her husband under control" and stop him from supporting [Judge] Munford's opponent in the election primary; and

- [Haddock]'s having refused to "get her husband under control" and stop him from engaging in and supporting political speech advocating for the Second Amendment and questioning [Judge] Munford's fitness for office and judicial temperament.

ROA.660. Haddock alleges Tarrant County is liable as Haddock's employer. *See* ROA.666–67.

---

[2] Judge Baca-Bennett's Facebook post, which is attached as an exhibit to the complaint, begins by acknowledging: "[a]pparently Diane Haddock has not resigned." *See* ROA.754. The Court should "independently examine [exhibits] and form its own conclusions as to the proper construction and meaning to be given the attached material." Charles Allen Wright & Arthur A. Miller, *5A Fed. Prac. & Proc.* § 1327 (4th ed.). Where "an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

### III. The District Judges Removed Haddock from Office, and She Amended Her Lawsuit to Bring First Amendment Retaliation Claims Against All Seven of Them.

In April 2018, after the primary, Haddock alleges now-Judge Newell—who was then running unopposed to replace Haddock's retiring supervisor, Judge Harris—visited Haddock at the courthouse. ROA.658–59. Haddock alleges Judge Newell seemed to "assume[]" she would be retiring in light of Judge Harris's departure, and their "conversation [left Haddock] with the very clear impression that [Judge] Newell ha[d], in fact, made a decision to terminate her but d[id] not want to do it himself." ROA.659. Judge Harris also discussed the process of selecting her replacement during this time, indicating he assumed she would not be staying on as associate judge to his successor. ROA.659. Haddock alleges she "assure[d] [Judge Newell] she would never abandon her post without notice and opportunity for a smooth transition." ROA.659. She does not, however, allege that she told either Judge Harris or Judge Newell she wished to continue in office.

Judge Newell's ceremonial investiture to the 233rd District Court was held on January 4, 2019. ROA.662. On January 7, Haddock was removed from her position as associate judge. ROA.661. The order of termination was signed by Judges Newell, Nevarez, Wells, and Hennigan—a majority of the District Judges, none of whom were alleged in Haddock's original complaint to have engaged in any harassment. ROA.662.

9

Haddock then amended her lawsuit to name all seven Tarrant County family court district judges as defendants in their official capacities, alleging her removal from office was also retaliatory. In her live pleading, Haddock alleges:

> Upon information and belief, these district judges terminated [Haddock] because of [Mr. Haddock]'s political activity and Defendant [Judge] Baca-Bennett's (now successful) efforts throughout 2018 to persuade and cajole the district judges into firing [Haddock] for that reason. Alternatively, [Haddock] was terminated in retaliation for having filed this lawsuit in October of 2018, in an attempt to enforce her constitutional right to be free of such retaliation.

ROA.662. She adds that the new associate judge appointed to replace her on the 322d District Court was "the individual who [had] 'emceed' Defendant [Judge] Newell's investiture" on January 4. ROA.662.[3]

Defendants moved to dismiss Haddock's Second Amended Complaint. *See* ROA.809–73. The District Court dismissed Haddock's official-capacity claims against the District Judges and her claims against Tarrant County for failure to state a claim. The court dismissed Haddock's hostile-work-environment claim against Judge Baca-Bennett in her individual capacity based on qualified immunity. ROA.959–83.

## Summary of the Argument

As an associate judge, Haddock was called upon to exercise considerable judgment and discretion in evaluating the law and the facts of cases referred to her.

---

[3] The District Judges dispute Haddock's speculative allegations regarding the reasons for her removal. However, taking her allegations as true, Haddock fails to state any actionable claim as a matter of law.

As a result of her office, she is subject to the principle, known as the *Elrod/Branti* exception, that when an employee's "private political beliefs would interfere with the discharge of [her] public duties," that employee's "First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Branti*, 445 U.S. at 517. Haddock does not dispute that the *Elrod/Branti* framework governs her "patronage claim." *See Aucoin v. Haney*, 306 F.3d 268, 273 (5th Cir. 2002). And when the *Elrod/Branti* exception applies, it conclusively tips the scales in favor of the government employer. *See infra* Part I.

The District Court was also correct to dismiss the rest of Haddock's claims in light of the *Elrod/Branti* exception. Claims of retaliation based on exercise of First Amendment rights are subject to the balancing test established in *Pickering v. Board of Education*, 391 U.S. 563 (1968) and *Connick v. Myers*, 461 U.S. 138 (1983). The *Elrod/Branti* exception carries great weight in that balance. *See, e.g.*, *Wiggins v. Lowndes County*, 363 F.3d 387, 390 (5th Cir. 2004). Here, Haddock's alleged interests are outweighed by her government employer's interests as a matter of law. Accordingly, her claims based on First Amendment freedom of petition, intimate association, and freedom of speech were properly dismissed. *See infra* Parts II.A, III, IV. Haddock's First Amendment freedom of petition claim fails for yet another reason: Her hostile-work-environment complaint against Judge Baca-Bennett and Tarrant County did not involve a matter of public concern. *See infra* Part II.B.

Haddock's free-speech claim also fails because she acknowledges that she did not engage in any speech. She cannot state a free-speech claim to vindicate the rights of her husband. Nor can she survive dismissal by positing that if she *had* engaged in

the same speech, it would have been protected by the First Amendment. If Mr. Haddock's speech had, counterfactually, been made by Haddock herself, her rights would still fail to outweigh the District Judges' interests in light of the *Elrod/Branti* exception. *See infra* Part IV.

Finally, the District Court correctly held Judge Baca-Bennett is entitled to qualified immunity from Haddock's retaliatory hostile work environment claim. Haddock has not shown a constitutional violation. *See infra* Part V.A. More fundamentally, she cannot point to any case clearly establishing that Judge Baca-Bennett's alleged conduct was unlawful. This Court has never recognized a cause of action for a retaliatory hostile work environment under section 1983, the alleged conduct is not an adverse employment action under section 1983, and the existing caselaw overwhelmingly applies the *Elrod/Branti* exception to judges like Haddock. *See infra* Part V.B. The court should affirm the dismissal of Haddock's complaint.

## STANDARD OF REVIEW

This Court reviews a district court's ruling on a motion to dismiss de novo. *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only if a plaintiff's factual allegations, taken as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

# ARGUMENT

To state a First Amendment retaliation claim under section 1983, Haddock must plausibly allege that (1) she "suffered an adverse employment action"; (2) her "speech involved a matter of public concern"; (3) her "interest in speaking on the issue outweighed [her employer]'s interest in promoting workplace efficiency"; and (4) her "speech was a substantial or motivating factor for [the adverse] actions." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019). The third element is where the Court applies *Elrod/Branti* and the *Pickering/Connick* balancing test.

Some of Haddock's claims suffer from multiple weaknesses, but all of them collapse at this third element—the balance between Haddock's "interest in speaking" and the District Judges' "interest in promoting workplace efficiency." *Id.* This balance is a question of law "for the court to resolve." *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (citing, *inter alia*, *Connick*, 461 U.S. at 147–48, n.7). And the *Elrod/Branti* exception provides that if the employee's "private political beliefs would interfere with the discharge of [her] public duties," she cannot overcome the government's "vital interest[s]" as a matter of law. *Branti*, 445 U.S. at 517. That's because "[i]f [an elected official] los[es] confidence in his deputy, for whatever reason, [the official's] ability to perform his job would be severely hampered." *Newcomb v. Brennan*, 558 F.2d at 825, 830 (7th Cir. 1977). It recognizes that "[y]ou cannot run a government with officials who are forced to keep political enemies [in positions of confidence]." *Soderbeck v. Burnett County*, 752 F.2d 285, 288 (7th Cir. 1985).

When conducting a *Pickering* balance, this Court weighs such things as "the policy sensitivity of the employment, the nature and content of the employee's speech or political activity, the extent of public concern implicated by the speech, and whether close confidential working relations with elected officials are necessary." *Gentry v. Lowndes County*, 337 F.3d 481, 485 (5th Cir. 2003). Where applicable, the *Elrod/Branti* exception is "the key factor in the [*Pickering*] balancing test." *Wiggins*, 363 F.3d at 390 (citing *Branti*, 445 U.S. at 518). Indeed, many courts apply the *Elrod/Branti* exception without expressly conducting a *Pickering/Connick* balancing test. *See, e.g.*, *Hagan v. Quinn*, 867 F.3d 816, 826 (7th Cir. 2017); *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 994 (9th Cir. 1999). Either way—whether directly under *Elrod/Branti* or indirectly through the *Pickering* balance—every one of Haddock's claims collapses due to the nature of an associate judge's responsibilities.

## I.  The District Court Properly Dismissed Haddock's "Political Patronage Claim" Because an Associate Judge Can Be Removed from Office for Political Reasons.

Haddock argues the District Judges removed her from office in "retaliation for [her] refusal to support Munford's candidacy (political patronage)." Blue Br. 6; *see also id.* 47. Even assuming that allegation is true, the District Court properly dismissed this claim under *Elrod/Branti*.

### A.  An associate judge is subject to the *Elrod/Branti* exception.

As an associate judge, Haddock is subject to *Elrod/Branti*'s exception, not the general rule disallowing dismissal based on political affiliation. The exception applies to "public employees whose responsibilities require more than simple ministerial

competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute, regulation, or policy determinations made by supervisors." *Aucoin*, 306 F.3d at 273 (quoting *Stegmaier v. Trammell*, 597 F.2d 1027, 1035 (5th Cir. 1979)). It also extends to employees who "stand[] in a confidential relationship to the policymaking process," or "ha[ve] access to confidential documents or other materials that embody policymaking deliberations and determinations." *Wiggins*, 363 F.3d at 391; *see also Aucoin*, 306 F.3d at 273; *Soderstrum v. Town of Grand Isle*, 925 F.2d 135, 136 (5th Cir. 1991) (personal secretary to the police chief). "[T]he proper focus is on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." *Curtis v. Christian County*, 963 F.3d 777, ___, 2020 WL 3477025, at *4 (8th Cir. 2020); *see also Underwood v. Harkins*, 698 F.3d 1335, 1344 (11th Cir. 2012).

These employees are often referred to as "policymakers." *See, e.g.*, *Butler v. New York State Dep't of Law*, 211 F.3d 739, 744 (2d Cir. 2000). But "the ultimate inquiry" turns not on whether the employee sets policy *per se*, but on "whether . . . party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. As this court has explained, the terms "'policymaker' or 'confidential employee'" may "illuminate the contours of the employee class that may permissibly be subjected to a political litmus test." *Wiggins*, 363 F.3d at 390 (internal citations and quotation marks omitted). For example, an assistant district attorney, who exercises "significant discretion" in furthering the elected district attorney's policy goals—including assessing which cases to pursue—

can be terminated for partisan reasons even if he does not set policy for the entire office. *Maldonado v. Rodriguez*, 932 F.3d 388, 394 (5th Cir. 2019); *see also, e.g.*, *Butler*, 211 F.3d at 744; *Mummau v. Ranck*, 687 F.2d 9, 10 (3d Cir. 1982) (per curiam). The same is true of a sheriff's deputy because "the closeness and cooperation required between sheriffs and their deputies necessitate the sheriff's absolute authority over their appointment and[] retention." *Terry v. Cook*, 866 F.2d 373, 377 (11th Cir. 1989).

Numerous courts have concluded state judges are subject to the *Elrod/Branti* exception. *See, e.g.*, *Newman v. Voinovich*, 986 F.2d 159, 163 (6th Cir. 1993); *Kurowski v. Krajewski*, 848 F.2d 767, 770 (7th Cir. 1988); *Carroll v. City of Phoenix*, No. CV-07-00148, 2007 WL 1140400, at *11 (D. Ariz. Apr. 17, 2007); *Davis v. Martin*, 807 F. Supp. 385, 387 (W.D.N.C. 1992). That is so even where the judge is appointed by an elected official in the executive branch, rather than elected in her own right. *See Hagan*, 867 F.3d at 819 (applying the exception to worker's compensation arbitrators appointed by the governor); *Walsh v. Heilman*, 472 F.3d 504, 505 (7th Cir. 2006) (applying the exception to an administrative hearing officer appointed by town's mayor).

The exception applies to a family court associate judge in Texas. Texas voters select district judges through partisan elections, and they properly consider politics and party affiliation when casting their ballots. *See Stegmaier*, 597 F.2d at 1040 ("Where a state, through its constitution, has decided to make certain public offices elective, it has also chosen to vest the electorate with the power to select one candidate over another *for any reason*." (emphasis added)); *see also Kurowski*, 848 F.2d at 770. Because the judicial election process itself is political, elected judges

may properly consider political issues when selecting the associate judges who will act on their behalves. *See Walsh*, 472 F.3d at 506 (explaining that because "the people are to choose policy at the polls, the representatives they elect must be able to make enough changes in the bureaucracy to put the winning side's program into effect").

Precedent confirms that the *Elrod/Branti* exception applies to Haddock. Under strikingly similar facts, the Sixth Circuit held in *Mumford v. Basinski*, 105 F.3d 264 (6th Cir. 1997), that a "court referee" in Ohio fell within the *Elrod/Branti* exception and could be terminated based on political affiliation. *Id.* at 270–72. The referee "[wa]s an agent and officer of the appointing court and [was] clothed with the powers and duties of the judicial office which appoint[ed] him." *Id.* at 272 (citing Ohio R. Civ. P. 75). Without oversight or any "judicial ratification," he could conduct hearings, issue subpoenas, make evidentiary rulings, and rule on discovery motions, temporary restraining orders, and other pretrial motions. *Id.* (citing Ohio R. Civ. P. 53(C)(2) & (3)). But his "decisions otherwise [we]re mere recommendations which [became] effective only upon adoption by the court. *Id.* (citing Ohio R. Civ. P. 53(E)(4)(a)).

The Sixth Circuit had no trouble concluding the court referee's office was subject to political considerations, so the referee could be terminated based on his political affiliation. *Id.* at 272–73. The "supervising judge must be convinced that the judgment capabilities of the referee, and the confidential relationships that arise as a result of the intimate judicial and quasi-judicial discussions, are unquestionable." *Id.* at 272. It concluded "[t]he referee's political ideology, associations, and activities

may rationally influence a judge's assessment of an individual's suitability for a position as his referee." *Id.* "Moreover," the court explained, "the referee effectively makes policy for, or suggests policy to, the court on each occasion that he resolves a dispute in the court's name or recommends a disposition to a judge." *Id.*

Like the court referee in *Mumford*, Haddock occupied a "policymaking," or "confidential" position serving the elected District Judges. Haddock worked closely with the District Judges who referred her cases. *See, e.g.*, ROA.643 (referring to "mutual efforts" between Haddock and Judge Harris). And "the chambers of a judge" is the "paradigm[atic] example" of the "type of environment" where "animosity arising from political opposition can create an untenable job situation." *Meeks v. Grimes*, 779 F.2d 417, 422–23 (7th Cir. 1985); *accord Justice v. Pike Cty. Bd. of Educ.*, 348 F.3d 554, 562 (6th Cir. 2003) (using "a judge's . . . secretary" as an "illustrative example" of an employee who may have to "share [the employer's] political beliefs and party commitments").

The *Elrod/Branti* exception is not limited to party affiliation—it extends to personal loyalty as well. As the Seventh Circuit explained decades ago, an elected official can expect "absolute loyalty" from the deputies who exercise discretion in carrying out his responsibilities and implementing his policies. *Newcomb*, 558 F.2d at 830. That is so because, "[i]f [the official] lost confidence in his deputy, for whatever reason, [the official's] ability to perform his job would be severely hampered." *Id.* That would be so even if the disagreement between elected official and subordinate "were unrelated to actual job performance," since it could turn the public office "into a battleground in which little [is] accomplished, to the detriment of the

citizens." *Id.* So when "the employee in question is empowered to act and speak on behalf of a policymaker, especially an elected official," the elected official must have discretion to select the employee based on loyalty and political considerations. *Butler*, 211 F.3d at 744.

These principles apply here. An associate judge makes sensitive, discretionary decisions and recommendations in the District Judges' cases, acting as the referring judge's alter ego. Haddock could issue subpoenas, rule on evidentiary challenges and discovery motions, and even issue protective orders. *See* Tex. Fam. Code § 201.007. Parties may waive district court review; in these cases, the associate judge has the final word on behalf of the district judge. *See id.* So a Texas district judge must be able to count on the loyalty and judgment of the associate judges who serve his court. Indeed, "[t]here is no likely circumstance in which a shared ideology is more important than when an elected official appoints a deputy who may act in his or her stead." *Butler*, 211 F.3d at 744; *accord Curtis*, 2020 WL 3477025, at *7 (applying the policymaker exception to "a deputy sheriff [who] is the alter ego of the sheriff"); *Underwood*, 698 F.3d at 1343 (same, for court clerk); *Jenkins v. Medford*, 119 F.3d 1156, 1164 (4th Cir. 1997) (en banc) (same).

Haddock raises three arguments to the contrary. First, Haddock argues a judge cannot be a "policymaker" because "*judges apply, rather than create, law.*" Blue Br. 52. Second, she says she couldn't be a "policymaker" because "there were no policies" or "confidences." Blue Br. 44. Finally, Haddock contends she cannot be a confidential employee because she served all seven district judges, not just one. Blue Br. 15. All these arguments fail.

19

**1.** Haddock's first theory is contrary to the great weight of authority. Even if "judges might [not] be considered policymakers in the same sense as the executive or legislature," their duties implicate "discretion concerning issues of public importance," and that puts them at the policymaking level. *Gregory v. Ashcroft*, 501 U.S. 452, 467 (1991). Moreover, as the Supreme Court has observed, "in fashioning and applying the common law," state judges *do* "make policy." *Id.* at 465–66. Not only "do state-court judges possess the power to 'make' common law, but they have the immense power to shape the States' constitutions as well." *Republican Party of Minn. v. White*, 536 U.S. 765, 784 (2002); *see also James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549 (1991) (Scalia, J., concurring in the judgment) ("I am not so naive (nor do I think our forebears were) as to be unaware that judges in a real sense 'make' law.").

Texas family courts contribute to the development of the law in this way. For example, the "best interests of the child" factors considered in every suit affecting the parent-child relationship, *see* Tex. Fam. Code § 153.002, were judicially developed. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The *Elrod/Branti* exception applies to judges just as it does to other elected officials. *See, e.g.*, *Chisom v. Roemer*, 501 U.S. 380, 400-01 (1991).

To be sure, that a state judge is a "policymaker" under *Elrod/Branti* "does not mean" that cases before the judge "should be handled in a political manner. That, of course, should never be the case. Instead, [application of the doctrine is] based on the reality" that elected judges "do and should carry out the . . . goals and priorities

on which they ran." *McCaffrey v. Chapman*, 921 F.3d 159, 168 (4th Cir. 2019). To do that, they must be able to select the associate judges who will act as their alter egos.

Haddock relies on *Adams v. Governor of Delaware*, 922 F.3d 166 (3d Cir. 2019), in which the Third Circuit split from the consensus view that judges are subject to the *Elrod/Branti* exception. In *Adams*, the Third Circuit concluded Delaware's constitutional requirement that the governor fill seats on certain courts with reference to party affiliation violates the First Amendment. *Id.* at 179–80. Notably, the Supreme Court has granted certiorari to review the circuit split it created. *See Carney v. Adams*, 140 S. Ct. 602 (2019).

Haddock's claims would fail under *Adams* even if it was correctly decided. *Adams* turns on separation-of-powers concerns arising from executive appointments to the judicial branch, which are inapplicable to the relationship between Texas district judges and the associate judges they appoint. Applying its admittedly "narrow[]" reading of *Elrod/Branti*'s exception, *Adams*, 922 F.3d at 181, the Third Circuit declared that "the policymaking inquiry is designed to test whether the position in question 'is one which cannot be performed effectively except by someone who shares the political beliefs *of [the appointing authority].*'" *Id.* at 180 (quoting *Brown v. Trench*, 787 F.2d 167, 170 (3d Cir. 1986)).[4] Delaware judges do not

---

[4] That is a cramped reading of the doctrine. As the Sixth and Seventh Circuits have both correctly recognized, *see Newman*, 986 F.2d at 163; *Kurowski*, 848 F.2d at 770, the *Elrod* inquiry is not limited to whether political loyalty *to the appointing authority* is needed. Rather, "the question is whether … party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518.

need to share the governor's political beliefs, the court concluded, because "[i]ndependence, not political allegiance, is required of Delaware judges." *Id.* at 179. "[W]hile judges clearly play a significant role in Delaware," the court reasoned, "that does not make the judicial position a political role tied to the will of the Governor and his political preferences." *Id.* at 180.

In short, *Adams* is a separation-of-powers decision that turned on concern about executive control of the judiciary under the Delaware Constitution. *Id.* Haddock's case does not implicate these separation-of-powers concerns. Here, the relevant "appointing authority" is part of the judiciary: the elected district judges. There is absolutely nothing untoward about an elected district judge expecting that the person who will handle countless day-to-day decisions in his cases and issue orders based on a delegation of his judicial power to loyally help the district judge "carry out the . . . goals and priorities on which [he] ran." *McCaffrey*, 921 F.3d at 168; *see also Mumford*, 105 F.3d at 272–73. The office of a family court associate judge "*is* one which cannot be performed effectively except by someone who shares the political beliefs *of the appointing authority*." *Adams*, 922 F.3d at 180 (first emphasis added). So Haddock's claim would fail even in the Third Circuit.

**2.** Haddock next argues she cannot be subject to the *Elrod/Branti* exception as a confidential employee or policymaker because, she alleges, "in Tarrant County's family courts seven associate judges each serve all seven district judges—forty-nine independently developing working relationships." Blue Br. 15; *see also id.* at 44. Haddock neither explains why this would matter nor cites any precedent for the idea that an employee answerable to more than one elected official cannot be a

policymaker. This argument is thus forfeited for lack of adequate briefing. Fed. R. App. P. 28(a)(8)(A); *see United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992) (per curiam) ("Failure of an appellant to properly argue or present issues in an appellate brief renders those issues abandoned.").

In any event, Haddock's theory fails. A judge's strong interest in the loyalty and confidentiality of his agents exists even if they also serve other principals. Indeed, this court has regularly applied the *Elrod/Branti* exception to employees appointed by and answerable to multiple officials. *See, e.g.*, *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 994-96 (5th Cir. 1992) (en banc) (superintendent serving multi-member school board); *Gonzalez v. Benavides*, 712 F.2d 142, 150 (5th Cir. 1983) (executive director of an agency appointed by multi-member county commissioner's court); *cf. Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir. 1987) (no clearly established law saying an administrative law judge appointed by multi-member worker's compensation board cannot be terminated under *Elrod/Branti* exception). Regardless of whether Haddock primarily served one district judge or equally served all seven, the District Court correctly concluded that she worked in a close, confidential relationship with each judge who referred her cases. *See* ROA.973. If Haddock served all seven district judges, as she alleges, a break between Haddock and even one district judge could disrupt the operation of the family courts to the detriment of Tarrant County's citizens. *See Newcomb*, 558 F.2d at 830.

**3.** Finally, Haddock argues "[t]here are also no 'policies' to be implemented— merely a few judge preferences," so her position cannot be considered "policymaking" or "confidential." Blue Br. 15; *see also id.* at 44 (citing ROA.667–

70). She does not explain why this is material—so this argument too is forfeited. *See* Fed. R. App. P. 28(a)(8)(A); *Beaumont*, 972 F.2d at 563.

In any event, Haddock may mean the district judges have no "standard course[s] of action that ha[ve] been officially established," *Black's Law Dictionary* (11th ed. 2019) (defining "policy"), that are known only to the associate judges. This factual allegation—presumed true for purposes of this appeal—*supports*, rather than undermines, the *Elrod/Branti* exception. The exception does *not* apply to employees whose "discretion … [is] severely limited by statute, regulation, or policy determinations made by supervisors" or those whose jobs require "simple ministerial competence." *Aucoin*, 306 F.3d at 273; *see also Meeks*, 779 F.2d at 422. If Tarrant County family courts have no established "policies," as Haddock alleges, she has *more* discretion, not less. Indeed, it is precisely because many decisions made by a judge cannot be subject to a "standard course of action" that judges are "policymakers." The fewer the established policies, the more important it is that the District Judges have complete faith in in their associate judges.

And in any event, the court looks to the office's legal authority and responsibilities, not to how a particular employee performed the job. *See, e.g.*, *Kinsey*, 950 F.2d at 995. So even if Haddock performed her duties mechanically (which is doubtful), her broad statutory authority would make her position subject to the *Elrod/Branti* exception.

24

**B. Even if Haddock was removed from office based on political alignment, that would have been a proper basis for removal.**

Haddock does not dispute that a public employee whose office falls within the *Elrod/Branti* exception can be terminated for political reasons. Blue Br. 47. Instead, she argues an associate judge is subject to the general rule for "more or less ministerial employees who carry out policy mandates," not the exception. *Meeks*, 779 F.2d at 422. That argument fails for all the reason explained above.

Because the exception applies to an associate judge, *see supra* Part I.A, Haddock *could* have been removed from office due to "refus[al] to" support Judge Munford's campaign. ROA.660. The exception allows terminating an employee for refusing to support a candidate for office, *see, e.g.*, *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 714 (1996); *Underwood*, 698 F.3d at 1343, or based on concern for loyalty to the elected official(s) she serves, *see, e.g.*, *Hagan*, 867 F.3d at 824; *Simasko v. County of St. Clair*, 417 F.3d 559, 563 (6th Cir. 2005); *Stegmaier*, 597 F.2d 1033; *Newcomb*, 558 F.2d at 830. Based on Haddock's allegations, that is what happened here: The District Judges appointed a new associate judge with whom Judge Newell had an existing relationship—and from whom he could reasonably expect alignment and loyalty. ROA.662 (alleging her replacement had "'emceed' Defendant [Judge] Newell's investiture").

Haddock raises two final arguments, both of which attack the foundation of the *Elrod/Branti* exception—not just its application to an association judge. Such attacks are futile because the exception is undisputedly binding law. And both Haddock's arguments are unavailing. First, Haddock says removing her from office because she

did not support now–District Judge Munford's campaign is "compelled speech." Blue Br. 49–51. That argument fails because, under the *Elrod/Branti* exception, government office can properly be conditioned on the employee's "prescribed expression." *O'Hare*, 518 U.S. at 717. Even if political affiliation could be described as compelled speech, it is lawful under these circumstances.

Second, Haddock contends the government's interests "are best served by terminating those employees who actually fail at keeping confidences or implementing policy." Blue Br. 46. That is contrary to precedent. The *Elrod/Branti* exception applies whenever the official's speech has "*potential* . . . to cause disruption.*" Kennedy v. Tangipahoa Par. Library Bd. of Control*, 224 F.3d 359, 378 n.19 (5th Cir. 2000) (emphasis added), *abrogated on other grounds by Twombly*, 550 U.S. 544*; see also Waters v. Churchill*, 511 U.S. 661, 680–81 (1994) (plurality). The Constitution does not require a government employer to wait until disruption materializes. *See Graziosi v. City of Greenville*, 775 F.3d 731, 741 (5th Cir. 2015); *Gregorich v. Lund*, 54 F.3d 410, 418 (7th Cir. 1995).

The District Court correctly applied the *Elrod/Branti* exception to Haddock's position as associate judge. This Court should affirm the dismissal of Haddock's "patronage" claim.

## II. Haddock's Petition Claim Fails as a Matter of Law.

Similar considerations support dismissal of Haddock's claim that the District Judges violated her right to petition by "terminat[ing her] in retaliation for having filed this lawsuit" against Judge Baca-Bennett and Tarrant County. ROA.662; *see* ROA.994–1018. The First Amendment protects "the right of the people . . . to

petition the Government for a redress of grievances," U.S. Const. amend. I, and a lawsuit can be a "petition," *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011). The First Amendment thus protects Haddock's right to file a lawsuit. It does not, however, protect her—as a "policymaker" subject to the *Elrod/Branti* exception— from the consequences of exercising that right. *See Hagan*, 867 F.3d at 820.

To plausibly state a claim for violation of her First Amendment right to petition, Haddock must satisfy *Pickering*'s threshold "public concern" test as well as its balancing test. *Guarnieri*, 564 U.S. at 398 (citing *Pickering*, 391 U.S. at 568); *see supra* at 13. She can do neither. Her hostile work environment lawsuit against Judge Baca-Bennett involves a "purely private concern." *Guarnieri*, 564 U.S. at 398. And even if it did involve a matter of public concern, the family courts' interest "in the effective and efficient management of [their] internal affairs," *id.*, outweighs Haddock's interest in petitioning.

## A. Haddock's petition claim also falls to the *Elrod/Branti* exception.

Taking the second defect first, Haddock's petition claim was correctly dismissed under the *Elrod/Branti* exception. Haddock's lawsuit against Judge Baca-Bennett— one of the judges Haddock alleges she served—could undoubtedly disrupt the operation of the family courts.

This court would not be the first to say a judicial officer can be removed from office for filing a lawsuit. The Seventh Circuit reached that conclusion in *Hagan* after the governor of Illinois declined to reappoint a group of arbitrators who had filed a lawsuit challenging the state's workers' compensation reform statute. 867 F.3d at 819. Taking as true the arbitrators' allegation that their lawsuit was the "sole

reason" for their termination, the court "nonetheless conclude[d] that the policymaker exception bar[red] . . . their First Amendment retaliation claim." *Id.* at 825. There was "no need for a fact-specific analysis of the circumstances" because "under the policy-maker corollary to the *Pickering* analysis, the First Amendment does not prohibit the discharge of a policy-making employee when that individual has [filed a lawsuit] on a matter of public concern in a manner that is critical of superiors or their stated policies." *Id.* at 826 (internal citation and quotation marks omitted).

Indeed, Haddock's "complaint illustrates the rationale behind the *Elrod-Branti* exception," as parts of it "read[] as a political attack." *McCaffrey*, 921 F.3d at 167. Haddock's original complaint accused Judge Baca-Bennett of violating the canons of judicial ethics, ROA.999, emphasized salacious character attacks on Judge Munford, ROA.1001–02, and insinuated that then-Judge Harris was disingenuous in connection with the rumor that Haddock had resigned, ROA.1004–07. (The substance of these allegations carry over to the live pleading.) The District Judges were not required to retain an associate judge who displayed such hostility towards some of their number. *See McCaffrey*, 921 F.3d at 167.

As this Court recently explained, the *Elrod/Branti* exception is "melded" into "the *Pickering-Connick* test." *Maldonado*, 932 F.3d at 392. So "where a public employee . . . occupies a confidential or policymaking role, the employer's interests more easily outweigh the employee's First Amendment rights." *Id.*; *see also Borzilleri v. Mosby*, 874 F.3d 187, 194 (4th Cir. 2017); *Wiggins*, 363 F.3d at 390; *Aucoin*, 306 F.3d at 274; *McCabe v. Sharrett*, 12 F.3d 1558, 1570–71 (11th Cir. 1994).

Under *Pickering*, this is a case where "little, if any, weighing is called for." *McBee v. Jim Hogg County*, 730 F.2d 1009, 1014 (5th Cir. 1984) (en banc). "When a petition takes the form of a lawsuit against the [plaintiff's] government employer, it may be particularly disruptive." *Guarnieri*, 564 U.S. at 390. And "[w]hen close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Connick*, 461 U.S. at 151–52. Indeed, this Court has said an employee's First Amendment interests are "easily" outweighed by the government's in circumstances like this one. *Aucoin*, 306 F.3d at 274.

Haddock is nowhere close to tipping the scales. For a district judge, a close working relationship with the associate judges to whom he delegates many delicate decisions is essential to the public services provided by Tarrant County's family courts. *See* Tex. Fam. Code §§ 201.005, 201.007 (documenting the extensive, and often collaborative, duties of an associate judge); *see also* ROA.643 (quoting Judge Harris' 2017 description of his court as "the most efficient court in Tarrant County," and alleging this was due to his and Haddock's "mutual efforts"). Indeed, Haddock's pleadings document the frequent interactions between herself and the district judges. *See, e.g.*, ROA.646, ROA.648, ROA.652, ROA.659. Thus, concern that Haddock's lawsuit would negatively affect the courts' efficiency should be given a wide degree of deference. *See Connick*, 461 U.S. at 151–52.

Haddock argues she could not be removed from office because she alleges she continued to competently perform her duties. That does not obviate the District Judges' interest in avoiding conflict within chambers. Even if disagreement between

elected official and subordinate is "unrelated to actual job performance," it can turn the public office "into a battleground in which little [is] accomplished, to the detriment of the citizens." *Newcomb*, 558 F.2d at 830.

The District Judges could rightly be concerned about such conflict here. Not only had Haddock sued Judge Baca-Bennett, her original complaint had also accused then-Judge Harris, her longtime supervising judge, of contributing to the alleged "badgering, threats, back-biting, undermining and public maligning." ROA.1012. That Haddock previously made such allegations against her supervising judge, in addition to filing a lawsuit against another judge she had allegedly served, could surely provide cause to be concerned about disruption to the Tarrant County family courts (as well as Haddock's ability to faithfully serve the District Judges). *See, e.g.*, *Graziosi*, 775 F.3d at 740–41. Haddock's lawsuit is just the kind of thing that could turn the family courts into "a battleground." *Newcomb*, 558 F.2d at 830.

## B.  Haddock's lawsuit did not involve a matter of public concern.

Even if application of the *Elrod/Branti* exception were not dispositive, Haddock's petition claim fails for another reason: Her hostile work environment lawsuit against Judge Baca-Bennett does not involve a matter of public concern. *See Guarnieri*, 564 U.S. at 386.

"Public concern" is a legal term of art. *Gibson v. Kilpatrick*, 838 F.3d at 476, 485 (5th Cir. 2016). A petition satisfies that requirement only when it relates to a "matter of political, social, or other concern to the community." *Rathjen v. Litchfield*, 878 F.2d 836, 841 (5th Cir. 1989). Because " 'at some level of generality almost all speech of state employees is of public concern,' " this Court is "careful not to conclude that

speech is a matter of public concern merely because it involves public employees." *Gibson*, 838 F.3d at 485 (quoting *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993) (per curiam)). And if a petition touches issues of arguable public concern along with private matters—that it, it is "mixed," *see id.*—the Court looks to the petition's "content, form, and context" to determine whether private or public matters predominate. *Guarnieri*, 564 U.S. at 398 (quoting *Connick*, 461 U.S. at 147–48); *see also Bradshaw v. Pittsburg Indep. Sch. Dist.*, 207 F.3d 814, 817 (5th Cir. 2000) (per curiam). Where "personal concerns predominate" in a public employee's petition, it is not protected. *Gibson*, 838 F.3d at 485. In this case, all three factors favor a conclusion that Haddock's complaint was *not* a matter of public concern.

*Content*. A political campaign may form the backdrop for Haddock's allegations, but Haddock's claims are not about that campaign—they are about how she was treated by Judge Baca-Bennett, one of her supervisors. Haddock alleges "[Judge] Baca-Bennett[] interfere[d] with Diane's nearly 20-year working relationship with Tarrant County," affected Haddock's job performance "by impugning [her] reputation as a judge," and tried to "prevent[ Haddock] from working until the age of sixty-five" by convincing other judges Haddock should be removed from office. ROA.1011–12.

These events are not a matter of public concern because they affected Haddock in "a purely personal manner." *Gibson*, 838 F.3d at 484. The complaint focused on obtaining redress for the alleged damage to Haddock's reputation allegedly caused by, *inter alia*, Judge Harris and Judge Baca-Bennett's Facebook posts about her rumored resignation, *see supra* at 7–8, and Judge Baca-Bennett's alleged comments

about Haddock to other judges and lawyers, *see supra* at 6–7; ROA.1009–10. Even when it involves a public employee, a lawsuit seeking this kind of "exonerat[ion]" is a private matter. *Bradshaw*, 207 F.3d at 817. So even assuming Haddock's complaint contained some matter of arguable public concern, it centered on her ongoing dispute with Judges Baca-Bennett and Harris. Because "personal concerns predominate," the petition is not protected by the First Amendment. *See Gibson*, 838 F.3d at 485.

Haddock argues her lawsuit must relate to a public concern because she "assert[ed] and s[ought] to clarify . . . important First Amendment rights" and her lawsuit "assert[ed] both [Mr. Haddock's] rights as a speaker and the public's right to hear." Blue Brief at 33; *see id.* 31–33. The first contention is nonsensical. Mr. Haddock is not a plaintiff, and Haddock has no cause of action for a violation of someone else's constitutional rights. *See infra* Part IV.

Haddock's theory is faulty because "[m]erely including a First Amendment claim in [a] lawsuit does not transform it into a matter of public concern." *Gibson*, 838 F.3d at 483–84 (agreeing with the Second and Third Circuits, which "have made [this] plain"). If "the public's right to hear" were enough to elevate speech to a matter of public concern, then every First Amendment retaliation lawsuit would constitute such a matter. That Haddock brought suit under the First Amendment cannot transform her lawsuit into a matter of public concern.

Haddock also contends "that an elected district judge [threatening] to fire an associate judge" is a matter of public concern. Blue Brief at 31–32. Even if such a threat were plausibly alleged, it would be immaterial because "management policies

that [are] only interesting to the public by virtue of the manager's status as an arm of the government are not" by themselves "matter[s] of public concern." *Gibson*, 838 F.3d at 485. Because Haddock alleges nothing more, that argument is unavailing. *Guarnieri*, 564 U.S. at 399 ("Of course in one sense the public may always be interested in how government officers are performing their duties. But as the *Connick* and *Pickering* test has evolved, that will not always suffice to show a matter of public concern."). The allegations in Haddock's original petition did not raise a matter of public concern.

**Form**. The form of Haddock's petition—a private lawsuit seeking damages against Judge Baca-Bennett in her personal capacity—indicates it is not protected. Haddock's petition "was not a whistleblower suit alerting the public of misconduct; instead it sought assistance in redressing personal grievances." *Gibson*, 838 F.3d at 486. Instead, Haddock sued Judge Baca-Bennett in her personal capacity and sought damages out of Judge Baca-Bennett's own pocket. *See* ROA.1018. That is "the equivalent of suing one's neighbor," which makes the lawsuit a private matter. *Gibson*, 838 F.3d at 486. Put another way, Haddock "brought this action . . . in pursuit of victory in a personal dispute with [her] supervisor[]," not in an effort to vindicate the public interest. *Singer v. Ferro*, 711 F.3d 334, 342 (2d Cir. 2013) (internal citation omitted).

**Context**. That a public employee's petition is part of an "ongoing employment dispute . . . usually suggests" it is not protected. *Kennedy*, 224 F.3d at 376; *see e.g. Gibson*, 838 F.3d at 487. That is the case here. Haddock filed her lawsuit in the context of a long-running dispute with Judge Baca-Bennett. Indeed, although the

complaint focuses on Judge Baca-Bennett's alleged hostility toward Haddock, it also reveals bad feelings running in the other direction. Haddock describes a feud with Terry Munford—wife of Judge Munford, the candidate Judge Baca-Bennett allegedly supported, *see* ROA.997–98—and alleges Haddock confronted Judge Baca-Bennett for defending Judge Munford but not coming to Haddock's defense when Haddock was publicly attacked earlier that year, *see* ROA.999. A lawsuit like Haddock's, filed in "pursuit of victory" in a long-running dispute, is not a matter of public concern. *Singer*, 711 F.3d at 342.

News reports about Haddock's lawsuit do not "demonstrat[e] her petition was . . . a subject of general interest and of value and concern to the public." Blue Br. 33–34. To be sure, "speech made against the backdrop of ongoing commentary and debate in the press" is more likely to involve a public concern. *Kennedy*, 224 F.3d at 373; *see also Gibson*, 838 F.3d at 487. But the question is whether the subject matter of Haddock's lawsuit was otherwise of interest to the public, not whether the public developed an interest in the lawsuit itself after it was filed. *See, e.g.*, *Kennedy*, 224 F.3d at 373 (speech about public-safety concerns already being discussed by the public); *Brawner v. City of Richardson*, 855 F.2d 187, 191 (5th Cir. 1988) (plaintiff contributed to discussion that had begun in the newspaper). Indeed, if *post hoc* reports about the fact of a lawsuit were enough, then any purely private lawsuit could be transformed into one of public concern, regardless of its substance.

Haddock says only that the lawsuit was "reported in several news outlets" after it was filed. Blue Br. 33. That is not a "backdrop" of "continuing commentary" about the subject of her claims—the alleged hostile work environment—and cannot

show the lawsuit was of interest for any reason other than that the parties are public officials. *See Guarnieri*, 564 U.S. at 399. Indeed, the media's attention to Haddock's lawsuit is unremarkable because "at some level of generality almost all speech of state employees is of public concern." *Gibson*, 838 F.3d at 485 (citation omitted).

*   *   *

Content, form, and context all point to Haddock's lawsuit involving a private matter. Even if the original complaint could be considered a "mixed" petition, *see Gibson*, 838 F.3d at 485, the gravamen of Haddock's claim was a private dispute about her treatment by Judge Baca-Bennett. And both the form and context of the lawsuit show that private matters predominate. For this reason too, Haddock's petition claim fails as a matter of law.

## III. Haddock's Intimate-Association Claim Also Fails Because the *Elrod/Branti* Exception Applies to Her Position as Associate Judge.

Haddock's intimate association claim fails for the same reasons. Haddock claims that the District Judges' actions impinge on her First' Amendment right to associate with her husband. *See* ROA.639, ROA.664; Blue Br. 18, 20. The District Judges do not dispute that marriage is included in the constitutionally protected right to intimate association. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–19 (1984); *Mote v. Walthall*, 902 F.3d 500, 506 (5th Cir. 2018); *Walker v. Henderson*, 239 F.3d 366 (5th Cir. 2000) (unpublished); *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1051 (5th Cir. 1996).[5] Nonetheless the district court correctly concluded that Haddock's

---

[5] Haddock invokes the First Amendment as the source of this right. The Sixth Circuit recently concluded the right to intimate association is properly understood

intimate association interest must "yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Branti*, 445 U.S. at 517.

This Court and its sisters have applied *Elrod*'s "policymaker" exemption to intimate association claims. For example, in *Soderstrum*, a town's police chief was defeated at the polls, and the new chief declined to re-hire his personal secretary. 925 F.2d at 136. The secretary had worked for the outgoing chief for over ten years and was married to his nephew. *Id.* She "allege[d] that, by firing her because of her political affiliation with the outgoing . . . administration, [the new chief] violated her First-Amendment right to freedom of association." *Id.* at 139. The Court concluded the new chief could properly "refrain[] from reappointing [the plaintiff] because of her close relationship with the outgoing chief of police, who might run against [him] in the next election" because she "served in a position of confidence requiring complete loyalty to the police chief." *Id.* at 140. After all, she was a relative of the outgoing chief. *See id.* at 141. Because the plaintiff was a confidential employee, the new chief could permissibly decline to keep her on based on her relationship with his political rival. *See id.* at 140–41.

Intimate-association claims based on marriage are treated no differently under *Elrod/Branti* and *Pickering*. After all, "[i]t is a matter of common experience that

---

to arise under the Fourteenth Amendment's due process clause. *Hartwell v. Houghton Lake Cmty. Sch.*, 755 F. App'x 474, 477–78 (6th Cir. 2018). The Court need not address this question today, however, because strict scrutiny applies both to First Amendment claims, *e.g.*, *McCabe*, 12 F.3d at 1574, and to state action that burdens a fundamental right protected by the due process clause, *see Montgomery v. Carr*, 101 F.3d 1117, 1124 (6th Cir. 1996).

spouses tend to possess a higher degree of loyalty to their marital partners than to their superiors." *McCabe*, 12 F.3d at 1572. So a newly elected sheriff could fire his "political enemy['s]" wife from a confidential position, even without any showing the wife herself had actively spoken or campaigned against the new sheriff, because she "was the political enemy of her husband's political enemy, [the new sheriff]." *Soderbeck*, 752 F.2d at 288. Similarly, in *McCabe*, the plaintiff was personal secretary to the chief of police until she married one of the department's police officers. 12 F.3d at 1559–60. After the marriage, the chief transferred her to another position out of concern that she might not keep confidences from her husband and that her loyalty to her husband would override her loyalty to the chief. *Id.* at 1560. The court recognized the plaintiff's fundamental right in her marriage. *Id.* at 1563. But "loyalty and the ability to keep confidences [we]re essential to the proper performance of" her job as the chief's secretary. *Id.* at 1564–71. Consequently, the plaintiff's interest was outweighed by the government's "concern . . . that her marital status w[ould] inhibit the proper functioning of the chief's office by compromising her loyalty to the police chief." *Id.* at 1567–68.

The *Elrod/Branti* exception also applies where the plaintiff alleges he was fired for a family member's political activity. In *Simasko*, an assistant county attorney "was allegedly fired for refusing to support the campaign of his supervisor for a district court judgeship, and for refusing to try to curtail his brother's public support of his supervisor's opponent in the election." 417 F.3d at 562. Because the plaintiff was a "policymaker," he could be terminated based on association with his brother, a political opponent of his supervisor, even though the plaintiff himself did not

actively oppose his supervisor's campaign. *Id.* at 564–65 ("The failure of [plaintiff] to comply with the political wishes of . . . his supervisor, and his failure to try to prevent his brother from supporting a[nother] candidate . . . could have caused [plaintiff's supervisor] to question [his] loyalty."); *see also, e.g.*, *Biggs*, 189 F.3d at 992.

The result is no different where courts balance the interests under *Pickering*. For example, in *Ross v. Clayton County*, 173 F.3d 1305 (11th Cir. 1999), a police officer was demoted because he lived with his brother, who was on probation, in violation of department policy against associating with probationers. *Id.* at 1306, 1310 (cited at Blue Br. 25). Without reference to *Elrod/Branti*, the court found no constitutional violation under *Pickering*. *Id.* at 1311–12. "The employer's interest . . . is in avoiding potential conflicts of interest between loyalty to the law enforcement employer and loyalty to" the plaintiffs' brother. *Id.* at 1311. The officer had an "interest . . . based in a personal and intimate relationship," but that interest was outweighed by the government's. *Id.*

The *Elrod/Branti* exception applies here, and Haddock could be fired based on her husband's political activity without offending the First Amendment. As in *Simasko*, Haddock did not support Judge Munford's campaign and refused to prevent her husband from campaigning against him. *See* ROA.644. The District Judges could reasonably "question [Haddock's] loyalty" and her ability to carry out their jurisprudential aims. *Simasko*, 417 F.3d at 564–65. So she could be removed from office based on political misalignment with the elected District Judges.

None of the cases Haddock cites are to the contrary. *See* Blue Br. 20–26. Not one of them holds, as Haddock says (at 26), that "no government interest can outweigh marriage." Rather, each one recognizes that a burden on a public employees' right to intimate association can indeed be outweighed by a government employer's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568.

First, Haddock points to *Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999), in which a policymaking employee alleged he was fired because his wife was suing state officials for wrongful termination. *Id.* at 38–39; *see* Blue Br. 20–22. The court carefully distinguished the case from First Amendment challenges arising from "political affiliation"—in other words, *Elrod* was not at issue. *Id.* at 47. But unlike in *Adler*, Haddock alleges political affiliation is exactly why she was removed from office. ROA.639 (alleging Haddock was terminated "in retaliation ... for Plaintiff's husband's political views and activity"); *see also* ROA.644 (alleging relation for her "refusal to advocate positions or patronize a judicial candidate").[6]

---

[6] Even if *Adler* were not distinguishable, this Court should not follow it. It is an example of an unfortunately recurring phenomenon: courts eliding the question of causation with the question of whether the employee's action is protected. These are distinct elements of a retaliation claim. *See Connick*, 461 U.S. at 153–54; *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991). If speech is not protected because of its potential for disruption, it makes no difference whether the employer was subjectively concerned about disruption when it fired the employee. The speech was never protected, so there can be no violation of the First Amendment. The same error appears in *Tucker v. Georgia Department of Public Safety*, No. CV-208-33, 2009 WL 2135807 (S.D. Ga. July 15, 2009), where the court ruled for the plaintiff because

Haddock next points to *Adkins v. Board of Education of Magoffin County*, 982 F.2d 952 (6th Cir. 1993), in which a school district superintendent fired a principal's wife from her job as her husband's secretary. Blue Br. 22–23. The Sixth Circuit concluded the secretary had made out a prima facie case by alleging she was fired out of spite towards her husband. *Adkins*, 982 F.2d at 956. But the court did not address whether she was subject to the *Elrod/Branti* exception. *See generally id.* Indeed, that's unlikely, since the secretary apparently had no confidential relationship with the superintendent who fired her. So *Adkins* is simply an application of the general rule that low-level public employees may not be fired for the exercise of their First Amendment rights. *Rutan*, 497 U.S. at 65. Moreover, the Sixth Circuit remanded for consideration of the defendants' argument that "the plaintiff's rights must be weighed against the interest in efficient operation of the school system." *Adkins*, 982 F.2d at 955. *Adkins* is perfectly consistent with this Court's precedent recognizing that the government employer's interests may require an employee's rights to yield. *See supra* Parts I.A, II.A.

Finally, Haddock claims other circuits have "dispense[d] with the *Pickering/Connick* balancing test in intimate association cases." Blue Br. 26. The cases she cites (at 23–25) did no such thing. Instead, they set aside *Pickering*'s threshold question: Whether the public employee's actions involve a matter of public concern. These cases hold simply that "unlike speech or petitions by public

---

the employer presented no evidence that a state trooper's marriage "could have some impact at the [government] workplace." *Id.* at *12; *see* Blue Br. 24.

employees, associational activity by public employees need not be on matters of public concern to be protected under the First Amendment." *D'Angelo v. Sch. Bd. of Polk County*, 497 F.3d 1203, 1212 (11th Cir. 2007).[7]

*Pickering*'s public-concern requirement is not in dispute as to Haddock's intimate association claim, so these cases are immaterial. Haddock's claims fail because the District Judges' strong interest in selecting associate judges who are aligned in jurisprudential view and will serve the referring district judge loyally *outweighs* Haddock's interests under *Pickering* and *Elrod/Branti*.

## IV. Haddock Does Not Allege a Viable "Free Speech" Claim.

Haddock has no plausible retaliation claim based on her own speech. She admits that she "made no speech," Blue Br. 18, and says "all of the protected First Amendment speech activity . . . was speech . . . attributed to" her husband. Blue Br. 35; *see also id.* at 3–4, 15. But in this Court, Haddock offers a counterfactual: "Even if the speech attributed to Gerald were recast and considered to be Diane's speech, however, the First Amendment nevertheless protected it." Blue Br. 35. This argument is without merit.

Haddock's disclaimer of having made any speech herself is fatal to her First Amendment claim. It is well established that a "plaintiff generally must assert his

---

[7] This Court has said the same as to speech-related association claims. *See Breaux v. City of Garland*, 205 F.3d 150, 157 n.12 (5th Cir. 2000). The issue, however, is the subject of a circuit split. *See D'Angelo*, 497 F.3d at 1212 (noting the Eleventh Circuit's split with the Second, Sixth, and Seventh Circuits); *Balton v. City of Milwaukee*, 133 F.3d 1036, 1040 (7th Cir. 1998) (discussing the split).

own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).[8] And section 1983 provides a cause of action only when *the plaintiff* suffered "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. It does not provide a cause of action to plaintiffs alleging a third party's rights were violated. *See Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986); *cf. Garcetti*, 547 U.S. at 417 (recognizing "*a public employee's* right . . . to speak as a citizen addressing matters of public concern" (emphasis added)).

In any event, Haddock's counterfactual allegations would also fall to the *Elrod/Branti* exception. She alleges her husband spoke in the context of a political campaign. To be sure, that is a matter of public concern because "political speech regarding a public election lies at the core of matters of public concern protected by the First Amendment." *Wiggins*, 363 F.3d at 390. Speech on a matter of public concern gives rise to "the possibility of a First Amendment claim." *Garcetti*, 547 U.S. at 418. But, as discussed above, that is not enough. *See Guarnieri*, 564 U.S. at 386. The employee must also overcome the government employer's interests under *Pickering, see id.* and the *Elrod/Branti* exception is "melded" into the "*Pickering-*

---

[8] *See also Heald v. Dist. of Columbia*, 259 U.S. 114, 123 (1922); *see, e.g.*, *Conn v. Gabbert*, 526 U.S. 286, 292–93 (1999) (holding a lawyer "clearly had no standing" to bring a section 1983 claim based on a violation of his client's rights); *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011) (holding a secretary could not sue based on a violation of her former boss's constitutional rights).

*Connick* test." *Maldonado*, 932 F.3d at 392.[9] So where an employee subject to the exception "has vigorously campaigned against the election of the very person who became her boss," her interests in political speech will yield. *Borzilleri*, 874 F.3d at 194.

Haddock's counterfactual "free speech" claim fails. A district judge can appropriately consider political views and speech in selecting an associate judge. *See supra* Part I.A. If Haddock *had* campaigned against Judge Munford as her husband did, it would be difficult indeed for Judge Munford to rely on her to issue rulings in his cases. *See, e.g.*, *Underwood*, 698 F.3d at 1343–44; *Terry*, 866 F.2d at 377 (allowing sheriff to "decline to reinstate those who did not support" his campaign). And other district judges who supported Judge Munford could also doubt the loyalty of an associate judge who opposed his candidacy. *See, e.g.*, *Simasko*, 417 F.3d at 563 (holding that plaintiff's "decision not to support [the county attorney's] choice for the district court judgeship election . . . could have caused [the county attorney] to lose confidence in [the plaintiff]."). Because Haddock's office is subject to the *Elrod/Branti* exception, the District Judges' need for loyalty outweighs her counterfactual interest in counterfactual political speech.

*           *           *

---

[9] Other courts agree that the *Elrod* policymaker doctrine applies to claims "based on actual speech" as well as those based on party affiliation. *Simasko*, 417 F.3d at 562; *see also Hagan*, 867 F.3d at 820 (*Elrod* and *Branti* apply "when [employees] engage in speech or other First Amendment activity that could undermine . . . policy or political goals").

As the District Court explained, "an associate judge's political ideology, associations, and activities may rationally influence a district judge's assessment of the individual's suitability for [the] position," so Haddock could be removed from office for any of those reasons. ROA.974. That requires dismissal of her petition, intimate association, and "patronage" claims, as well as her non-existent free-speech claim.

Haddock complains that the District Court did not explicitly "recogniz[e] and address[]" her petition and intimate association claims. Blue Br. 1–2. Even if that were so, it would not be reversible error. *See* Fed. R. Civ. P. 52(a)(3) ("The [district] court is not required to state findings or conclusions when ruling on a motion under Rule 12"). The *Elrod/Branti* "policymaker" exception—which is "melded" into the *Pickering* balancing test, *Maldonado*, 932 F.3d at 392—resolves all Haddock's claims. And the Court may affirm "on any grounds supported by the record." *Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009).

## V. Judge Baca-Bennett is Entitled to Qualified Immunity for Haddock's Retaliatory Hostile-Work-Environment Claim.

Haddock's claim that Judge Baca-Bennett retaliated against her by creating a hostile work environment fails for a related reason: Public officials like Judge Baca-Bennett are entitled to qualified immunity unless "existing precedent places the constitutional question *beyond debate*." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). There certainly was no law establishing beyond debate that Judge Baca-Bennett could not act against an employee within the *Elrod/Branti* exception based on employee conduct that threatened to disrupt the family courts' operations. And

this Court has never recognized a claim under section 1983 for retaliation based on a hostile work environment.

### A.  Haddock has not alleged a constitutional violation.

Haddock's claim cannot proceed unless she plausibly shows Judge Baca-Bennett "violated a constitutional right." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). She cannot. Haddock cites no authority for the theory that a retaliatory hostile work environment is actionable as an adverse employment action under section 1983. *See infra* Part V. B. And even if such a claim were viable, the *Elrod/Branti* exception applies, *see supra* Part I.A, so the Tarrant County district courts' interests would outweigh Haddock's interests in First Amendment exercise, *see supra* Parts I–IV. Haddock has not shown a violation of any constitutional right. As such, the Court need inquire no further—the district court properly dismissed Haddock's claim against Judge Baca-Bennett in her individual capacity.

### B.  Even if Haddock had alleged a violation, no clearly established law put it "beyond debate."

Haddock also cannot overcome qualified immunity because she cannot show that "the right at issue was clearly established at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). To satisfy this element, the pertinent law must be identified "in light of the specific context of the case, not as a broad general proposition," *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam), or "from a bird's eye view," *Morrow*, 917 F.3d at 880; *see also McCoy v. Alamu*, 950 F.3d 226, 233 (5th Cir. 2020). And "because of the 'sophisticated balancing' involved in First Amendment questions, 'only infrequently will it be

clearly established that a public employee's speech on a matter of public concern is constitutionally protected.'" *Cannon v. Vill. of Bald Head Island*, 891 F.3d 489, 499 (4th Cir. 2018); *see also DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009) ("In First Amendment retaliation cases, there will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated clearly established constitutional rights." (internal quotation omitted)), *abrogated on other grounds by Sims v. City of Madisonville*, 894 F.3d 632 (5th Cir. 2018).

Haddock tries to show clearly established law by citing *Elrod/Branti* and *Pickering/Connick* for the proposition that public employees have First Amendment rights. Blue Br. 63–64. There's no doubt about that "broad general proposition." *Mullenix*, 136 S. Ct. at 308. But that is not enough to overcome Judge Baca-Bennett's qualified immunity. *Id.*

To do so, Haddock would need to identify clearly established law showing, at a minimum, that a retaliatory hostile work environment is actionable, that similar facts constitute an adverse employment action under section 1983, and that a public official similar to an associate judge is *not* a policymaker or confidential employee. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("We have stressed the need to identify a case where an officer acting under similar circumstances . . . was held to have violated" the constitutional right at issue.); *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019) ("The plaintiff has the burden to point out the clearly established law."). Haddock cannot.

This Court has never recognized a cause of action for "retaliatory hostile work environment" under employment discrimination statutes, much less for First

Amendment retaliation under section 1983. *See Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 742 n.5 (5th Cir. 2017), *as rev.* (Mar. 13, 2017) (citing *Bryan v. Chertoff*, 217 F. App'x 289 (5th Cir. 2007) (per curiam)). When the law is so "unsettled," a plaintiff cannot overcome qualified immunity. *Sims*, 894 F.3d at 641. So even if a retaliatory hostile work environment were actionable under section 1983, Judge Baca-Bennett would be entitled to qualified immunity. *See id.*

Relatedly, it was not clearly established at the time Judge Baca-Bennett acted—or today—that the alleged actions would constitute an "adverse employment action." In First Amendment retaliation cases, this Court has long held that "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and [formal] reprimands." *Benningfield v. City of Hous.*, 157 F.3d 369, 376 (5th Cir. 1998); *see also Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999) ("[T]his court has required something more than" "trivial acts of retaliation."). Haddock alleges none of those things. And "some things are not actionable even though they have the effect of chilling the exercise of free speech." *Benningfield*, 157 F.3d at 376.

Haddock cannot point to clearly established law showing that the alleged "badgering, threats, back-biting, undermining and maligning," ROA.644, are actionable constitutional wrongs.[10] To the contrary, the Court has long recognized

---

[10]    Haddock's allegations might allege a plausible claim under Title VII, which broadly extends to any "employer actions that would have been materially adverse to a reasonable employee." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). But this Court has never applied the broader Title VII definition of "adverse employment action" to First Amendment retaliation cases. *See Gibson v.*

that "criticism," *Mylett v. City of Corpus Christi*, 97 F. App'x 473, 476 (5th Cir. 2004) (per curiam), and "mere accusations, without more," *Benningfield*, 157 F.3d at 376, are not adverse employment actions. Haddock's theory is not supported by clearly established law.

In any event, the Court need not resolve these questions because Haddock cannot point to a case finding an official liable "under similar circumstances." *Wesby*, 138 S. Ct. at 590. To the contrary, "the Sixth Circuit has held a court referee, whose job description is similar to that of an associate judge, is subject to patronage dismissal." ROA.966 (citing *Mumford*, 105 F.3d at 273); *see supra* at 17–18. And, as the District Court observed, in this circuit, "no case is close" to saying the contrary. ROA.966–67. Haddock cannot identify "existing precedent" placing the lawfulness of Judge Baca-Bennett's "particular" actions "'beyond debate.'" *Wesby*, 138 S. Ct. at 590 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Judge Baca-Bennett is entitled to qualified immunity.

---

*Kilpatrick*, 734 F.3d 395, 400 n.4 (5th Cir. 2013), *cert. granted, judgment vacated*, 573 U.S. 942 (2014); *DePree*, 588 F.3d at 288. And it is far from clear that the statutory standard for Title VII retaliation, *see* 42 U.S.C. § 2000e-3(a), even *could* carry over to whether government action has "abridg[ed] the freedom of speech," U.S. Const. amend. I.

## Conclusion

The Court should affirm the judgment of the district court.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant
  Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

KYLE D. HAWKINS
Solicitor General

/s/ Natalie D. Thompson
NATALIE D. THOMPSON
Assistant Solicitor General
Natalie.Thompson@oag.texas.gov

BENJAMIN S. WALTON
Assistant Attorney General

Counsel for Defendants-Appellees

## CERTIFICATE OF SERVICE

On July 22, 2020, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Natalie D. Thompson
NATALIE D. THOMPSON

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 13,058 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/Natalie D. Thompson
NATALIE D. THOMPSON