No. 19-11327

_____

**In the United States Court of Appeals
for the Fifth Circuit**

_____

Diane Scott Haddock,
*Plaintiff – Appellant,*

v.

Tarrant County, Texas, Patricia Baca-Bennett, Kenneth Earl Newell,
Jesus Nevarez, Jr., Honorable Judith Wells, Jerome S. Hennigan,
James B. Munford; Alex Kim,
*Defendants – Appellees.*

_____

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Honorable Judge Reed O'Connor Presiding

_____

# REPLY BRIEF OF APPELLANT

_____

**WALTER L. TAYLOR**
State Bar No. 19727030
**HART LAW FIRM, PLLC**
6630 Colleyville Boulevard, Suite 100
Colleyville, Texas 76034
Tel: (817) 329-7020
Fax : (682) 292-7406
*WTaylor@thehartlawfirm.com*
**ATTORNEYS FOR APPELLANT
DIANE SCOTT HADDOCK**

# ORAL  ARGUMENT  REQUESTED

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Fed. R. App. P. 34(a)(2)(C), Appellant Diane Scott Haddock respectfully requests oral argument. The issues in this case are complex, and Appellant believes oral argument will significantly aid the Court's decisional process.

# TABLE OF CONTENTS

**STATEMENT REGARDING ORAL ARGUMENT** ...................................................... ii

**TABLE OF CONTENTS** ........................................................................................... iii

**TABLE OF AUTHORITIES** ..................................................................................... iv

**ARGUMENT AND AUTHORITIES** .......................................................................... 1

    A.   The District Judges' claim of absolute power in their employment of associate judges must fail, as must their claim their employment actions toward associate judges are beyond constitutional review. ....................................................................................................... 1

    B.   The District Judges' assertions regarding argument forfeiture are without merit, because Appellant's Brief fully addresses the significance of Diane's assertion that seven associate judges served seven district judges (rather than each serving a single judge), and the fact that no confidential relationships or policies existed. ............................................................ 4

    C.   Appellees' own cases demonstrate why the unique structure of Tarrant County's family court structure deserved a more fully developed record. ........................................................ 7

    D.   Appellees' own arguments demonstrate why a decision at the 12(b)(6) stage was improper, because Appellees attempt to pull additional "facts" from appellate opinions in other cases, or to make them up – *because* there are no facts in the record contrary to Diane's allegations. .... 9

    E.   Appellee Tarrant County's conscious indifference to Diane's First Amendment rights (particularly in violation of its own written policy to the contrary) stated a viable First Amendment claim against Tarrant County. ............................................................. 10

    F.   Appellee Tarrant County's separation of powers argument fails, because its cases and statutes do not address or contemplate the "joint employer" scenario, where the powers being exercised are not "separate." ................................................................................... 12

    G.   Appellees' Briefs attempt to change the facts, insert their own alternative facts, and/or draw inferences in their own favor, rather than in Diane's favor – the opposite of what the standard of review requires. ........................................................................................ 16

    H.   Baca-Bennett had fair warning that threatening Diane's job for political reasons was unlawful......................................................................................................................... 19

**CONCLUSION AND PRAYER** ............................................................................... 20

**CERTIFICATE OF COMPLIANCE** ....................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Pollock*,
  946 S.W.2d 513 (Tex.App. – Austin 1997, pet. denied) ............................ 9

*Adams v. Governor of Delaware*,
  922 F.3d 166, 181 (3rd Cir.) ................................................................. 6, 7

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*,
  520 U.S. 397 (1997) ................................................................................ 15

*Biggs v. Best, Best & Krieger*,
  189 F.3d 989, 994 (9th Cir. 1999) ............................................................ 8

*Branti v. Finkel*,
  445 U.S. 507, 517 (1980) ............................................................... 2, 5, 6, 8

*Branton v. City of Dallas*,
  272 F.3d 730 (5th Cir. 2001) ..................................................................... 8

*Burlington N. & SFR Co. v. White*,
  548 U.S. 53, 69 (2006) ............................................................................ 19

*Burns v. Elrod*,
  509 F.2d 1133, 1136 (7th Cir. 1975) ........................................................ 20

*Butler v. New York State Dep't of Law*,
  211 F.3d 739 (2nd Cir. 2000) .................................................................... 8

*Carroll v. City of Phoenix*,
  2007 WL 1140400 (D. Ariz. Apr. 17, 2007) .............................................. 7

*City of Canton v. Harris*,
  489 U.S. 378 (1989) ................................................................................ 15

*Clark v. Tarrant Cnty., Tex.*,
  798 F.2d 736 (5th Cir. 1986) ..................................................................... 9

*Connick v. Myers*,
  461 U.S. 138 (1983) .............................................................................. 6, 8

*Curtis v. Christian County*,
  963 F.3d 777, 2020 WL 3477025 (8th Cir. 2020) ...................................... 8

*Davis v. Martin*,
   807 F.Supp. 385 ................................................................................ 7

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
   489 U.S. 189 (1989) ........................................................................ 15

*Doe v. Claiborne Cnty., Tenn.*,
   103 F.3d 495 (6th Cir. 1996) .......................................................... 15

*Doe v. Taylor Indep. Sch. Dist.*,
   15 F.3d 443 (5th Cir. 1994) ............................................................ 15

*Ector Cnty. v. Stringer*,
   843 S.W.2d 477 (Tex. 1992) ........................................................... 15

*Elrod v. Burns*,
   427 U.S. 347, 368 (1976) ........................................................ passim

*Garcia v. Reeves Cnty.*,
   32 F.3d 200 (5th Cir. 1995) .............................................................. 9

*Gentry v. Lowndes County*,
   337 F.3d 481 (5th Cir. 2003) ............................................................ 8

*Gonzales v. Benavides*,
   712 F.2d 142, 150 (5th Cir. 1983) .................................................... 8

*Griffith v. Johnston*,
   899 F.2d 1427 (5th Cir. 1990) ....................................................... 15

*Hanna v. Home Ins. Co.*,
   281 F.2d 298 (5th Cir. 1960) ......................................................... 15

*Hawkins v. Steingut*,
   829 F.2d 317 (2d Cir. 1987) ............................................................. 8

*Henry v. Cox*,
   520 S.W.3d 28 (Tex. 2017) ............................................................ 15

*Jakomas v. McFalls*,
   229 F.Supp. 2d 412 (W.D. Penn. 2002) .......................................... 7

*Janus v. American Federation of State, County, and Municipal Employees, Council 31, et al.*,
   138 S.Ct. 2448, 2463 (2018) ............................................................ 2

*Justice v. Pike Cty. Bd. of Educ.*,
   348 F.3d 554 (6th Cir. 2003) ................................................................. 8

*Kinsey v. Salado Indep. Sch. Dist.*,
   950 F.2d 988 (5th Cir. 1992) ................................................................. 8

*Kurowski v. Krajewski*,
   848 F.2d 767 (7th Cir. 1988) ................................................................. 7

*Larson v. Cantrell*,
   974 F.Supp. 1211 (N.D. Ind. 1997) ....................................................... 9

*Maldonado v. Rodriguez*,
   932 F.3d 388 (5th Cir. 2019) ................................................................. 8

*McIntosh Cnty. Bd. of Comm'rs*,
   162 F.Supp.3d 1363 (S.D. Ga. 2016) ..................................................... 9

*McMillian v. Monroe Cnty.*,
   520 U.S. 781 (1997) ............................................................................. 15

*Meeks v. Grimes*,
   779 F.2d 417 (7th Cir. 1985) ................................................................. 8

*Minn. v. White*,
   536 U.S. 765 (2002) ............................................................................... 8

*Morrow v. Balaski*,
   719 F.3d 160 (3d Cir. 2013) (en banc) ................................................. 15

*Mumford v. Basinski*,
   105 F.3d 264 (6th Cir. 1997) ................................................................. 7

*Mummau v. Ranck*,
   687 F.2d 9 (3rd Cir. 1982) ..................................................................... 8

*Newman v. Voinovich*,
   986 F.2d 159 (6th Cir. 1993) ................................................................. 7

*Pickering v. Board of Ed.*,
   391 U.S. 563 (1968) ........................................................................... 6, 7

*Piotrowski v. City of Houston*,
   237 F.3d 567 (5th Cir. 2001) ............................................................... 15

*Polk Cnty. v. Dodson,*
   454 U.S. 312 (1981) ........................................................................................ 15

*Pritchard & Abbott v. McKenna,*
   350 S.W.2d 333 (Tex. 1961) ......................................................................... 15

*Renken v. Harris Cnty.,*
   808 S.W.2d 222 (Tex.App. – Houston [14th Dist.] 1991, no writ)............... 9

*Rutan v. Republican Party of Illinois,*
   497 U.S. 62, 64 (1990) .................................................................................... 2

*Soderbeck v. Burnett County,*
   752 F.2d 285 (7th Cir. 1985) .......................................................................... 8

*Soderstrum v. Town of Grand Isle,*
   925 F.2d 135 (5th Cir. 1991) .......................................................................... 8

*Stegmaier v. Trammell,*
   597 F.2d 1027 (5th Cir. 1979) ........................................................................ 8

*Townsend v. Vasquez,*
   2018 WL 5074529 (Tex. App. – Houston [14th Dist.] Oct. 18, 2018 ........ 15

*Underwood v. Harkins,*
   698 F.3d 1335 (11th Cir. 2012) ...................................................................... 8

*United States v. Beaumont,*
   972 F.2d 553 (5th Cir. 1992) .......................................................................... 4

*Watts v. Bibb Cnty, Ga.,*
   2010 WL 3937397 (M.D. Ga. Sept. 30, 2010)............................................. 9

*Wiggins v. Lowndes County,*
   363 F.3d 387 (5th Cir. 2004) .......................................................................... 8

*Zarnow v. City of Wichita Falls, Tex.,*
   614 F.3d 161, 169 (5th Cir. 2010) ................................................................ 12

## Statutes

Texas Family Code .............................................................................................. 14

Texas Labor Code ................................................................................................. 3

Texas Local Government Code §151.004 ...................................................... 13, 14

## Other Authorities

Tex. Atty. Gen. Op. GA-0126, 2003 WL 22896501 ....................................................... 3

## Rules

Fed. R. App. P. 34(a)(2)(C) ............................................................................................. ii

## **ARGUMENT AND AUTHORITIES**

**A. The District Judges' claim of absolute power in their employment of associate judges must fail, as must their claim their employment actions toward associate judges are beyond constitutional review.**

Appellees would apparently have this Court believe that, because the District Judges are elected officials, their power over the associate judges' employment is absolute and beyond review. They claim the right to use their control of public salaries to achieve political purposes – such as demanding complete political loyalty (to all seven of them, apparently) from every associate judge [District Judges' Red Br. 14-26; Tarrant County's Red Br., pp. 48-61]. The District Judges claim they can compel associate judges to support their candidacies for election and re-election, and even coerce them to speak publicly on the district judges' behalves. *See* District Judges' Red Br., pp. 14-26. As discussed more fully in the Blue Brief at pp. 26-28 and 46-51, this would mean (if it were true) that the District Judges could *require Diane* to do something Texas' Code of Judicial Conduct *prohibits her* from doing, while *restraining Gerald* from doing something the Code and other laws *allow him* to do. Appellees never address this conflict between their argument and the Code of Judicial Conduct and other applicable laws. *See* Blue Br., pp. 26-28. Presumably, this absolute employment power would also include forcing associate judges to work on the district judges' campaigns without compensation. Nothing in Appellees' arguments suggests otherwise.

Since political speech also includes the money required to support it, if the First Amendment does *not* prohibit compelling political speech from associate judges (as the District Judges argue), then logically the First Amendment would also not prohibit district judges from compelling campaign contributions from associate judges, by conditioning their employment on donating a portion of the associate judges' public salary to the district judges' campaign (and not just to one campaign, but to all seven of them, apparently). This result directly contradicts the Supreme Court's recent statement in *Janus v. American Federation of State, County, and Municipal Employees, Council 31, et al.*, 138 S.Ct. 2448, 2463 (2018) (government employers cannot force employees to give money for political speech; "[N]o official, high or petty, can prescribe what shall be orthodox in politics…or force citizens to confess by word or act their faith therein."). This condescending "to the victor belong the spoils"[1] idea also runs completely contrary to the Supreme Court's first sentence in *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 64 (1990):

> "*To the victor belong only those spoils that may be constitutionally obtained*."

*497 U.S. 62, 64 (1990) (citing Elrod and Branti, infra*) (Emphasis added).

---

[1] Here, the "spoils" were weaponizing Diane's job and public salary in an attempt to force her to control or silence Gerald's open and overt exercise of his political speech, or get her to support Munford (in opposition to her husband's activity). When that failed, the "spoils" were getting rid of Diane – either because she refused, or because she filed this lawsuit. The clear mandate was "stand with us and support our politics, and never hold us accountable in court, or when we win, we will get rid of you."

According to Tarrant County, it would appear associate judges are not even protected from discrimination, or from retaliation if they oppose discrimination. Specifically, Tarrant County cites Tex. Atty. Gen. Op. GA-0126, 2003 WL 22896501 as applying to Tarrant County's family court associate judges. *See* Tarrant County Red Br., p. 38. In that opinion, the Texas Office of the Attorney General asserted that where an associate judge served *only one or two* district judges, the protections of Title VII and Chapter 21 of the Texas Labor Code did not apply. If Tarrant County's assertion that this AG opinion applies to *its* associate judge employees (where seven associate judges serve all seven district judges), then – according to Tarrant County – its associate judges are not protected from discrimination on the basis of "race, color, disability, religion, sex, national origin, or age," or even pregnancy, all of which are otherwise prohibited by law. Tex. Lab. Code §§21.051, 21.106; *see also* Title VII, 42 U.S.C. §2000e, et. seq.; 42 U.S.C. §12133.

The District Judges also apparently seek to persuade this Court to rule that a federal lawsuit alleging a district judge attempted to weaponize an associate judge's public salary to influence the outcome of a judicial primary election is not a matter of public concern. *See* District Judges' Red Br., pp. 30-35. The Blue Brief (at pp. 31-34) demonstrates why it was.  Since the District Judges also contend they can terminate any associate judge who sues them [District Judges' Red Br., pp. 26-30],

they seek to place their employment decisions regarding associate judges completely beyond any federal or constitutional review. This Court should reject these outcomes, find Diane's lawsuit *was* a matter of public concern, hold that the First Amendment applies to Diane's associate judge position, and reverse and remand Diane's freedom of petition and other First Amendment claims for further proceedings consistent with its opinion.

**B. The District Judges' assertions regarding argument forfeiture are without merit, because Appellant's Brief fully addresses the significance of Diane's assertion that seven associate judges served seven district judges (rather than each serving a single judge), and the fact that no confidential relationships or policies existed.**

In support of their argument forfeiture claim [District Judges' Red Br., pp. 22-24], the District Judges cite *United States v. Beaumont*, 972 F.2d 553 (5th Cir. 1992). In *Beaumont*, the Appellant began his brief with the assertion that the evidence was insufficient to convict him. *Beaumont*, 972 F.2d, at 563. Beaumont then failed "to make any argument whatsoever to support this contention." *Id.* Here, however, no such failure ("to make any argument whatsoever") can be attributed to Diane.

Both below and in this appeal, the sole justification Appellees offered for their contention Diane was subject to either a speech or patronage dismissal was their factual contention (premature at the 12(b)(6) stage) that Diane was a "confidential" employee and/or a "policymaker" – in support of which they offered no evidence even though they bore the burden of proof. *Elrod v. Burns,* 427 U.S. 347, 368 (1976)

(government-employer bears the burden of establishing employee falls within the confines of this doctrine); *Branti v. Finkel*, 445 U.S. 507, 517 (1980) (government must demonstrate political affiliation is appropriate requirement for job in question). It was up to the government – not Diane – to explain and offer evidence showing that political loyalty and political affiliation were appropriate job requirements for an associate judge serving seven district judges. The District Judges' assertion that Diane failed to cite a case holding these were <u>not</u> appropriate job requirements in the "seven serving seven" scenario (District Judges' Red Br., p. 22) turns the burden of proof and the standard of review on their heads. The fact that no court has ever conducted a fact-intensive review of Diane's job structure *is the very reason* granting an *Elrod/Branti* exception at the 12(b)(6) stage, rather than on a fully developed factual record, was error.

Diane's pleading – which the standard of review mandates is the sole source of facts in this case – expressly negated Appellees' untimely factual assertions. Specifically, in Tarrant County's unique family court structure, Diane was one of seven (7) associate judges, and each associate served all seven (7) family district judges. ROA.671-74. This created forty-nine (49) separate, distinct and independent working relationships in development between associate and district judges. ROA.671-74. The kinds of close confidences that might arise where all court personnel serve a single judge do not arise in this context. ROA.671-74.

Likewise, Diane's pleading established there were no "policies" she was expected to implement – only a few individual judge preferences. ROA.667-70. These were just as widely known among lawyers regularly practicing in the Tarrant County family courts. ROA.667-70. For example, one Tarrant County family district judge would nearly always order a batterer's intervention course, while another would almost never order a social study in child custody cases. ROA.668. These preferences were no different than a district judge's knowing the leanings of the court of appeals reviewing her decisions. ROA.668. As Diane's brief demonstrated, the "seven serving seven" and "no policies" facts established that the *Pickering/Connick*[2] balancing test and/or *Elrod/Branti* confidential/policymaking employee exception did not apply to her husband's speech (even if attributed to her) or her position as associate judge. *See* Blue Br., pp. 44-46; 49-54. All Diane's job required her to do was hear evidence and apply law to fact, which is not "policymaking." *See* Blue Br., pp. 51-54; *Adams v. Governor of Delaware*, 922 F.3d 166, 181 (3rd Cir.) (*cert. granted* 140 S.Ct. 602 (2019).

---

[2] As discussed in the Blue Brief at section I(C) (p. 29ff.) and elsewhere, the Supreme Court has developed what is often called the ***Pickering/Connick*** balancing test for public employee free speech cases. *See **Pickering v. Board of Ed.*, 391 U.S. 563 (1968)**; ***Connick v. Myers*, 461 U.S. 138 (1983)**.

### C. Appellees' own cases demonstrate why the unique structure of Tarrant County's family court structure deserved a more fully developed record.

One of the very cases cited by Tarrant County demonstrates why the *Pickering* balancing test should *not* be performed at the 12(b)(6) stage:

> [T]he factors we must balance under <u>Pickering</u> are not sufficiently developed at [the 12(b)(6)] stage in the litigation for us to make that determination. Therefore we find that the plaintiffs have alleged the appropriate facts to survive a motion to dismiss, and we will deny Judge McFalls' motions to dismiss."

*Jakomas v. McFalls*, 229 F.Supp.2d 412, 421 (W.D. Penn. 2002).

In support of their assertion that associate judges are policymakers, the District Judges cite four cases specific to judges in which the employee in question served or was appointed by one individual elected official.[3] In the two arbitrator cases the District Judges rely upon, their own brief establishes the arbitrators were appointed by a single governor or mayor. *See* District Judges' Red Br., p. 16. Recognizing the significance of Diane's unique fact pattern ("seven serving seven" and no court confidences or policies other than those similar to a district court's mindfulness of an appellate court's preferences), the District Judges seek to

---

[3] *Newman v. Voinovich*, 986 F.2d 159 (6th Cir. 1993) (appointed by governor); *Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir. 1988) (public defenders reported to single judge); *Davis v. Martin*, 807 F.Supp. 385 (W.D.N.C. 1992) (appointment by governor); *Mumford v. Basinski*, 105 F.3d 264 (6th Cir. 1997) (appointment by single judge). The outlier is *Carroll v. City of Phoenix*, 2007 WL 1140400 (D. Ariz. Apr. 17, 2007), but its holding that Phoenix municipal judges are policymakers conflicts with the Third Circuit's recent contrary opinion in *Adams, supra*.

overcome it by citing three non-judge cases where an employee served more than one official. District Judges' Red Br., p. 23. Instead, however, these three cases demonstrate that such a ruling should be made on a more developed record than 12(b)(6) allows, as two were decided at the motion for summary judgment stage,[4] while the other was decided after a bench trial on the merits.[5]

As part of further attempts to defend the district court's improvident decision below to perform the *Pickering/Connick* and *Elrod/Branti* at the 12(b)(6) stage, Appellees rely on myriad court decisions where the factual record was more developed. Many of the District Judges' cases were decided at the summary judgment stage.[6] Others were decided after a jury or non-jury trial on the merits.[7] Likewise, in the few employment cases Tarrant County cites, most were also decided

---

[4] *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988 (5th Cir. 1992); *Hawkins v. Steingut*, 829 F.2d 317 (2d Cir. 1987).

[5] *Gonzales v. Benavides*, 712 F.2d 142, 150 (5th Cir. 1983).

[6] All ruled upon at summary judgment stage: *Branton v. City of Dallas*, 272 F.3d 730 (5th Cir. 2001); *Gentry v. Lowndes County*, 337 F.3d 481 (5th Cir. 2003); *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 994 (9th Cir. 1999); *Curtis v. Christian County*, 963 F.3d 777, 2020 WL 3477025 (8th Cir. 2020); *Underwood v. Harkins*, 698 F.3d 1335 (11th Cir. 2012); *Butler v. New York State Dep't of Law*, 211 F.3d 739 (2nd Cir. 2000); *Maldonado v. Rodriguez*, 932 F.3d 388 (5th Cir. 2019); *Mummau v. Ranck*, 687 F.2d 9 (3rd Cir. 1982); *Justice v. Pike Cty. Bd. of Educ.*, 348 F.3d 554 (6th Cir. 2003); *Minn. v. White*, 536 U.S. 765 (2002).

[7] All ruled upon at or after trial: *Connick v. Myers*, 461 U.S. 138 (1983) (non-jury trial on the merits); *Soderbeck v. Burnett County*, 752 F.2d 285 (7th Cir. 1985) (directed verdict during trial on the merits); *Wiggins v. Lowndes County*, 363 F.3d 387 (5th Cir. 2004) (jury trial); *Stegmaier v. Trammell*, 597 F.2d 1027 (5th Cir. 1979) (trial on the merits); *Soderstrum v. Town of Grand Isle*, 925 F.2d 135 (5th Cir. 1991) (trial on the merits); *Meeks v. Grimes*, 779 F.2d 417 (7th Cir. 1985);

well after completion of discovery and on a much more fully developed record, rather than on pleadings at the 12(b)(6) stage.[8]

**D. Appellees' own arguments demonstrate why a decision at the 12(b)(6) stage was improper, because Appellees attempt to pull additional "facts" from appellate opinions in other cases, or to make them up –** *because* **there are no facts in the record contrary to Diane's allegations.**

Significantly, as Appellees appear to concede,[9] the 12(b)(6) standard required the district court (and this Court) to consider Diane's factual allegations as true. Here, *there is no evidence or contrary factual assertion in the record to contradict them*. Having no factual evidence in the record to support their assertions, Appellees simply resort to quoting factual recitations from court opinions in other cases as if they represented facts in this case. Perhaps the best example is found at p. 18 of the District Judges' Red Brief: "'[T]he chambers of a judge' is the 'paradigm[atic]

---

[8] *Garcia v. Reeves Cnty.,* 32 F.3d 200 (5th Cir. 1995) (appeal from motion for summary judgment); *Renken v. Harris Cnty.,* 808 S.W.2d 222 (Tex.App. – Houston [14th Dist.] 1991, no writ) (motion for summary judgment); *Abbott v. Pollock,* 946 S.W.2d 513 (Tex.App. – Austin 1997, pet. denied) (motion for summary judgment); *McIntosh Cnty. Bd. of Comm'rs,* 162 F.Supp.3d 1363 (S.D. Ga. 2016) (motion for summary judgment granted in part, denied in part); *Watts v. Bibb Cnty., Ga.,* 2010 WL 3937397 (M.D. Ga. Sept. 30, 2010) (motion for summary judgment granted in part, denied in part); *Larson v. Cantrell,* 974 F.Supp. 1211 (N.D. Ind. 1997) (numerous motions including motions and cross motions for summary judgment, all granted in part, denied in part); *Clark v. Tarrant Cnty., Tex.,* 798 F.2d 736 (5th Cir. 1986) (motion for summary judgment). *Clark* is also distinguishable because it involved a position within an entity that, although it was titled "Tarrant County Audit Probation Department," was actually a state agency created by the State of Texas to address state-wide concerns, and it was funded almost exclusively by the State of Texas and fees it collected. This is entirely different from Diane's job – created and funded almost entirely by Tarrant County, and for which it can be held responsible.

[9] Tarrant County Red Br., p. 23-24; District Judges' Red Br., p. 12.

example' of the 'type of environment' where 'animosity arising from political opposition can create an untenable job situation.'" Presented as a factual assertion, this statement merely quotes from a 1985 7th Circuit case involving district attorneys (and no judges), it fails to cite any actual evidence in this record, and it fails to whether or how the statement can be true when there are forty-nine independent working relationships at play. The Court should have taken Diane's factual allegations as true and allowed the evidence to develop rather than dismissing the case at the Rule 12(b)(6) stage, and this Court should reverse and remand.

### E. Appellee Tarrant County's conscious indifference to Diane's First Amendment rights (particularly in violation of its own written policy to the contrary) stated a viable First Amendment claim against Tarrant County.

Before addressing Tarrant County's lengthy separation of powers argument, a simple recap of Diane's allegations would likely be helpful. Diane was a 20-year employee of Tarrant County. ROA.639. Tarrant County's policymakers adopted the following express written policy:

> "No employee shall be required to participate in political service or related activity as a condition to obtain or retain their job, nor will they be disciplined, terminated, or deprived of any rights for such refusal to participate in political service, contribution, etc." ROA.675, 801.

Tarrant County's anti-harassment policy precluded harassment by any "non-employee who deals directly with the County" whose conduct has the effect of "creating a hostile, intimidating or offensive work environment for others…"

ROA.801, 674-77.

Tarrant County and the District Judges were engaged in a co-employment venture as Diane's employers, in which Tarrant County supplied financial resources (facilities, technology, equipment and courthouse security) and performed some of the more traditional employer functions (orientation, handbook, E-mail, salary, insurance, and retirement plan. ROA.666, 687. Tarrant County delegates to the District Judges power, influence and control over Diane's working conditions and work environment. ROA.666-67, 671-74. Tarrant County delegates administration and oversight of the associate judges to the District Judges and pays them for it. ROA.666. Thus, the District Judges are among the "non-employees who deal directly with the County" described in Tarrant County's written policy. ROA.801, 674-77.

Twice through its designated recipient (Tina Glenn, Tarrant County's Director of Human Resources in its County Administrator's Office), and later through its executive officer (the County Judge, Glen Whitley), Diane notified Tarrant County – her employer – that her rights under the First Amendment and Tarrant County's express written policy were being violated by the hostile work environment to which Baca-Bennett was subjecting her as a result of Gerald's political opposition against Munford's campaign. ROA.657, 678-79, 801, 679-681.

Unfortunately for Diane, a majority of Tarrant County Commissioners were

aware of and supported Baca-Bennett's political patronage of Munford and her interest in retaliating against Diane over Gerald's activity. ROA.681, 685-686. Tarrant County consciously refused to enforce its own express written policy and was therefore deliberately indifferent to the violations of Diane's First Amendment rights. ROA.685. Alternatively, Tarrant County's policy of deference to the District Judges where its associate judge employees' First Amendment rights are concerned elevates the District Judges to *de facto* policymakers for Tarrant County. ROA.677-78, 798-801. Thus, for Rule 12(b)(6) purposes, Diane established *both* a Tarrant County policy (that employees are protected from political coercion) and a custom (that associate judges will be excluded from the policy. She also established actions by three Tarrant County policymakers (its County Administrator's Office, its County Commissioners and the District Judges as her delegated and compensated supervisors), whose actions – separately or together – caused the violation of her First Amendment rights. Z*arnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).

### F. Appellee Tarrant County's separation of powers argument fails, because its cases and statutes do not address or contemplate the "joint employer" scenario, where the powers being exercised are not "separate."

Significantly, Tarrant County makes no argument it did not actually have the express written policy. Neither does Tarrant County claim it did not have the unwritten custom of excluding associate judges from its protection (in fact, it argues

on this appeal they are excluded). Nor does Tarrant County appear to dispute it was aware its employee's First Amendment rights were being violated, that it compensated the District Judges for their administration, oversight or supervision of the associate judges, or that a majority of the Tarrant County Commissioners did in fact share and support Baca-Bennett's retaliatory animus toward Diane over Gerald's political activity. Rather, the County seeks to avoid responsibility by cobbling together a series of separation of powers cases and other authorities, in an attempt to show it was somehow excused from enforcing its own written policy and protecting its own employee from political retaliation by "non-employees who deal directly with the County." ROA.801, 674-77.

As a threshold matter, Tarrant County's reliance on Texas Local Government Code §151.004 is misplaced. Tarrant County appears to confuse the statute's prohibition that it cannot demand the appointment *of a specific person* with the concept that it *can* condition its funding, facilities, security and compensation (to the district judges for administration and oversight) on the ethical, lawful and constitutional treatment of its employees, through any of the means advocated below or in the Blue Brief. ROA.899-900, Blue Br. pp. 60. This is different from demanding the appointment of a specific person, which is what §151.004 actually prohibits.

To avoid this distinction, which was pointed out below [ROA.899-900],

Tarrant County now attempts to read the word "appointment" into Texas Family Code 201.004, where the Texas Legislature chose not to use it, or to create an entirely new term – "appointment practices" – which neither §154.004 nor the Texas Family Code ever use. *See* Tarrant County Red Br., p. 18. Specifically, Texas Family Code §§201.001-201.004 use two separate and distinct terms to prescribe how an associate judge's employment begins and ends. The associate judge's employment begins with an "appointment." Tex. Fam. Code §201.001; §201.002. It ends with a "termination," and the period in between is called "employment." Tex. Fam. Code §201.004(b) ("the employment of an associate judge may only be terminated by..."). Tarrant County renames the statutory term "terminated" – now calling it an "appointment practice" – in an attempt to shoehorn its way into arguing that Local Government Code §151.004 prohibits Tarrant County from enforcing its own written policy and protecting its associate judges from political retaliation by insisting their constitutional rights be respected. However, neither statute ever refers to "termination" as an "appointment practice."

Tarrant County cites and relies on numerous cases that have nothing to do with county employees whose positions are co-administrated by the county and judges. Three of its cases involved county decisions being reviewed in litigation by sitting judges acting in their judicial capacities, not in any judge's non-judicial

capacity of co-administering shared employees (as Diane's case presents).[10] Equally

misplaced is Tarrant County's reliance on *Townsend v. Vasquez*, 2018 WL 5074529

(Tex. App. – Houston [14th Dist.] Oct. 18, 2018, *opinion withdrawn and superceded*

*by en banc opinion on denial of rehearing*, 569 S.W.3d 796 (2018). The actual

holding in *Townsend* was that a county court-at-law referral of a family law matter

was governed by different law than an associate judge referral. *Townsend*, 569

S.W.3d, at 805-06. No actual associate judge's employment (including whether or

not she was subject to a political patronage dismissal) was involved or even

discussed in *Townsend*.

Tarrant County also cites and relies heavily upon numerous cases that have

nothing to do with public employees at all – much less the right of such employees

to be free from retaliation (either for their refusal to endorse a political candidate or

for their refusal to restrain their spouses from opposing one).[11]

---

[10] *Pritchard & Abbott v. McKenna,* 350 S.W.2d 333 (Tex. 1961); *Henry v. Cox*, 520 S.W.3d 28 (Tex. 2017); *Ector Cnty. v. Stringer,* 843 S.W.2d 477 (Tex. 1992).

[11] *E.g., Hanna v. Home Ins. Co.,* 281 F.2d 298 (5th Cir. 1960) (plaintiff was sexually abused citizen); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397 (1997) (plaintiff was a citizen forcibly removed from automobile); *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) (plaintiff was a criminally accused complaining about the process by which he was identified); *McMillian v. Monroe Cnty.,* 520 U.S. 781 (1997) (convicted murderer); *City of Canton v. Harris,* 489 U.S. 378 (1989) (inmate); *Doe v. Claiborne Cnty., Tenn.,* 103 F.3d 495 (6th Cir. 1996) (sexually harassed student asserting Title IX claim); *Polk Cnty. v. Dodson,* 454 U.S. 312 (1981) (prisoner); *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443 (5th Cir. 1994) (sexually harassed student); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189 (1989) (local officials "failed" to prevent child abuse committed by private citizen); *Griffith v. Johnston*, 899 F.2d 1427 (5th Cir. 1990) (lawsuit by private citizen concerning "hard to place" children in foster care system); *Morrow v. Balaski,* 719 F.3d 160 (3d Cir. 2013) (en banc) (high school students alleged

In short, Tarrant County's authorities do not support its argument that it could not enforce its own express written policy. Nor do they rebut Diane's assertion that when Tarrant County delegated certain functions to the district judges and compensated them for performing them, the district judges became Tarrant County's *de facto* policymakers.

### G. Appellees' Briefs attempt to change the facts, insert their own alternative facts, and/or draw inferences in their own favor, rather than in Diane's favor – the opposite of what the standard of review requires.

Despite their apparent concessions that the standard of review requires the Court to take as true all well-pled facts of Diane's, Appellees nevertheless attempt to direct the Court's attention elsewhere, supply alternative facts of their own, or engage in inferences that favor themselves rather than Diane, the non-movant.

The District Judge Appellees spend no fewer than four (4) pages attempting to lead this Court into error by drawing inferences contrary to Diane and favorable to Appellees. District Judges' Red Br. 3-7. Apparently concerned about the legal effect of this fact, the District Judges attempt to assert alternatively (without any factual citation to the record) that associate judges assignments come "primarily" from one judge. District Judges' Red Brief, p. 4. Since nothing in the record supports this assertion, they ask this Court instead to take "judicial notice" the associate

---

they were "bullied"); These cases are simply not instructive on the issue of how Defendant Tarrant County treats its own employees regarding First Amendment retaliation.

judges' positions bear the same nominal designations as the district courts' (i.e., "233rd"). District Judges' Red Br., p. 4, fn. 1. Having the same number designation hardly explains factually how Tarrant County Family Court assignments are made. Even if it did, the standard of review requires the Court to accept Diane's assertion as true that all seven associate judges serve all seven district judges. ROA.671-674.

Second, rather than accept Diane's well-pleaded facts [ROA 645-661] establishing a well-documented pattern of workplace harassment against Diane by Baca-Bennett, the District Judges seek to trivialize Baca-Bennett's conduct by focusing this Court on five words in a single comment ("[a]pparently Diane Haddock has not resigned…"),[12] and to ignore the remainder of voluminous and detailed allegations establishing the hostile work environment Baca-Bennett created for Diane [Blue Br., pp. 3-6; ROA 645-661].

Third, the District Judges attempt to have the Court draw inferences contrary to Diane's factual allegations by claiming she "does not…allege that she told either Judge Harris or Judge Newell she wished to continue in office." [District Judges' Red Br., p. 9]. Putting aside for the moment that the law placed no burden on Diane to request to remain in the job she had held for twenty (20) years in order to avoid having her First Amendment rights violated, there are numerous facts in the record supporting the inference that Diane wanted to keep her job. For example, Newell

---

[12] District Judges' Red Br., p. 8, fn. 2.

questioned Diane about whether she had resigned, and Diane assured Newell she had not resigned ROA.658. Newell questioned Diane about how close she was to retirement. ROA658. Newell stated that "people are asking him every day what he is going to do about Diane," and that "I just don't know what I am going to do with you." ROA.659. Newell also conceded he was unclear about Baca-Bennett's interpretation of the associate judges' statute [ROA.659] (i.e., he was unsure whether he had the power to remove her or need more votes – the same votes Baca-Bennett had previously been unable to garner. ROA.653. In other words, it was clear Diane's continuing in her position was not up to her but up to the District Judges (whom she hoped would act lawfully rather than in violation of the First Amendment). Perhaps most importantly, because she never resigned and the District Judges fired her,[13] Diane is entitled 12(b)(6) stages to the inference that she wanted to keep her job. The District Judges' contrary inference is unsupported by the record and misapplies the standard of review.

Similarly, rather than accept Diane's well-pled allegations that she was subjected to a politically hostile work environment, then wrongfully terminated, because of *her husband's* speech and political affiliations (she made no speech), Appellee Tarrant County attempts to mischaracterize Diane's claims as alleging she suffered "because of *her* and her husband's political associations and speech."

---

[13] ROA.661-62, 802

Tarrant County's Red Br., p. 19 (citing the Court to ROA.639-688 – fifty (50) pages of the record, without specificity). The Court should reject these improper attempts to change the facts and evade the correct standard of review. Instead, the Court should reverse and remand the case for discovery and trial on Diane's well-pled allegations of First Amendment violations.

### H. Baca-Bennett had fair warning that threatening Diane's job for political reasons was unlawful.

The District Judges assert Baca-Bennett could not have been aware that a hostile work environment based on political retaliation was unlawful, because this Circuit has not expressly so held. *See* District Judges' Red Br., p. 44-48. It is true this Circuit has yet to consider the breadth of hostile work environment claims that may now be authorized when and if the Supreme Court's holding in *Burlington N*[14] is applied to 42 U.S.C. 1983. Here, however, the specific hostile work environment included Baca-Bennett's threats that Gerald had "forgotten who Diane works for," reminding Diane "who she works for," and repeated attempts to have Diane fired if she didn't "get her husband under control." *See* Blue Br., pp. 4-5; ROA.650, 646-47, 659. A brief review of the *Elrod* basics demonstrates Baca-Bennett was fully on notice that her actions violated Diane's First Amendment rights.

The plaintiffs in *Elrod* alleged that they were discharged "*or threatened with*

---

[14] *Burlington N. & SFR Co. v. White*, 548 U.S. 53, 69 (2006) (The significance of any given act of retaliation will often depend on the particular circumstances. "Conduct Matters.").

*discharge*" because of their political affiliations. *Elrod*, 427 U.S. at 350. One plaintiff – Buckley – was "in imminent danger of being discharged solely for the same reasons." *Id*. at 351. All plaintiffs, including Buckley, sought injunctive relief, and the district court denied it. The Seventh Circuit reversed and instructed the district court to order appropriate injunctive relief. ("Inasmuch as this case involves First Amendment rights of association which must be carefully guarded against infringement by public office holders, we judge that injunctive relief is clearly appropriate in these cases." *Id.; Burns v. Elrod*, 509 F.2d 1133, 1136 (7th Cir. 1975). The Supreme Court affirmed.  Nowhere in *Elrod* did the Supreme Court ever suggest that Buckley – the employee who was "merely threatened" – was not entitled to injunctive or other relief because he had not yet been discharged. Baca-Bennett was charged with knowledge of this 1976 Supreme Court precedent, and this Court should reverse on the issue of qualified immunity.

## **CONCLUSION AND PRAYER**

This Court should reverse the district court's Order and Final Judgment granting Appellees'/Defendants' Rule 12(b)(6) Motions to Dismiss, and remand this case for discovery and trial.

Respectfully submitted,

*s/ Walter L. Taylor*
**WALTER L. TAYLOR**
State Bar No. 19727030
***Wtaylor@thehartlawfirm.com***
**HART LAW FIRM, PLLC**
6630 Colleyville Blvd, Suite 100
Colleyville, Texas 76034
Tel: (817) 329-7020
Fax: (682) 292-7406

**ATTORNEY FOR APPELLANT
DIANE SCOTT HADDOCK**

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the foregoing document has this day been served via electronic service upon the following on this 12th day of August, 2020:

*s/ Walter L. Taylor*
**WALTER L. TAYLOR**

M. Keith Ogle
*mkogle@tarrantcountytx.gov*
David K. Hudson
*dkhudson@tarrantcountytx.gov*
TARRANT COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE

Benjamin S. Walton
ASSISTANT ATTORNEY GENERAL
*Benjamin.Walton@oag.texas.gov*
Natalie D. Thompson
ASSISTANT SOLICITOR GENERAL
*natalie.thompson@oag.texas.gov*
OFFICE OF THE ATTORNEY GENERAL

## CERTIFICATE OF COMPLIANCE

Pursuant to **Fed.R.App.P. 32(g)**, by my signature above I certify the following:

    1.    This brief complies with the typeface requirements of **Fed. R. App. P. 32(a)(5)** and the type requirements of **Fed. R. App. P. 32(a)(6)** because:

- this brief has been set in a proportionally spaced typeface using Microsoft Word for Office 365 in Times New Roman with a 14-point font.

    2.    This brief complies with the type-volume limitation in **Fed. R. App. P. 32(a)(7)(B)** because:

- this brief contains 5,189 words, as determined by the computer software's word-count function, excluding the parts of the brief exempted by **Fed. R. App. P. 32(f)**.

*s/ Walter L. Taylor*
**WALTER L. TAYLOR**