REVISED

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2021

Lyle W. Cayce
Clerk

No. 19-11327

DIANE SCOTT HADDOCK,

*Plaintiff—Appellant*,

*versus*

TARRANT COUNTY, TEXAS; PATRICIA BACA-BENNETT;
KENNETH EARL NEWELL; JESUS NEVAREZ, JR.; HONORABLE
JUDITH WELLS; JEROME S. HENNIGAN; JAMES B. MUNFORD;
ALEX KIM,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:18-CV-817

Before CLEMENT, HO, and DUNCAN, *Circuit Judges*.

EDITH BROWN CLEMENT, *Circuit Judge*:*

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

We withdraw our prior opinion in this case and substitute this revision. Appellant Diane Haddock sued the seven district judges of Tarrant County's family law courts (the "District Judges") in their official capacities, District Judge Patricia Baca-Bennett in her personal capacity, and the County under 42 U.S.C. § 1983, alleging that she was fired for refusing to support a political candidate and for her husband's political activity. Holding that Haddock was both a policymaking and confidential employee lawfully subject to patronage termination, the district court dismissed her suit. We AFFIRM.[1]

## I. Facts and Proceedings

Tarrant County family courts are presided over by seven elected district judges, who, in turn, are assisted by seven appointed associate judges. Haddock was an associate judge for nearly twenty years. Because they serve more than one district judge, Texas law requires Tarrant County associate judges be appointed with the unanimous approval of the district judges; they can be removed, however, by a majority vote. Tex. Fam. Code §§ 201.001(d), 204(b).

In 2016, Haddock and fellow associate judge James Munford indicated interest in running for a district judge position. It was believed they would run against one another for the 322nd district seat. Around the same time, the grandparents of a child who died while in her mother's custody—after Haddock had signed the order giving the mother custody—circulated claims that Haddock had mishandled the case, going so far as to allege that she had taken a bribe.[2] Munford's wife allegedly repeated these harsh allegations publicly, presumably to gain political advantage for her husband. Haddock

---

[1] Judge Ho concurs in the judgment.

[2] We are aware of no evidence whatsoever that supports this allegation.

No. 19-11327

decided not to run, but she and her husband do not appear to have reconciled with Munford and his wife.

During the campaign, although Haddock herself allegedly did not engage in any overt political activity, her husband campaigned against Munford. Mr. Haddock and a political group with which he was associated accused Munford of being a "RINO" (Republican In Name Only), violating the Second Amendment by signing protective orders requiring litigants to surrender their firearms on inadequate evidence, physically abusing and sexually assaulting his first wife, and terrifying his current wife by threatening her and a male friend of hers with a gun.

District Judge Patricia Baca-Bennett, who supported Munford's candidacy, allegedly sought to put a stop to Mr. Haddock's opposition by demanding that Haddock publicly support Munford and "get her husband under control." Haddock refused to do either. Baca-Bennett allegedly subjected Haddock to "badgering, threats, back-biting, undermining and maligning, and a campaign to orchestrate the termination of [Haddock's] employment." She also allegedly sought to intimidate Haddock's husband by reminding him "who Diane works for" and spread rumors about Haddock resigning that "undermined [Haddock's] authority as a judge."[3]

During the campaign, Haddock also learned that the district judge for her own District 233 was retiring. Kenneth Newell won the Republican primary (he then ran unopposed, meaning he knew then that he would become District 233's district judge), so he spoke with Haddock about her future as the District 233 associate judge. He indicated that he was concerned

---

[3] We express no opinion whether these allegations against Baca-Bennett, if true, violate Texas's Code of Judicial Conduct. *See* Tex. Gov't Code Ann., tit. 2 subtit. G app., Canons 2B, 3C(1), 5(2).

No. 19-11327

about the political situation and had "not made a decision about what to do with" Haddock.

Following unsuccessful complaints to Tarrant County's human resources department, Haddock eventually sued Baca-Bennett and Tarrant County for subjecting her to a hostile work environment in retaliation for her husband's political activity and her own refusal to support Munford. Fewer than ninety days later, she was terminated by a majority of the seven district judges, including Newell. She amended her complaint to address her termination, add the District Judges in their official capacities as defendants, and demand reinstatement or front pay in lieu thereof.

The district court dismissed Haddock's claims for money damages against the District Judges in their official capacity under Rule 12(b)(1), holding that the suit is barred by the Eleventh Amendment because the District Judges are state officials, meaning "the state was the real, substantial party in interest," and the state has not waived sovereign immunity. *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (cleaned up). Haddock does not appeal this ruling.

The district court also dismissed Haddock's claim for injunctive relief against the District Judges under Rule 12(b)(6). The First Amendment generally prohibits adverse employment actions against government employees based on political affiliation, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), but, where "an employee's private political beliefs would interfere with the discharge of [her] public duties, [her] First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency," *Branti v. Finkel*, 445 U.S. 507, 517 (1980). Sometimes called the *Elrod/Branti* exception, this maxim most often applies to employees in policymaking or confidential positions.

No. 19-11327

Finding that Haddock's position involved both policymaking and confidential relationships with the District Judges and, "[t]herefore, an associate judge's political ideology, associations, and activities may rationally influence a district judge's assessment of the individual's suitability for a position as an associate judge," the district court held that she had failed to state a claim on which relief could be granted against the District Judges and dismissed Haddock's demands for injunctive relief under Rule 12(b)(6). *Haddock v. Tarrant Cnty.*, No. 4:18-cv-00817-O, 2019 WL 7944073, at *7–8 (N.D. Tex. Sept. 11, 2019).

The district court dismissed all claims against Tarrant County under Rule 12(b)(6), both because Haddock had failed to allege an underlying constitutional violation and because she had failed to allege a county policy or policymaker that caused the alleged violation. Finally, the district court dismissed all claims against Baca-Bennett under Rule 12(b)(6) on the basis of qualified immunity. Haddock timely appealed.

## II. Standard of Review

We review a dismissal on the pleadings under Rules 12(b)(1) or 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Wolcott v. Sebelius*, 635 F.3d 757, 762–63 (5th Cir. 2011) (citation omitted). "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* at 763 (cleaned up).

## III. Discussion

### A.

Haddock argues on appeal that the district court erred in applying the *Elrod/Branti* exception to her First Amendment claims because she claims

No. 19-11327

that she is neither a policymaker nor a confidential employee. She also argues that her intimate association claim (allegedly, Baca-Bennett retaliated against Haddock for *her husband's* speech, not her own) is—categorically—not subject to the *Elrod/Branti* exception. We disagree.

Haddock also argues that the Supreme Court's balancing test in *Pickering v. Board of Education*, 391 U.S. 563 (1968), would be more appropriate than an *Elrod/Branti* analysis. We need not analyze this argument in any great depth; where the Government's interest in political loyalty is weighed against an employee's First Amendment interests, the tests frequently merge. *See Maldonado v. Rodriguez*, 932 F.3d 388, 392 (5th Cir. 2019) ("This court's decisions have melded the Supreme Court's discussion of these principles in *Branti v. Finkel* with the broader but similar *Pickering–Connick* test."). Generally speaking—and applicable here—if the *Elrod/Branti* exception applies, the *Pickering* analysis is also concluded.

We also note that the test, strictly speaking, is not about whether an employer is a policymaker or confidential employee. "[R]ather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. That said, "where a public employee . . . occupies a confidential or policymaking role, the employer's interests more easily outweigh the employee's First Amendment rights." *Maldonado*, 932 F.3d at 392 (alteration in original) (quoting *Gentry v. Lowndes Cnty.*, 337 F.3d 481, 486 (5th Cir. 2003)).

### (1)

Haddock was a confidential employee. "A government employee may be 'confidential' 'if he or she stands in a confidential relationship to the policymaking process, e.g., as an advisor to a policymaker, or if he or she has access to confidential documents or other materials that embody

No. 19-11327

policymaking deliberations and determinations, e.g., as a private secretary to a policymaker.'" *Garza v. Escobar*, 972 F.3d 721, 729 (5th Cir. 2020) (quoting *Maldonado*, 932 F.3d at 393). If a superior official would be unable to carry out her duties as efficiently or to delegate sensitive tasks when she did not feel she could trust an employee to keep her confidences, that is likely a confidential employee.

Associate judges are "privy to confidential"—and, given the nature of family law matters, often extremely sensitive—"litigation materials and internal court communications in the discharge of [their] duties, and further maintain[ ] a personal confidential relationship with the judge(s) which [they] serve[ ]." *Mumford v. Basinski*, 105 F.3d 264, 272 (6th Cir. 1997). Whether in private conversation with district judges or in writing when they "resolve[ ] a dispute in the court's name or recommend[ ] a disposition to a judge," the associate judges serve as advisors and confidants to the district judges, aiding them in the execution of their duties. *Id.*

Haddock argues that she cannot be a confidential employee because seven associate judges working for seven district judges results in "forty-nine independently developing working relationships"—too many relationships, she argues, to implicate the sort of close, personal relationships characteristic of confidential employees. First, Haddock's math is misguided—this case has nothing to do with her relationships with the other associate judges. Only seven working relationships are relevant—between Haddock and her superiors, the district judges. We suspect all of our twenty-five colleagues on this court would agree that judges can reasonably be expected to maintain at least seven close, yet professional working relationships.

Second, this numerical argument is firmly foreclosed by precedent. *See, e.g.*, *Gentry*, 337 F.3d at 486 ("[I]f a public employee's loyalty is owed to a [five-]member governing board, he cannot choose political favorites or

No. 19-11327

enemies among the board because shifting coalitions or electoral victories may too easily render the employee's decisions, made in accord with personal preference, at odds with the board majority view."); *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 996 (5th Cir. 1992) (en banc) (school superintendent's loyalty may be required by a *seven-member* school board).

Further, Haddock's pled facts—which at this stage, we must presume to be true—make clear that the associate judges and district judges developed close, personal relationships that involved the exchange of confidences, including on politically sensitive and policy-oriented topics. Haddock discussed electoral politics and her own prospective campaign with District Judge William Harris—her supervising District 233 judge prior to Newell's election. She ultimately decided not to run for office based, in part, on his advice. We also know that Newell replaced Haddock with a close associate (the friend who "emceed" his investiture).

Our colleagues on the Seventh Circuit note that, where personal interactions are an important part of the work environment, "[p]olitical animosity . . . can in practice create a hostile work environment where face to face contact and cooperation are essential," in some cases harming the efficiency of the office. *See Meeks v. Grimes*, 779 F.2d 417, 423 (7th Cir. 1985). This is precisely what happened here. Haddock alleges that she accused Baca-Bennett of unethical judicial conduct—specifically, "violat[ing] the canons governing active judges"—by openly campaigning for Munford. The Haddocks and Munfords lobbed vitriolic campaign rhetoric at each other that might have made the Hatfields and McCoys blush—the allegations ranged from sexual assault and other domestic violence to taking bribes and leaving a child to die in an unsafe home.

Although Haddock alleged that "all seven associate judges serve all seven district judges," it's difficult to imagine a healthy working relationship

between Haddock and at least two of the judges, which, all else being equal, makes her a less effective employee than an associate judge who can work amicably with all seven. Haddock also alleges that Baca-Bennett's role in the dispute "undermine[d] respect for [Haddock's] judicial authority," which presumably impacted Haddock's effectiveness on the bench, even when serving the remaining five judges.

Ultimately, although Haddock alleges she believed Newell otherwise wished to retain her, she was left with the impression that he felt "she would be difficult to keep despite her qualifications due to the political situation." In short, Haddock was a confidential employee to all seven district judges due to the close and personal working relationships associate judges have with the district judges. The district judges were free to terminate Haddock's employment in connection with a political dispute that disrupted Tarrant County family court operations. *See Simasko v. Cnty. of St. Clair*, 417 F.3d 559, 562–63 (6th Cir. 2005) (holding that a confidential employee may lawfully be terminated for remaining neutral in his supervisor's campaign and refusing to try to curtail his brother's public support for his supervisor's opponent "however misguided and vindictive that action may" be). The *Elrod/Branti* exception is not about labels like "policymaker" or "confidential," but about preventing precisely this type of disruption.

Thus, we hold that Haddock was a confidential employee under *Elrod/Branti*.[4]

(2)

Next, Haddock argues that some of the specific First Amendment rights upon which she bases her claims cannot be subject to *Elrod/Branti*

---

[4] We need not address whether Haddock was also a policymaker under the *Elrod/Branti* exception because we hold that she was a confidential employee.

No. 19-11327

analysis. Specifically, she argues that *Elrod/Branti* may apply to reprisals for an employee who actively campaigns against her superior, but—because the speech at issue was her husband's, not her own (she, allegedly, refused to campaign for or against anyone)—she is being punished for her association with her spouse and for refusing to campaign. In other words, Haddock argues that the First Amendment rights of intimate association and freedom from compelled speech should not be subject to the *Elrod/Branti* exception.

Our precedent firmly establishes that *Elrod/Branti* applies to refusal to speak. *See, e.g.*, *Stegmaier v. Trammell*, 597 F.2d 1027, 1040 (5th Cir. 1979), (holding confidential employee could be discharged for failing to support elected officeholder's candidacy under *Elrod*). We also join the unanimous opinion of our sister Circuits in holding that intimate association claims can be subjected to *Elrod/Branti* analysis, *see, e.g.*, *Simasko v. Cnty. of St. Clair*, 417 F.3d 559 (6th Cir. 2005); *McCabe v. Sharrett*, 12 F.3d 1558, 1572 (11th Cir. 1994); *Soderbeck v. Burnett Cnty.*, 752 F.2d 285 (7th Cir. 1985) (Posner, J.), and extend our own precedent holding that a confidential employee may be terminated for personal and political associations, *see Soderstrum v. Town of Grand Isle*, 925 F.2d 135 (5th Cir. 1991), to the intimate association context.

We must address two key distinctions between the present case and *Soderstrum*. First, in *Soderstrum* the plaintiff had "unambiguously expressed her lack of confidence in the incoming official and her unwillingness to work in the new administration." 925 F.2d at 141. Here, at least per Haddock's allegations, Haddock had expressed no such unwillingness or opposition. This distinction, while interesting, is not crucial. The dispositive fact in *Soderstrum* was that the plaintiff "served in a position of confidence requiring complete loyalty to the police chief," and that the newly elected chief doubted her loyalty—that she had explicitly given him reason to doubt her loyalty (beyond her association with the outgoing police chief) merely reinforced the point that the defendant's doubts were reasonable. *Id*. at 140.

No. 19-11327

Second, the association at issue in *Soderstrum* was a personal and political relationship. Here, Haddock alleges that she was fired for intimate association with her spouse, which she argues should be a more carefully protected relationship. We need not decide the quantum of difference, if any, between the protections afforded different types of relationships because we join every other Circuit to have considered the issue in holding that *Elrod/Branti* also applies to intimate association claims. The Eleventh Circuit's opinion in *McCabe v. Sherrett* is instructive.

The *McCabe* court held that an elected police chief could demote his confidential secretary to a non-confidential position because she was married to one of his officers. *McCabe* did not involve *any* allegations that the plaintiff had campaigned against the new police chief or had *ever* violated his trust. To the contrary, "[e]vidence produced by both parties demonstrate[d]" that the plaintiff "actually breached no confidences during the brief period she served as" the defendant's secretary, there was no reason to believe she had ever breached the prior chief's confidences, and the odds of her ever doing so "may not have been overwhelming." *McCabe*, 12 F.3d at 1572–73 & n.17. Nonetheless, her job required her to have access to the chief's confidential communications, including communications about personnel complaints and officer discipline. If there were a complaint against her husband or one of his colleagues, she would see it first. The *McCabe* court reasoned that "[i]t is a matter of common experience that spouses tend to possess a higher degree of loyalty to their marital partners than to their superiors, and often discuss workplace matters with one another, even matters that a superior has designated as confidential." *Id*. at 1572. The elected official was uncomfortable "having the wife of an officer under [his] command function[ ] as [his] confidential Executive Secretary," for fear (based on nothing more than the fact of her marriage to her husband) that her loyalty would be elsewhere, so he was constitutionally permitted to demote her. *Id*.

No. 19-11327

Similarly, there is no evidence that Haddock had ever breached the District Judges' confidence or prioritized her loyalty to her husband over her duty of confidentiality as an associate judge. We engage in no presumption that she was likely to do so. *See* TEX. GOV'T CODE ANN., tit. 2, subtit. G app., Canon 2B ("A judge shall not allow any relationship to influence judicial conduct or judgment."). However, we recognize that, as "a matter of common experience," *McCabe*, 12 F.3d at 1572, it was not unreasonable for the District Judges to worry that spousal loyalty might interfere with their ability to "expect, without question, undivided loyalty" from their confidential employee, *Stegmaier*, 597 F.2d at 1040. Combined with the fact that "we do not require employers to wait until their office is disrupted before taking action," that the District Judges lost confidence in Haddock's undivided loyalty—even in the absence of any breach of trust by Haddock— is sufficient for them constitutionally to terminate her employment. *Garza*, 972 F.3d at 732.

By the nature of the spousal relationship, an elected official may reasonably worry that they will not receive the undivided loyalty to which they are entitled from their confidential employees, so we recognize that the *Elrod/Branti* exception may extend to intimate association claims. Haddock was in a confidential role, and, under the *Elrod/Branti* exception, could constitutionally be discharged for the exercise of rights that would otherwise by protected by the First Amendment.[5]

---

[5] To the extent we have not explicitly addressed any of Haddock's claims, such as her freedom of petition claim based on filing this suit, our holding that she is a confidential employee suffices to affirm dismissal of *all* Haddock's First Amendment claims.

No. 19-11327

## B.

Haddock alleges that the district court erred by dismissing her claims against Tarrant County. Although Tarrant County, as a municipal entity, can be held liable under § 1983 when an "action pursuant to official municipal policy of some nature caused a constitutional tort," it "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). For municipal liability to attach, a plaintiff must prove "three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Piotrowski v. City of Hous.,* 237 F.3d 567, 578 (5th Cir. 2001)).

As explained above, because the *Elrod*/*Branti* exception applies to Haddock's claims, she has failed to plead a constitutional violation. We therefore do not need to examine whether she has pled a county policymaker or official policy. The district court correctly dismissed Haddock's claims against Tarrant County.

## C.

Haddock also takes issue with the district court's holding that Baca-Bennett has qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (cleaned up). These questions can be answered in either order. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

As explained above, Baca-Bennett did not violate Haddock's constitutional rights; this is enough for Baca-Bennett to be entitled to qualified immunity. Even if Haddock's rights *had* been violated, however, Baca-Bennett certainly did not have "fair warning that [her] conduct

No. 19-11327

violate[d] a constitutional right." *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019) (quoting *Delaughter v. Woodall*, 909 F.3d 130, 140 (5th Cir. 2018)). Closely on-point authority from our sister Circuits indicated that the *Elrod/Branti* exception applies to positions very much like Haddock's. *See, e.g.*, *Mumford*, 105 F.3d 264. Baca-Bennett is entitled to qualified immunity.

## IV. Conclusion

The district court correctly held that Haddock, as a confidential employee, was subject to the *Elrod/Branti* exception, and had therefore failed to allege a constitutional violation.

AFFIRMED.